APPEAL NO. 12-15913

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JIMMY YAMADA and RUSSELL STEWART,

          Plaintiffs,

A-1 A-LECTRICIAN, INC.,

          Plaintiff-Appellant,

   vs.

MICHAEL WEAVER, in his official capacity as chair and member of the Hawaii Campaign Spending Commission; and TINA PEDRO GOMES, and G. WILLIAM SNIPES, in their official capacities as members of the Hawaii Campaign Spending Commission,

          Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII

Civil No. 10-497 JMS/RLP
(J. Michael Seabright, J.)

**DEFENDANTS-APPELLEES' ANSWERING BRIEF**

**CERTIFICATE OF COMPLIANCE**

**ADDENDA A to E**

**CERTIFICATE OF SERVICE**

DAVID M. LOUIE      2162
Attorney General, State of Hawaii
DEIRDRE MARIE-IHA     7923
Deputy Solicitor General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii 96813
Tel: (808) 586-1360
Fax: (808) 586-1237
Attorneys for Defendants-Appellees

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

STATEMENT OF THE CASE ......................................... 4

STATEMENT OF THE FACTS ........................................ 7

SUMMARY OF THE ARGUMENT .................................. 9

ARGUMENT ................................................................. 11

A.  Disclosure Laws Create Transparency in Campaign Financing ................. 11

    1.  <u>Citizens United</u> and <u>Human Life</u> Support Disclosure ........................ 11

    2.  Most of A-1's Challenges Are to Disclosure Rules .......................... 13

    3.  Disclosure Rules are Judged Under Exacting Scrutiny ..................... 16

B.  The Noncandidate Committee and Expenditure Definitions Are Constitutional Disclosure Rules and Are Not Vague or Overbroad ........... 17

    1.  The Noncandidate Committee Definition is Substantially Related to a Sufficiently Important Government Interest ................. 17

    2.  A-1 Misinterprets <u>Human Life</u> and <u>Citizens United</u> ......................... 21

    3.  The Noncandidate Committee Definition is Not Vague or Overbroad and the Phrase 'To Influence' Is Properly Subject to a Narrowing Gloss ........................................... 26

    4.  A-1 is Properly Subject to the Noncandidate Committee Definition ....................................................... 32

    5.  The Expenditure Definition is Constitutional for the Same Reasons ....................................................... 35

C.  The Electioneering Communications Provision is Constitutional ............... 37

1.   A-1 Lacks Standing to Challenge this Provision ............................... 37

2.   The Electioneering Communications Provision is a Constitutional
     Disclosure Rule and is Neither Vague Nor Overbroad .................... 37

D.   The Definition of Advertisement is Not Vague or
     Overbroad and the Disclaimer Required for
     Advertisements Is a Constitutional Disclosure Rule .................................... 43

1.   The Definition of Advertisement Is Constitutional
     Under McConnell ....................................................................... 43

2.   Citizens United Forecloses Any Challenge to
     the Disclaimer Provision .................................................. 47

E.   The Government Contractors' Ban is a Constitutional Means
     of Preventing Corruption and its Appearance ............................................... 49

1.   The State's Interest in Preventing Corruption and Its Appearance
     Is Strongest When Limiting Contributions Made to Candidates ...... 49

2.   The Government Contractors' Ban is Subject to
     Closely Drawn Scrutiny .................................................... 50

3.   The Government Contractors' Ban is a Constitutional
     Means to Prevent Corruption and the Appearance of Corruption ..... 51

4.   A-1's Argument About Legislative Oversight Is Misplaced ............ 59

CONCLUSION .......................................................................... 62

# TABLE OF AUTHORITIES

## Cases

Alaska Right To Life Committee v. Miles,
  441 F.3d 773 (9th Cir. 2006) (ARTLC) .................................................. 39-41, 48

American Civil Liberties Union of Nevada v. Heller,
  378 F.3d 979 (9th Cir. 2004) .............................................................. 30, 31

Austin v. Michigan Chamber of Commerce,
  494 U.S. 652 (1990).............................................................................. 10

Boos v. Barry,
  485 U.S. 312 (1988)............................................................................... 28

Broadrick v. Oklahoma,
  413 U.S. 601 (1973)............................................................................... 26

Buckley v. Valeo,
  424 U.S. 1 (1976)............................................................................ *passim*

California Teachers Ass'n v. State Bd. of Educ.,
  271 F.3d 1141 (9th Cir. 2001) .............................................................. 27

Canyon Ferry Road Baptist Church v. Unsworth,
  556 F.3d 1021 (9th Cir. 2009) ......................................................... 33, 58

Center for Individual Freedom v. Tennant,
  2011 WL 2912735 (S.D. W.V. 2011).................................................... 41

Citizens for Responsible Gov't State Political Action Comm. v.
Davidson,
  236 F.3d 1174 (10th Cir. 2000)............................................................ 42

Citizens United v. Fed. Election Comm'n,
  130 S. Ct. 876 (2010).................................................................... *passim*

Colorado Ethics Watch v. Senate Majority Fund,
  269 P.3d 1248 (Colo. 2012) ................................................................. 32

Ctr. for Individual Freedom v. Madigan,
  2012 WL 3930437 (7th Cir. Sept. 10, 2012), ....................... 14, 32, 38, 40

Dallman v. Ritter,
    225 P.3d 610 (Colo. 2010) ........................................................ 59

Davis v. Fed. Election Comm'n,
    554 U.S. 724 (2008) ................................................................. 24

Doe v. Reed,
    130 S. Ct. 2811 (2010) ............................................................. 17

Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const.
Trades Council,
    485 U.S. 568 (1988) ................................................................. 46

Family PAC v. McKenna,
    685 F.3d 800 (9th Cir. 2012) ...................................... 24, 34, 41

Fed. Election Comm'n v. Beaumont,
    539 U.S. 146 (2003) ................................................................. 50

Fed. Election Comm'n v. Mass. Citizens for Life, Inc.
    479 U.S. 238 (1986) ................................................................. 17

Fed. Election Comm'n v. Wisconsin Right to Life,
    551 U.S. 449 (2007) (WRTL) ......................................... 13, 27, 32, 39

Federal Election Comm'n v. Colorado Republican Federal Campaign
Comm.,
    533 U.S. 431 (2001) ................................................................. 36

First Nat. Bank of Boston v. Bellotti,
    435 U.S. 765 (1978) ................................................................... 9

Frisby v. Schultz,
    487 U.S. 474 (1988) ................................................................. 28

Gordon v. Virtumundo, Inc.,
    575 F.3d 1040 (9th Cir. 2009) ................................................. 46

Green Party of Connecticut v. Garfield,
    616 F.3d 189 (2nd Cir. 2010), *cert. denied*,
    131 S. Ct. 3090 (2011) ................................... 50, 54, 57, 58

Hill v. Colorado,
    530 U.S. 703 (2000)............................................................27

Holder v. Humanitarian Law Project,
    130 S. Ct. 2705 (2010)........................................................35

Human Life of Washington v. Brumsickle,
    624 F.3d 990 (9th Cir. 2010),
    *cert. denied*, 131 S. Ct. 1477 (2011)............................*passim*

Lavin v. Husted,
    2012 WL 3140909 (6th Cir., Aug. 3, 2012) ........................57

Legend Night Club v. Miller,
    637 F.3d 291 (4th Cir. 2011) ..............................................28

Long Beach Area Chamber of Commerce v. City of Long Beach,
    603 F.3d 684 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 392 (2010) ...............49, 57

McConnell v. Fed. Election Comm'n,
    540 U.S. 93 (2003)............................................................*passim*

McIntyre v. Ohio Elections Comm'n,
    514 U.S. 334 (1995)..........................................................48

Minnesota Citizens Concerned for Life, Inc. v. Swanson,
    2012 WL 3822216 (8th Cir. Sept. 5, 2012) ...................24, 25

Montana Right to Life Ass'n v. Eddleman,
    343 F.3d 1085 (9th Cir. 2003) ...........................................53

Nat'l Org. for Marriage v. McKee,
    723 F. Supp. 2d 245 (D. Me. 2010), *aff'd in part, vacated in part*,
    649 F.3d 34 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1635 (2012)......................41

Nat'l Org. for Marriage v. McKee,
    649 F.3d 34 (1st Cir. 2011), *cert. denied*,
    132 S. Ct. 1635 (2012).......................10, 14, 31, 42, 44, 45, 46

Nat'l Org. for Marriage, Inc. v. McKee,
    669 F.3d 34 (1st Cir. 2012), *petition for cert. filed*,
    (U.S. May 22, 2012) (No. 11-1426) ..................................31

Nat'l Org. for Marriage, Inc. v. Roberts,
   753 F. Supp. 2d 1217, 1220 (N.D. Fla. 2010), *aff'd sub nom*
   Nat'l Org. for Marriage v. Secretary,
   2012 WL 1758607 (11th Cir. May 17, 2012) (*per curiam*) ............................... 32

Nat'l Right to Work Legal Defense and Education Foundation v.
Herbert,
   581 F. Supp. 2d 1132 (D. Utah 2008) .................................................. 32

New Mexico Youth Organization v. Herrera,
   611 F.3d 669 (10th Cir. 2010) ........................................................ 17

Nixon v. Shrink Missouri Government PAC,
   528 U.S. 377 (2000).................................................................. 53

North Carolina Right to Life Comm. Fund For Indep. Political
   Expenditures v. Leake,
   524 F.3d 427, 439 (4th Cir. 2008) .................................................... 41

North Carolina Right to Life v. Leake,
   525 F.3d 274 (4th Cir. 2008) ......................................................... 17

North Carolina Right to Life, Inc. v. Bartlett,
   168 F.3d 705 (4th Cir. 1999) ......................................................... 19

Ognibene v. Parkes,
   671 F.3d 174 (2nd Cir. 2012), *cert. denied*,
   2012 WL 950086 (U.S. June 25, 2012)............................4, 11, 50, 52, 54-58, 61

Planned Parenthood of Idaho, Inc. v. Wasden,
   376 F.3d 908 (9th Cir. 2004) ......................................................... 28

Preston v. Leake,
   660 F.3d 726 (4th Cir. 2011) ...............................4, 11, 50, 52, 54, 56-57

Reno v. Am. Civil Liberties Union,
   521 U.S. 844 (1997).................................................................. 28

Smith v. Marsh,
   194 F.3d 1045 (9th Cir. 1999) ........................................................ 58

SpeechNow.org v. Fed. Election Comm'n,
   599 F.3d 686 (D.C. Cir. 2010), *cert. denied,* 131 S. Ct. 533 (2010).................. 34

Thalheimer v. City of San Diego,
 645 F.3d 1109 (9th Cir. 2011) ............................................ 5, 50

The Real Truth About Abortion, Inc. v. Fed. Election Comm'n,
 681 F.3d 544 (4th Cir. 2012) ................................................. 32

United States v. Harriss,
 347 U.S. 612 (1954) ........................................................ 12, 18

Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
 455 U.S. 489 (1982) ........................................................ 28, 46

Virginia Society for Human Life v. Caldwell,
 152 F.3d 268 (4th Cir. 1998) .................................................. 29

Wagner v. Fed. Election Comm'n,
 2012 WL 1255145 (D. D.C. Apr. 16, 2012) ............................. 53-57

Washington State Grange v. Washington State Republican Party,
 552 U.S. 442 (2008) .......................................................... 26

White v. City of Norwalk,
 900 F.2d 1421 (9th Cir. 1990) ................................................ 28

Younger v. Harris,
 401 U.S. 37 (1971) ............................................................ 58

**Hawaii Statutes**

HRS § 11-191 ..................................................................... 16

HRS § 11-194 ..................................................................... 16

HRS § 11-196 ..................................................................... 16

HRS § 11-301 ................................................................... 1, 14

HRS § 11-302 .............................................................. *passim*

HRS § 11-321 ..................................... 2, 14, 16, 18, 19, 23, 25, 34

HRS § 11-323 .................................................................. 14, 16

HRS § 11-326 ..................................................................... 25

HRS § 11-335 ........................................................................... 2, 14, 20

HRS § 11-335(b)(2) ............................................................................ 35

HRS § 11-336 ................................................................................ 14, 34

HRS § 11-336(c) .................................................................................. 25

HRS § 11-337 ...................................................................................... 14

HRS § 11-339(a) .................................................................................. 25

HRS § 11-341 .................................................... 3, 14, 23, 37, 40, 43

HRS § 11-341(a) ............................................................................ 40, 41

HRS § 11-341(b) .................................................................................. 40

HRS § 11-341(c) .................................................................................. 38

HRS § 11-341(c)(2) .............................................................................. 41

HRS § 11-341(c)(3) ........................................................................ 30, 39

HRS § 11-355 ................................ 3, 11, 49-51, 54-55, 57-58, 62

HRS § 11-355(a) ............................................................................ 50, 61

HRS § 11-355(b) .................................................................................. 51

HRS § 11-355(b)(2) .............................................................................. 35

HRS § 11-381 ...................................................................................... 35

HRS §§ 11-381 to 11-384 .................................................................. 14

HRS § 11-382 ...................................................................................... 35

HRS § 11-391 .......................................................................... 3, 14, 45

HRS § 11-391(a)(1) .......................................................................... 48-49

HRS § 11-391(a)(2) .............................................................................. 47

HRS § 11-391(a)(2)(B) .......................................................................... 8

## Federal Statutes

1940 Amendments to the Hatch Act ................................................................. 53

Federal Election Campaign Act of 1971 ....................................................... 53

2 U.S.C.A. § 431(f) ......................................................................................... 29

2 U.S.C.A. § 431(20)(A)(iii) ........................................................................... 44

2 U.S.C.A. § 441b(b)(4)(B) ............................................................................. 25

2 U.S.C.A. § 441c ................................................................................ 53, 56, 59

2 U.S.C.A. § 441d(a) ....................................................................................... 48

## Hawaii Constitutional Provisions

Haw. Const. Art. VII § 5 .................................................................................. 61

Haw. Const. Art. VII § 9 .................................................................................. 61

Haw. Const. Art. III § 15 ................................................................................. 59

## Federal Constitutional Provisions

First Amendment .............................................................................. 11, 14, 34

## Legislative Material

1970 Haw. Sess. L. Act 26 .............................................................................. 15

1973 Haw. Sess. L. Act 185 ...................................................................... 15, 30

Hse. Stand. Comm. Rep. No. 188, in 1973 Hse. Journal at 840 ................... 15

1975 Haw. Sess. L. Act 146 ...................................................................... 15, 46

1976 Haw. Sess. L. Act 127 ...................................................................... 15, 30

1979 Haw. Sess. L. Act 224 ............................................................................ 15

Conf. Comm. Rep. No. 78, in 1979 Hse. Journal at 1137 ....................... 15, 29

1995 Haw. Sp. Sess. L. Act 10 ........................................................... 16

1995 Hse. Journal at 853 .................................................................. 16

1995 Sen. Journal at 681 .................................................................. 16

Hse. Stand. Comm. Rep. No. 522, in 1995 Hse. Journal at 1219 ............................ 16

Sen. Stand. Comm. Rep. No. 1344, in 1995 Sen. Journal at 1345 ........................ 16

2005 Haw. Sess. L. Act 203 ............................................................... 51

2005 Hse. Journal at 477 .................................................................. 51

Conf. Comm. Rep. No. 185, in 2005 Hse. Journal at 1827 ..................................... 51

H.B. 1747, H.D. 1, S.D. 1 (2005) ...................................................... 51

H.B. No. 1747, H.D. 1 (2005) ........................................................... 51

Rules of the Hawaii State House of Representatives 11.2(1) .................................. 59

Rules of the Hawaii State Senate 3(7) ...................................................... 59

S.B.1332 (2011) ............................................................................ 59

Sen. Stand. Comm. Rep. No. 610 (2011) .................................................. 61

## Hawaii Rules

HAR § 3-160-2 ............................................................................. 44

HAR § 3-160-3(b) ......................................................................... 39

HAR § 3-160-6 ............................................................................. 30

HAR § 3-160-21(c) .................................................................... 26, 34

HAR § 3-160-48 ....................................................................... 10, 37

## Other Authorities

*Webster's New Collegiate Dictionary* (9th ed. 1990) ................................. 19, 23, 45

## INTRODUCTION

This is a campaign finance case. Hawaii's campaign finance laws begin with this: "[t]he purpose of this part is to provide transparency in the campaign finance process." Hawaii Revised Statutes (HRS) § 11-301. This appeal raises constitutional challenges to several of Hawaii's campaign finance disclosure provisions, provisions that allow the public to determine the financial backers of campaign advertising. This appeal will therefore decide whether the assurance of transparency from the Hawaii Legislature will have any real meaning for Hawaii's voters. "The ability of voters to determine who is behind the advertisements seeking to shape their views is integral to the 'full realization of the American ideal of government.'" Human Life of Washington v. Brumsickle, 624 F.3d 990, 1017 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1477 (2011) (citation omitted).

Plaintiffs raised constitutional challenges to several sets of Hawaii's campaign finance laws.[1] On summary judgment, the District Court for the District of Hawaii upheld the constitutionality of: (1) the noncandidate committee and

---

[1] *Parties.* Jimmy Yamada, Russell Stewart, and A-1 A-lectrician, Inc., were Plaintiffs. ER at 334. A-1 is the only Appellant. Defendants-Appellees Michael Weaver, Chair, Tina Gomes, and G. William Snipes, Members; Hawaii Campaign Spending Commission, are together referred to as the Commission. (There are currently two vacancies.)

expenditure definitions, (2) the advertisement definition and disclaimer requirement, and (3) the government contractors' provision. ER at 5-92.[2]

These provisions are critical pieces of the statutory scheme. "Noncandidate committee" is Hawaii's term for what is often called a political action committee or political committee in other jurisdictions. HRS § 11-302.[3] Organizations that make contributions to candidates, or spend money to influence a Hawaii election— *if this activity exceeds $1000* during an election period—must register with the Hawaii Campaign Spending Commission as a noncandidate committee. Id.; HRS § 11-321(g). Noncandidate committees are also required to make regular reporting of the sources of their money and how they spend it. HRS § 11-335. The purpose of these requirements is to provide the voting public with disclosure about who is trying to influence their vote, and where the money to do so comes from. The definition of "expenditure" describes the financial transactions that are subject to these disclosure requirements.

The definition of "advertisement" describes what political advertising is subject to other disclosure laws. HRS § 11-302. Advertisements must identify the speaker, and include a statement whether the advertisements are coordinated with

___

[2] *Record Citations.* ER refers to the excerpts of record. SER refers to the supplemental excerpts of record. Much of the procedural history is relevant for background only. For those documents, citations are given to the clerk's record (CR) and the docket number.

[3] The full text of this statute (and all the others discussed in this brief) are included in Addendum A.

any candidate. HRS § 11-391. This last requirement is called a "disclaimer."

Finally, the government contractors' provision was enacted to combat corruption

and the appearance of corruption in the democratic process. It bans State

contractors from contributing to candidates for office during their contract term.

HRS § 11-355.

The district court upheld each of these provisions as constitutional. ER at

41-91. The court also decided that Plaintiffs lacked standing to challenge Hawaii's

electioneering communications provision.[4] Id. at 68-69. Plaintiff-Appellant A-1

A-lectrician, Inc. challenges these decisions on appeal.

This appeal raises several issues concerning Hawaii's campaign finance

disclosure rules, but no issue premised on A-1's status as a corporation. Citizens

United v. Fed. Election Comm'n, 130 S. Ct. 876 (2010) is therefore far more

important here for what it upheld, rather than for what it struck down. Citizens

United *upheld* disclosure requirements, because "transparency enables the

electorate to make informed decisions and give proper weight to different speakers

and messages." Id. at 916. This Court's ruling in Human Life is also significant

for the disclosure issues on appeal and fully supports the district court's decision.

---

[4] An "electioneering communication" is an advertisement that is broadcast,
published or sent by bulk mail within 30 days of a primary election or 60 days of a
general election, refers to a clearly identifiable candidate and "is not susceptible to
any reasonable interpretation other than as an appeal to vote for or against a
specific candidate." HRS § 11-341. Electioneering communications have
additional disclosure requirements if over $2000 is spent. Id.

Finally, though this Court has yet to rule on a government contractors' provision since <u>Citizens United</u> was decided, other circuit courts have. Provisions akin to the one at issue here have been upheld. See <u>Ognibene v. Parkes</u>, 671 F.3d 174 (2nd Cir. 2012), *cert. denied*, 2012 WL 950086 (U.S. June 25, 2012); <u>Preston v. Leake</u>, 660 F.3d 726 (4th Cir. 2011). This Court should do the same.

The order and judgment of the district court should be affirmed.

## STATEMENT OF THE CASE

Plaintiffs filed the operative first amended verified complaint in September 2010, raising constitutional challenges to several of Hawaii's campaign finance laws. ER at 329. They were: (1) facial and as-applied challenges to the "noncandidate committee" and "expenditure" definitions, <u>id.</u> at 366-74, (2) a facial and as-applied challenge to the electioneering communications provision, <u>id.</u> at 374-78, (3) a facial and as-applied challenge to the "advertisement" definition and the disclaimer requirement, <u>id.</u>, (4) an as-applied challenge to the ban preventing government contractors from making contributions to candidates during their contract term, <u>id.</u> at 378-79, and (5) an as-applied challenge to the noncandidate committee contribution limit, as applied to committees making only independent expenditures. <u>Id.</u> at 379.

Plaintiffs moved for a preliminary injunction on all counts, but later withdrew this request for the government contractors' provision. CR 5, 60. The

motion was heard on October 1, 2010. CR 62. The court granted Plaintiffs' motion for a preliminary injunction on the noncandidate committee contribution limit, as applied to committees making only independent expenditures. CR 71.

On October 29, 2010, the district court denied the rest of Plaintiffs' motion for preliminary injunction. CR 91. Relief was denied as to the noncandidate committee, expenditure, and advertisement definitions, the disclaimer requirement, and the electioneering communications provision. Id. This order did not address the government contractors' provision.

The Commission appealed the grant of the preliminary injunction (concerning the noncandidate committee contribution limit, as applied to committees making only independent expenditures). CR 72. When this Court decided Thalheimer v. City of San Diego, 645 F.3d 1109 (9th Cir. 2011), the Commission withdrew its appeal. CR 113.

Competing motions for summary judgment were briefed in December 2011 and January 2012. CR 125-133.[5] Before the hearing, Judge Seabright asked the parties to:

---

[5] At summary judgment the Commission agreed that, in light of current Ninth Circuit law, the noncandidate committee contribution limit, as applied to committees making only independent expenditures, should be permanently enjoined. ER at 35. No issue about this provision is raised on appeal. Because Stewart's and Yamada's claims concerned only the noncandidate committee contribution limit, ER at 335, they are not discussed further. A-1 did *not* raise any challenge premised on any other aspect of the provisions governing contributions

be prepared to address whether a "narrowing gloss" is necessary to analyze the phrase to influence in the noncandidate committee and expenditure definitions. In particular given that <u>Citizens United v. Fed. Election Comm'n</u>, 130 S. Ct. 876 (2010), rejected the contention that disclosure requirements must be limited to speech that is the functional equivalent of express advocacy, <u>id.</u> at 915, is a narrowing gloss necessary or prudent?

ER at 487. "Narrowing gloss" refers to an interpretation of the phrase "to influence" in <u>Buckley v. Valeo</u>, 424 U.S. 1 (1976).

The parties agreed that there were no genuine issues of material fact. ER at 10. In March 2012, the district court granted the Commission's motion for partial summary judgment.[6] The court (1) held that the noncandidate committee and expenditure definitions were constitutional under the exacting scrutiny test, and were neither overbroad nor vague, (2) applied the narrowing gloss urged by the Commission and interpreted the phrase "to influence" to mean express advocacy and its functional equivalent, (3) ruled that A-1 is properly subject to noncandidate committee status, (4) determined that A-1 lacks standing to challenge the electioneering communications provision, (5) upheld the definition of advertisement and the disclaimer requirement, and (6) upheld the government contractors' ban as constitutional. <u>Id.</u> at 41-92. A-1 appealed. CR 157.

---

to noncandidate committees. ER at 334-84. Its attempts to do so now are improper, and have been waived. Open. Br. 62-63.

[6] The court permanently enjoined the noncandidate committee contribution limit, as applied to committees making only independent expenditures. ER at 91.

A-1 is a for-profit corporation. SER 51 at 3. It is an electrical contractor. ER at 336. It is not directly connected with any political candidate, committee or party. Id.

A-1 is currently registered as a noncandidate committee. Id. A-1 did not form a separate entity to serve as the committee; it registered itself. Id.; SER 51 at 4. A-1 no longer wishes to register as a noncandidate committee. ER at 347. It contends that it does not have "the major purpose of nominating or electing a candidate or candidates for state or local office[.]" ER at 346. A-1 sought a ruling that it need not comply with noncandidate committee disclosure requirements.

A-1 ran three newspaper advertisements identifying candidates on September 17 and 18, 2010, the day before, and the day of, Hawaii's 2010 primary election. ER at 14-15. A-1 describes these as "issue ads," ER at 313-14, but the district court found them to be the functional equivalent of express advocacy. ER at 74-75. Each of the ads mentioned candidates by name and referred to the "representatives" or "people" "we put into office." ER at 15, 440, 442.

Yamada is the CEO of A-1. He testified that he makes the decisions about how to spend A-1's money on political speech. SER 77, Tr. Oct. 1, 2010 at 43, 69. The advertisements cost "roughly $3,000 each[.]" ER at 317. He later attested that A-1 spent "more than $2,000 on these ads." ER at 168. The advertisements state

that they are paid for by "A-1 A-lectrician, Inc." and that they are "published without the approval or authority of the candidate," as required by HRS § 11-391(a)(2)(B). A-1 wishes to run advertisements that identify candidates without including the disclaimer. ER at 355.

A-1 challenges the government contractors' provision because "A-1 is often a government contractor[.]" ER at 337. As of December 2011, A-1 had State contracts. ER at 167. A-1 wants to make contributions, while it is a government contractor, to candidates who (according to A-1) "do *not* decide whether A-1 receives contracts. Nor do they oversee the contracts." ER at 257.

A-1 contributed $20,100 to candidates before the September 2010 primary election. SER 127-5 at 4-5. A-1 also contributed $18,500 to political parties and organizations. Id. at 6 and SER 127-6 at 5. A-1 contributed another $18,000 to candidates before the November 2010 general election. SER 127-7 at 4 and 127-8 at 5-7. The contributions ranged from $250.00 to $2000.00 per candidate. Id.

In December 2011, A-1 stated: "[b]efore the 2010 general election . . . it contributed to several Hawaii state-legislature candidates and seeks to do so again in 2012." ER at 167. A-1 did not specify the number of candidates it planned to contribute to, but later clarified it would "make only $250 contributions" in 2012 "and in materially similar situations in the future[.]" ER at 150.

As for advertising, A-1 initially indicated that it was "too early for A-1 to plan similar speech for September or October 2012." ER at 168. A-1 later clarified that it "will engage in such speech in September or October 2012 and will buy no more than three ads, the number it purchased in 2010." ER at 150-51. "[T]his speech will cost more than $2000 in the aggregate, [and] will have a clearly identified candidate or candidates for state office[.]" Id. A-1's counsel agreed that if A-1 engaged in its 2012 speech as planned, it would "fall under the noncandidate committee definition." ER at 139.

## SUMMARY OF THE ARGUMENT

The government's interest in ensuring transparency in campaign financing is of paramount importance. It is through campaign finance registration and reporting requirements that Hawaii's voters can determine the financial backers behind various speakers seeking to influence their vote and learn how the money is spent during an election cycle. "[T]he people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments. They may consider, in making their judgment, the source and credibility of the advocate." First Nat. Bank of Boston v. Bellotti, 435 U.S. 765, 791-92 (1978). Longstanding case law—including Citizens United—embraces this interest, and fully supports Hawaii's disclosure laws.

The noncandidate committee and expenditure definitions are both building blocks of the reporting and disclosure requirements established by Hawaii law. Both are constitutional under Human Life. Both definitions use the phrase "to influence" the election. HRS § 11-302. To avoid vagueness concerns, the district court properly applied a narrowing interpretation or gloss to this phrase, as requested by the Commission.

Under Hawaii law, noncandidate committees disclose their electioneering communications with their noncandidate committee reports. They do not file separate electioneering communication statements. Hawaii Administrative Rules (HAR) § 3-160-48.[7] Because A-1 is properly regulated as a noncandidate committee, it lacks standing to challenge the electioneering communications provision.

Hawaii's advertisement and disclaimer provisions are both constitutional disclosure rules. The advertisement definition is constitutional under McConnell v. Fed. Election Comm'n, 540 U.S. 93 (2003)[8] and Nat'l Org. for Marriage v. McKee, 649 F.3d 34 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1635 (2012). The disclaimer provision is constitutional under Citizens United itself.

---

[7] The full text of this regulation (and all the others cited in this brief) are provided in Addendum B.

[8] Citizens United overruled McConnell only to the extent it relied on Austin v. Michigan Chamber of Commerce, 494 U.S. 652 (1990). 130 S. Ct. at 913. McConnell's disclosure holdings remain good law. Id. at 915.

A-1's challenge to the government contractors' ban fails. HRS § 11-355 prohibits government contractors from contributing to candidates during their contract term. This provision was enacted to combat corruption and the appearance of corruption. It is judged under closely drawn scrutiny. Other circuit courts of appeal have recently upheld government contractors' provisions and similar laws. Ognibene v. Parkes, 671 F.3d 174 (2nd Cir. 2012), *cert. denied*, 2012 WL 950086 (U.S. June 25, 2012); Preston v. Leake, 660 F.3d 726 (4th Cir. 2011). HRS § 11-355 is likewise constitutional.

The order and judgment of the district court should be affirmed.

## ARGUMENT

### A. Disclosure Laws Create Transparency in Campaign Financing

#### *1. Citizens United and Human Life Support Disclosure*

Citizens United upheld federal campaign finance disclosure rules, which inform the electorate by providing transparency:

> The First Amendment protects political speech; and disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way. This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages.

130 S. Ct. at 916. This Court later upheld Washington's disclosure rules. Human Life of Washington v. Brumsickle, 624 F.3d 990 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1477 (2011). Human Life fully embraces the disclosure interest:

An appeal to cast one's vote a particular way might prove persuasive when made or financed by one source, but the same argument might fall on deaf ears when made or financed by another. . . . As the Supreme Court has stated: "[T]he people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments. They may consider, in making their judgment, the source and credibility of the advocate."

Id. at 1008 (citation omitted).

The Supreme Court's recognition of the transparency interest can be traced back decades. "In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential[.]" Buckley v. Valeo, 424 U.S. 1, 14-15 (1976). See also United States v. Harriss, 347 U.S. 612 (1954) (upholding disclosure rules for lobbyists); McConnell, 540 U.S. at 197 (upholding campaign finance disclosure rules).

In Citizens United, "the Supreme Court unreservedly affirmed the public's interest in knowing who is speaking about a candidate shortly before an election[.]" Human Life, 624 F.3d at 1017. The government's interest in providing transparency for the electorate is *indisputably* "sufficiently important" to justify disclosure requirements.[9] The government does <u>not</u> need to make any

---

[9] A-1's description of this interest as the "[g]overnment's enthusiasm for information," Open. Br. at 85, makes light of the central aim of campaign finance disclosure rules: to provide *the electorate* with information. This is a democracy, and "[t]he ability of voters to determine who is behind the advertisements seeking to shape their views is integral to the 'full realization of the American ideal of government.'" Human Life, 624 F.3d at 1017.

showing of corruption; the transparency interest is sufficient to support the

constitutionality of disclosure laws by itself. Id.

Citizens United *rejected* the "contention that the disclosure requirements

must be limited to speech that is the functional equivalent of express advocacy."[10]

130 S. Ct. at 915. "[T]he public has an interest in knowing who is speaking about

a candidate shortly before an election." Id. Citizens United fully embraces the

government's interest in providing transparency.[11]

### 2. *Most of A-1's Challenges Are to Disclosure Rules*

The noncandidate committee and expenditure definitions, the electioneering

communications provision, the advertisement definition, and the disclaimer

requirement are all disclosure provisions.

The noncandidate committee and expenditure definitions are essential

components of Hawaii's disclosure scheme. It is an organization's status as a

noncandidate committee (and the $1000 threshold) that triggers the reporting

---

[10] "Functional equivalent of express advocacy" and "appeal-to-vote" refer to the same language from Fed. Election Comm'n v. Wisconsin Right to Life, 551 U.S. 449, 469-70 (2007) (WRTL) (plurality op.): "a court should find that an ad is the functional equivalent of express advocacy only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." "Express advocacy" refers to Buckley's "magic words" requirement (i.e., "vote for," "elect," or "defeat.") McConnell, 540 U.S. at 126-28.

[11] This is *not* limited to speech made by organizations that are *not* political committees. Open. Br. at 62, 78 n.54. If Citizens United's disclosure ruling applies to organizations whose activities do *not* trigger noncandidate committee status, that same interest applies with even more force to organizations that do.

requirements. HRS §§ 11-302, 11-321(g). The noncandidate committee definition

does *not* restrict any campaign spending. "Expenditure" describes what

transactions are subject to reporting; there is no maximum placed on expenditures

themselves. HRS §§ 11-302, 11-381 to 11-384. Read in context, the noncandidate

committee and expenditure definitions are disclosure laws.[12]

The electioneering communications provision, the advertisement definition,

and the disclaimer provision are even more obviously disclosure provisions. These

provisions require the disclosure of the source of funding for campaign ads, the

identity of the speaker, and whether its activities are coordinated with any

candidate. HRS §§ 11-302, 11-341, 11-391. Achieving this transparency is the

primary aim of Hawaii's campaign finance laws. HRS § 11-301 ("[t]he purpose of

this part is to provide transparency[.]").

---

[12] A-1 attempts to attack the noncandidate committee definition *by itself.* Open.
Br. at 68, 75 n.50. This is inconsistent with Human Life. 624 F.3d at 1014. It is
also illogical. If the Legislature had adopted the definitions *alone*, the statutes
would have no *operative* provisions whatsoever. The definitions are part of—not
separate from—the statutory scheme. HRS §§ 11-323 (organizational report); 11-
335 (reports); 11-336 (deadlines); 11-337 (timing for reporting expenditures). The
First Circuit agrees. Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 56 (1st Cir.
2011), *cert. denied,* 132 S. Ct. 1635 (2012) ("NOM's attempt to ascribe a free-
standing significance to the PAC label is unpersuasive. It is not the designation as a
PAC but rather the obligations that attend PAC designation that matter for
purposes of First Amendment review."). See also Ctr. for Individual Freedom v.
Madigan, 2012 WL 3930437 at *17 (7th Cir. Sept. 10, 2012) ("there is nothing
constitutionally magical about being labeled as a political committee; what matters
are the burdens that attend the classification.").

The challenged provisions reflect a disclosure interest that Hawaii has protected for decades. Hawaii began regulating campaign spending in the 1970s. Over five major enactments, the structure of our present campaign finance law began to take shape. 1970 Haw. Sess. L. Act 26 (rudimentary provisions regarding candidate expenses); 1973 Haw. Sess. L. Act 185 (registration and reporting requirements for committees); 1975 Haw. Sess. L. Act 146 (adding advertisement definition); 1976 Haw. Sess. L. Act 127 (amendments after <u>Buckley</u>); 1979 Haw. Sess. L. Act 224, SER 127-13 (comprehensive recodification). The 1979 codification is the foundation of the current statutory framework.

The need for transparency is evident from the statutes and the legislative history. <u>See</u> 1970 Haw. Sess. L. Act 26 (requiring disclosure of contributors over $500); Hse. Stand. Comm. Rep. No. 188, in 1973 Hse. Journal at 840, SER 127-12 at 1 ("The purpose of this bill is to . . . expand the scope of public scrutiny relative to the financial aspects of the campaign process"); Conf. Comm. Rep. No. 78, in 1979 Hse. Journal at 1137, 1140, ER at 155 ("comprehensive disclosure and reporting" scheme).

The 1979 enactment was comprehensive. It addressed registration, organizational reports, anonymous contributions, false names, reporting, and advertising. 1979 Haw. Sess. L. Act 224, SER 127-13. Current law requires more disclosure. But the 1979 enactment remains relevant, because many provisions use

the same terminology now. Compare id., SER 127-13 at 1-4 (old §§ 11-191, 11-194, 11-196) with HRS §§ 11-302, 11-321, 11-323.

The Legislature reiterated the disclosure interest when enacting 1995 Haw. Sp. Sess. L. Act 10, SER 127-15, a "breakthrough piece of legislation[.]" 1995 Sen. Journal at 681, SER 127-19 at 1. Act 10 "require[d] noncandidate committees to prepare extensive organization reports," id., and represented "a comprehensive overhaul of [the] campaign spending law[.]" 1995 Hse. Journal at 853, SER 127-20 at 2. The bill "seeks to ensure fair election practices by closing the loopholes in the current law and by mandating full disclosure, both by the candidates themselves as well as by those who make large contributions to candidates." Id. See also Hse. Stand. Comm. Rep. No. 522, in 1995 Hse. Journal at 1219, SER 127-17; Sen. Stand. Comm. Rep. No. 1344, in 1995 Sen. Journal at 1345, SER 127-18. Hawaii's interest in providing transparency is well established.

### 3. Disclosure Rules are Judged Under Exacting Scrutiny

Disclosure rules are judged under exacting scrutiny, not strict scrutiny. "Recent Supreme Court decisions have eliminated the apparent confusion as to the standard of review applicable in disclosure cases." Human Life, 624 F.3d at 1005. "[A] campaign finance disclosure requirement is constitutional if it survives exacting scrutiny, meaning that it is substantially related to a sufficiently important governmental interest." Id. A-1 acknowledges this. Open. Br. at 64. Any

argument otherwise is contrary to this Court's precedent as well as recent Supreme Court rulings. <u>Doe v. Reed</u>, 130 S. Ct. 2811, 2818 (2010).[13]

## B. The Noncandidate Committee and Expenditure Definitions Are Constitutional Disclosure Rules and Are Not Vague or Overbroad

### 1. The Noncandidate Committee Definition is Substantially Related to a Sufficiently Important Government Interest

The noncandidate committee definition is very similar to the provision upheld in <u>Human Life</u>. This Court concluded that Washington's definition of "political committee" was constitutional when it imposed disclosure requirements on "organizations with a primary purpose of political advocacy." 624 F.3d at 1011. This Court rejected the assertion that <u>Buckley</u> limits disclosure to only those groups with the "major purpose" of political advocacy.[14] <u>Id.</u> at 1009-10.

<u>Human Life</u> also rejected the argument that an organization with multiple primary purposes cannot be subject to disclosure rules. There is a "substantial relationship" to the government's transparency interest even when a group has

---

[13] A-1 contends that the State may regulate campaign financing *only* as the Supreme Court has previously upheld. <u>See</u> Open. Br. at 43, 53, 60, 80. This is illogical. The Supreme Court decides *only* those questions before it. <u>McConnell</u>, 540 U.S. at 192. And nothing about Supreme Court case law requires that the *States* legislate only in the manner undertaken by the *federal* government, or only in lockstep with previous case law.

[14] <u>New Mexico Youth Organization v. Herrera</u>, 611 F.3d 669 (10th Cir. 2010) and <u>North Carolina Right to Life v. Leake</u>, 525 F.3d 274 (4th Cir. 2008) are inapposite. Both cases adopt a "major purpose" test that is contrary to <u>Human Life</u>. A-1's contention that <u>Fed. Election Comm'n v. Mass. Citizens for Life, Inc.</u> 479 U.S. 238 (1986) supports a major purpose test, Open. Br. at 74 n.49, was soundly rejected by this Court in <u>Human Life</u>. 624 F.3d at 1010.

17

more than one primary purpose. Id. at 1011. To hold otherwise would invite circumvention. Id. at 1012. See Harriss, 347 U.S. at 622 (organizations with multiple purposes still subject to disclosure rules).

The same analysis applies to the noncandidate committee definition. In Human Life, this Court inquired whether the statute requires disclosure for groups that "make political advocacy a priority, without sweeping into its purview groups that only incidentally engage in such advocacy." Id. at 1011. Importantly, however, Human Life also rejected the idea that the word "primary" is constitutionally required. Id. Therefore, as long as "incidental" political activity is excluded, the States have some flexibility in determining how a political (or noncandidate) committee definition should operate.

The noncandidate committee definition meets the exacting scrutiny test as applied in Human Life. Hawaii's laws *automatically* exclude "incidental" political advocacy because an organization must exceed a $1000 threshold before registration as a noncandidate committee (and reporting) are required. HRS § 11-321(g).

Furthermore, there is a substantial relationship between this provision and the government's transparency interest. The noncandidate committee definition applies only to organizations that have "the ***purpose*** of making or receiving contributions, making expenditures, or incurring financial obligations to influence

the nomination for election, or the election, of any candidate[.]" HRS § 11-302

(emphasis added). The definition excludes groups engaged in only issue advocacy.

Id.; ER at 61.[15] Washington's law also exempted issue advocacy groups. Human

Life, 624 F.3d at 1012.

When an organization acts with "the purpose" of political advocacy,

logically, their political activity is not accidental. "Purpose" denotes *intent*: these

activities are among the *goals* an organization seeks to achieve. *Websters New*

*Collegiate Dictionary* (9th ed. 1990) at 957 ("purpose" "something set up as an

object or end to be attained: intention."). *Incidental* political activity (less than

$1,000) does *not* trigger reporting requirements under Hawaii law. HRS § 11-

321(g). Compare id. with North Carolina Right to Life, Inc. v. Bartlett, 168 F.3d

705, 712 (4th Cir. 1999) (political committee defined as acting with "the primary

or incidental purpose" of supporting or opposing any candidate).

As in Human Life, Hawaii's definition covers organizations that have *more*

*than one* purpose. Many organizations have multiple purposes. Regulating *only*

those that identify *one* single purpose (i.e., campaign-related speech) would invite

circumvention of disclosure requirements. Human Life rejected the notion that

only organizations with *one* purpose can be subject to political committee status.

---

[15] Hawaii law distinguishes between "issue advocacy" and advocacy for or against ballot questions, which are separately regulated. HRS § 11-302 (defining "ballot issue committees"). No issue regarding *ballot* issues was raised in this case.

19

624 F.3d at 1011-12. If anything, the need for disclosure *increases* when organizations have multiple purposes. Id. at 1011.

Washington's law contained the word "primary," and Hawaii's law does not. This does not change the result here, because the "purpose" requirement—and the statute's exclusion of issue advocacy and incidental political activity—are sufficiently related to the governmental interest to satisfy the exacting scrutiny test. The same reasoning from Human Life—avoiding circumvention, organizations have multiple purposes, the exclusion of issue advocacy and incidental political activity—all apply with equal force here. Id. at 1009-12.

The way in which political committees operate further demonstrates the proper tailoring of this law. Organizations often have innocuous-sounding names that disguise their funding sources and what political interests they serve. See McConnell, 540 U.S. at 197 ("Plaintiffs never satisfactorily answer the question of how 'uninhibited, robust, and wide-open' speech can occur when organizations hide themselves from the scrutiny of the voting public."); Human Life, 624 F.3d at 1017-18 ("organizations 'with disingenuously innocuous names like American Crossroads and the American Action Network' [can] serve as 'a funnel for anonymous campaign donations[.]'") The *source* of such an organization's funding must be disclosed in order to achieve transparency. Under Hawaii law, the regular noncandidate committee reports serve this objective. HRS § 11-335.

Committees in Hawaii have used similar tactics to disguise their funding sources. Noncandidate committees currently or recently registered with the Commission include: Change Hawaii, Citizens for Responsive Government, Coalition for Hawaii's Future, Hope for Hawaii, Hawaii Alliance, Hawaii Citizens' Rights Political Action Committee, and Committee for Good Government. SER 127-1 at 1-2. Disclosure is critical when political committees choose names like these. The noncandidate committee definition *is* sufficiently tailored to the transparency interest. Without reaching these organizations, efforts to provide transparency would be incomplete at best.[16]

## 2. A-1 Misinterprets *Human Life* and *Citizens United*

A-1 argues that <u>Human Life</u> establishes a priority/incidental test for political committee status. Open. Br. at 68-70. This is inaccurate. <u>Human Life</u> *applied the exacting scrutiny test*: "While we do not hold that the word "primary" or its equivalent is constitutionally necessary, we do hold that it is sufficient in this case to ensure that the Disclosure Law is appropriately tailored to the government's

---

[16] This aspect of the noncandidate committee definition becomes more important in light of recent developments regarding independent spending. Noncandidate committees making *only* independent expenditures are governed by the permanent injunction, and are therefore not subject to the noncandidate committee contribution limit. ER at 91. The facility by which a speaker may hide his or her identity increases when a noncandidate committee operates without a contribution limit. A single contributor may provide millions of dollars to a committee with an innocuous name, and let the committee make all the election-related speech without the contributor's name attached. Disclosure rules allow the electorate to learn the true source of such messages.

informational interest." 624 F.3d at 1011. The discussion shows what factors support this Court's conclusion that Washington's law was constitutional. Id. at 1010-12. It does not establish a formulaic test governing political committee status. Because Human Life holds that "primary" or a similar word is *not* constitutionally required, id. at 1011, the *exclusion* of incidental activity is the more pertinent point in evaluating the constitutionality of the statute.

A-1 assumes that if its political activities are not a "priority" (as it reads Human Life), then their activities must be "incidental." Open. Br. at 29, 70-71. Human Life assigns no such meaning to the word "incidental;" it uses the term as it is usually understood. 624 F.3d at 1011. This argument is also illogical. Just because one activity is among an organization's priorities, it does *not* follow that every other purpose is incidental. Human Life also contradicts A-1's implicit assumption that an organization can have only one "priority" activity.[17]

Human Life does *not* hold that only organizations with a "primary" purpose of political advocacy can be regulated as political committees. The Court rejected that conclusion. Id. at 1011. Instead Human Life holds that political committee registration requirements ***must avoid "sweeping into its purview groups that only incidentally engage" in political advocacy***. Id. (emphasis added).

---

[17] Such a reading would be an indirect manner to adopt the "major purpose" test, which this Court rejected in Human Life. 624 F.3d at 1009-10.

Hawaii excludes incidental political advocacy with a $1000 threshold. HRS § 11-321(g). Hawaii has *no* separate "independent expenditure" disclosure requirement, as this Court upheld under Washington law, for organizations that are not political committees. Human Life, 624 F.3d at 998. Hawaii's $1000 threshold applies across the board.[18] HRS § 11-321(g). If an organization makes *less* than $1000 in contributions or expenditures, it is has *no reporting requirements* under Hawaii law at all. The $1000 threshold is therefore the true mark of when disclosure obligations are triggered. This guarantees that Hawaii law meets the requirement to avoid "sweeping into its purview groups that only incidentally engage" in political advocacy. Human Life, 624 F.3d at 1011.

"Incidental" means "minor items (as of expense)" or "being likely to ensue as a chance or minor consequence[;]" "occurring merely by chance or without intention or calculation." *Webster's New Collegiate Dictionary* (9th ed. 1990) at 609. It does *not* mean a small percentage *in proportion to* an organization's general activities. Otherwise a huge corporation, which does billions of dollars in annual business, could escape disclosure rules by claiming it spent "only" $750,000 on an ad campaign. This Court applied this logic in Human Life. 624 F.3d at 1011. It applies with no less force here.

---

[18] A higher $2000 threshold is required to trigger the electioneering communications provision. HRS § 11-341.

The Eighth Circuit's decision in <u>Minnesota Citizens Concerned for Life, Inc.</u> <u>v. Swanson</u>, 2012 WL 3822216 (8th Cir. Sept. 5, 2012) is contrary to <u>Human Life</u>. The court acknowledges as much. <u>Id.</u> at *6. And close analysis shows that there are serious flaws in the Eighth Circuit's analysis. The court disregards the clarity from recent Supreme Court rulings that disclosure rules are judged by *exacting* scrutiny, not strict scrutiny. <u>Id.</u> at *8. The court compounds this error by misapplying the exacting scrutiny test and conflating it with rulings that did not concern disclosure provisions. <u>Id.</u> at *9.[19]

Perhaps most significantly, the Eighth Circuit ignores the Supreme Court's warning that disclosure thresholds are ***legislative judgments, to which the courts owe significant deference***. <u>Buckley</u>, 424 U.S. at 83 ("[t]he line is necessarily a judgmental decision, best left in the context of this complex legislation to congressional discretion. We cannot say, on this bare record, that the limits designated are wholly without rationality."). <u>See also</u> <u>Family PAC v. McKenna</u>, 685 F.3d 800, 811 (9th Cir. 2012) (quoting same language). The Eighth Circuit objects to the low disclosure threshold, 2012 WL 3822216 at *8 n.10, but fails to

_____

[19] For example, the court cites to <u>Buckley</u>'s ruling on the federal *limitation* on independent expenditures, even though that was not a disclosure ruling. <u>Id.</u> at *9; 424 U.S. at 44-51. The court also cites to <u>Davis v. Fed. Election Comm'n</u>, 554 U.S. 724 (2008) in discussing the standards for disclosure provisions. <u>Id.</u> at *9-10. But it is inaccurate to characterize <u>Davis</u> as a disclosure case. The disclosure provision in <u>Davis</u> served no purpose after the *contribution limit* at issue in that case had been struck down on an entirely different basis. 554 U.S. at 744. <u>Davis</u> contains *no* analysis of a freestanding disclosure provision.

24

apply *any* deference due to the legislature in setting that threshold. Instead it substitutes its own judgment in place of that made by the Minnesota Legislature. This case should be given little weight by this Court.[20]

A-1 also misinterprets <u>Citizens United</u>. <u>Citizens United</u> does ***not*** hold that political committee status is "onerous" as a matter of law. Open. Br. at 61, 67. In that part of the opinion, the Court was discussing the segregated-funds PAC alternative for corporations. 130 S. Ct. at 897. This was a *separate* avenue for speech, because corporate electioneering communications were banned before <u>Citizens United</u>. It was subject to significant restrictions on how money could be raised to fund the segregated-funds PAC. 2 U.S.C.A. § 441b(b)(4)(B) (allowing contributions *only* from stockholders, employees and their families). No part of <u>Citizens United</u> rules on the legality of political committee registration ***disclosure*** requirements generally.

---

[20] Even if this Court is inclined to analyze this case further, it has little application here. The Eighth Circuit specifically stated it was not ruling on PAC status, <u>id.</u> at 10 n.11, and Hawaii has *no* separate "independent expenditure" reporting requirement. Furthermore, Hawaii's noncandidate committee disclosure threshold is $1000, *ten times* the disclosure threshold at issue in <u>Swanson</u>. HRS § 11-321(g).

A noncandidate committee with *less* than $1000 in activity is required to file only *one* report every *two years*, once after each election. HRS §§ 11-336(c); 11-339(a). Or the committee may terminate its status. HRS § 11-326. A minimal level of reporting is preferable to *requiring* a noncandidate committee with little activities in one election to *re-register* before the next election. A-1 raised no challenge to this provision, and lacks standing to do so in any event. It stated that it intends to conduct similar political activities (contributions and expenditures) in 2012 "and in materially similar situations in the future." ER at 150.

It is especially inappropriate to read <u>Citizens United</u> in this manner here.

Hawaii law does *not* require any organization to *form* another entity in order to

engage in political advocacy, though it may do so if it wishes. HRS § 11-302.

Likewise, Hawaii law does not require that noncandidate committee funds be

segregated, again unless the organization chooses to do so. HAR § 3-160-21(c).

A-1's lifting isolated words out of <u>Citizens United</u> is transparently misplaced.

3. *The Noncandidate Committee Definition is Not Vague or Overbroad and the Phrase 'To Influence' Is Properly Subject to a Narrowing Gloss*

A-1 claims that the noncandidate committee definition is vague because it

uses the phrase "to influence." Open. Br. at 39-53.[21] This argument fails, because

a law is unconstitutionally vague only "if it fails to provide a reasonable

opportunity to know what conduct is prohibited, or is so indefinite as to allow

arbitrary and discriminatory enforcement." <u>Human Life</u>, 624 F.3d at 1019.

---

[21] A-1's allegations turn on vagueness, with an assertion that the provision is "vague, and therefore overbroad." ER at 369. "[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 615 (1973). Here, the same reasoning that shows why the statute meets the exacting scrutiny test also shows why it is not overbroad. <u>Human Life</u>, 624 F.3d at 1020 n.9. To support an overbreadth claim, A-1 must provide examples. "We generally do not apply the 'strong medicine' of overbreadth analysis *where the parties fail to describe the instances of arguable overbreadth of the contested law.*" <u>Washington State Grange v. Washington State Republican Party</u>, 552 U.S. 442, 450 n.6 (2008) (emphasis added). They have failed to do so. The discussion in <u>Citizens United</u>, Open. Br. at 101, was *not* about an overbreadth challenge. 130 S. Ct. at 892-95. "Citizens United has not made an overbreadth argument[.]" <u>Id.</u> at 934 n.6 (Stevens, J., dissenting).

"[P]erfect clarity is not required even when a law regulates protected speech, and we can never expect mathematical certainty from our language[.]" Id. "The touchstone of a facial vagueness challenge in the First Amendment context . . . is whether a *substantial* amount of legitimate speech will be chilled." California Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1152 (9th Cir. 2001) (emphasis added). See Hill v. Colorado, 530 U.S. 703, 733 (2000) ("speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications.").

It is not enough for A-1 to complain that they are uncertain about what "to influence" means. In the context of electoral campaigns, the phrase "influence an election" is perfectly clear. A party who seeks to influence an election is trying to affect its outcome, in favor of the candidate they support. Speech that does <u>not</u> seek "to influence" an election is *excluded by statute* (i.e., issue ads). HRS § 11-302. It is therefore illogical to suggest that a *substantial* amount of legitimate speech will be chilled.

More importantly, Buckley interpreted this same phrase and added its narrowing interpretation, limiting "to influence" to express advocacy. 424 U.S. at 43. This is called the "narrowing gloss." The functional-equivalent-of-express-advocacy concept came later. WRTL, 551 U.S. at 469-70. "In evaluating a facial

challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 n.5 (1982). At the Commission's request, the district court applied a narrowing gloss (express advocacy and its functional equivalent) to the phrase "to influence," in the noncandidate committee definition. ER at 45. See White v. City of Norwalk, 900 F.2d 1421, 1424 (9th Cir. 1990) (adopting narrowing construction offered by government attorney during litigation) (citing Frisby v. Schultz, 487 U.S. 474, 480-84 (1988).

Federal courts may apply a narrowing construction to a *state* law only if the construction is "reasonable and readily apparent." Boos v. Barry, 485 U.S. 312, 330 (1988). The statutory text and legislative intent determine whether the construction meets this standard. Reno v. Am. Civil Liberties Union, 521 U.S. 844, 884 (1997). The same sources of intent are used when evaluating *state* law. Legend Night Club v. Miller, 637 F.3d 291, 301 (4th Cir. 2011) (discussing constructions of state law, quoting Reno). "When federal courts rely on a "readily apparent" constitutional interpretation, plaintiffs receive sufficient protection from unconstitutional application of the [state] statute, as it is quite likely nonparty prosecutors and state courts will apply the same interpretation." Planned Parenthood of Idaho, Inc. v. Wasden, 376 F.3d 908, 932 (9th Cir. 2004).

A narrowing gloss (express advocacy and its functional equivalent) is "reasonable and readily apparent" here for three reasons. First, the noncandidate committee and expenditure definitions use "to influence" in a *very similar* manner to that in Buckley. Compare 2 U.S.C.A. § 431(f) (in Buckley) ("expenditure (1) means a purchase, payment . . . or anything of value, *made for the purpose of* (A) *influencing the nomination for election, or the election, of any person* to Federal office . . .") (emphasis added) with HRS § 11-302 (expenditure defined as "(1) Any purchase or transfer of money or anything of value, or promise or agreement to purchase or transfer money or anything of value, . . . *for the purpose of*: (A) *Influencing the nomination for election, or the election, of any person seeking nomination for election or election to office* . . .") (emphasis added). The noncandidate committee definition uses the same phrase. HRS § 11-302.

Second, the legislative history from the 1979 codification—the foundation of our current statutes—states its intent to follow Buckley.[22] Conf. Comm. Rep. No. 78, in 1979 Hse. Journal at 1137, ER at 152. The Legislature specifically noted Buckley's "narrowing construction" and its use of the phrase "express

---

[22] A-1's citation to Virginia Society for Human Life v. Caldwell, 152 F.3d 268 (4th Cir. 1998) is misleading. Open. Br. at 41-42. The court *did* apply a narrowing gloss, after certifying a question to the state supreme court. 152 F.3d at 275. (As explained below, it is unnecessary to certify a question here.) In Caldwell, the court "presumed" the Virginia legislature was aware of Buckley. Id. at 273. Here, in contrast, the Hawaii Legislature *explicitly stated* its intent to follow Buckley. ER at 152-56.

29

advocacy." Id. at 155. Two enactments before 1979 highlight how similar

Hawaii's statutes are to the ones considered in Buckley. 1973 Haw. Sess. L. Act

185; 1976 Haw. Sess. L. Act 127 (Addenda C & E). The statutory text and

legislative intent are the major means by which the propriety of a narrowing gloss

is considered. Both are present here.

Third, other provisions show how express advocacy and its functional

equivalent are central to Hawaii's campaign finance laws. "Independent

expenditures" is defined with reference to "express advocacy." HRS § 11-302.

The electioneering communications provision is restricted to communications that

are the functional equivalent of express advocacy. HRS § 11-341(c)(3). The

Commission's regulations *define express advocacy to include an "appeal-to-vote"*

*test*. HAR § 3-160-6; ER at 52. Together, these factors—the striking similarity of

the provisions, the legislative history, and the use of express advocacy and its

functional equivalent in Hawaii's laws—amply demonstrate that the application of

the narrowing gloss is "reasonable and readily apparent" here.

This Court declined to apply a narrowing gloss to a campaign finance law in

American Civil Liberties Union of Nevada v. Heller, 378 F.3d 979 (9th Cir. 2004).

In Heller, the state law was *not* similar, and no supportive legislative history was

discussed. Id. at 982-86. Notably, in Heller this Court commented that the phrase

"influencing" *was* "amenable to a narrowing construction." Id. at 986 n.5.  Heller therefore supports the application of the narrowing gloss here.[23]

Many of Hawaii's campaign finance laws take their inspiration from the laws considered in Buckley.  The Hawaii Legislature is entitled to rely on Supreme Court case law explaining how these laws will be interpreted.  Construing the phrase "to influence" to mean express advocacy and its functional equivalent is "reasonable and readily apparent."  With this construction, there is no vagueness concern.  The First Circuit recently adopted the same narrowing construction for the word "influence" in Maine's statutes and upheld the statutes against a vagueness challenge.  Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 64-67 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1635 (2012).  A second ruling applying the gloss followed.  Nat'l Org. for Marriage v. McKee, 669 F.3d 34, 44 (1st Cir. 2012), *petition for cert. filed*, (U.S. May 22, 2012) (No. 11-1426).  This Court should do the same.[24]

---

[23] Because the factors supporting the application of the narrowing gloss are so strongly presented, it is not necessary to certify a question to the Hawaii Supreme Court.  But if this Court felt otherwise, given the similarity of the statutes, the correct course would be to certify a question, not strike the statutes down as unconstitutional.

[24] A-1 contends that Citizens United rendered the appeal-to-vote test (i.e., the functional equivalent of express advocacy) unconstitutionally vague.  Open. Br. at 45-49.  This is baseless.  First, Citizens United held that disclosure requirements are not limited to the functional equivalent of express advocacy.  130 S. Ct. at 915.  The Court's continued use of this concept refutes A-1's contention that it is vague.  Second, though Citizens United struck down the statute where the functional-

*4. A-1 is Properly Subject to the Noncandidate Committee Definition*

A-1's as-applied challenge to the noncandidate committee definition fails.

An organization need not have political advocacy as its sole major purpose in order

to be subject to disclosure requirements. Human Life, 624 F.3d at 1009-11.

---

equivalent-of-express-advocacy concept initially appeared, "[i]t is a large and unsubstantiated jump" "to read Citizens United as casting doubt on the constitutionality of any statute or regulation using language similar to the appeal-to-vote test to define the scope of its coverage." McKee, 649 F.3d at 69. Finally, nothing about WRTL footnote 7 indicates that the functional-equivalent-of-express-advocacy test is vague outside the context of electioneering communications as defined by federal law. Open. Br. at 45-49. This argument is contradicted by WRTL itself. 551 U.S. at 474 n.7 (detailing reasons why the test is not vague). *Three* circuits have rejected the same argument. McKee, 649 F.3d at 70 (finding "appeal-to-vote formulation" clear and not vague; citing WRTL); The Real Truth About Abortion, Inc. v. Fed. Election Comm'n, 681 F.3d 544, 552-54 (4th Cir. 2012) (upholding regulation premised on functional equivalent of express advocacy, WRTL is not vague); Nat'l Org. for Marriage, Inc. v. Roberts, 753 F. Supp. 2d 1217, 1220 (N.D. Fla. 2010) ("Far from overruling WRTL, the Court [in Citizens United] embraced a straightforward application of the appeal to vote test."), *aff'd sub nom.* Nat'l Org. for Marriage v. Secretary, 2012 WL 1758607 (11th Cir. May 17, 2012) (*per curiam*). See also Ctr. for Individual Freedom v. Madigan, 2012 WL 3930437 at *14 (7th Cir. Sept. 10, 2012) (upholding Illinois' electioneering communications provision, which contains a functional-equivalent-of-express-advocacy requirement: "Article 9 is carefully drawn to track a definition already approved by the Supreme Court in Wisconsin Right to Life.")

Colorado Ethics Watch v. Senate Majority Fund, 269 P.3d 1248 (Colo. 2012) and Nat'l Right to Work Legal Defense and Education Foundation v. Herbert, 581 F. Supp. 2d 1132 (D. Utah 2008) do not say differently. Open. Br. at 44-48. Colorado Ethics concerned whether the phrase "expressly advocating" in Colorado's constitution meant exactly that, and there was no narrowing gloss offered by a state enforcement agency, as there is here. 269 P.3d at 1250. Nat'l Right to Work adopted an interpretation of Buckley that is contrary to Human Life. 581 F. Supp.2d at 1141. And its interpretation of WRTL is contrary to the weight of the authority since Citizens United. Id. at 1150.

A-1's political activity is not incidental. Open. Br. at 70-71. During the 2010 election, A-1 gave more than $18,000 to political organizations and parties, contributed more than $38,000 to candidates, and spent about $9000 on political ads. SER at 127-5 to 127-8; ER at 317, 340. This exceeds *$65,000*. Such a sum cannot seriously be called "incidental." <u>Canyon Ferry Road Baptist Church v. Unsworth</u>, 556 F.3d 1021 (9th Cir. 2009) (striking down disclosure provisions applied to "incidental" activities: space on a table for flyers, and a few minutes of the pastor's time).

A-1 predicted that its 2012 activities would involve fewer contributions to candidates, but approximately the same amount of advertising.[25] ER at 150-51. A-1 did not specify the number of candidates it would contribute to, but stated it would contribute $250 each. <u>Id.</u> If A-1 gave $250 each to nine candidates (the number of contributions identified in the complaint, ER at 337) this would total $2,250. A-1 intends to produce advertisements similar to those from 2010. ER at 150-51. Three advertisements at $3,000 each, ER at 317, is $9,000. These

---

[25] The district court commented that A-1 was "moving the ball" by altering its level of political activity midway through the case. ER at 118. A-1 claims that <u>Human Life</u> caused it to alter its plans for future political speech. Open. Br. at 27. The Commission notes that A-1 made $16,000 in candidate contributions after <u>Human Life</u> was decided. SER 127-8 at 5-7. This difference of opinion does not create a genuine issue of material fact. A-1 agreed that "when we engage in the speech that that declaration contemplates [ER at 149-51], we still fall under the noncandidate committee definition." ER at 139.

activities would total $11,250, well over the $1000 threshold. HRS § 11-321(g).

This is a significant sum, and does not qualify as "incidental" either.[26]

A-1 does not challenge the noncandidate committee reporting requirements.

Open. Br. at 68, 75 n.50. Even if it did, the reporting is not burdensome. Filing is

done electronically and at infrequent intervals. HRS § 11-336. The forms are

straightforward. SER 127-4 to 127-9. No separate legal entity or segregated fund

is necessary, as long as records are kept tracking the noncandidate committee's

financial activity. HAR § 3-160-21(c). Hawaii's reporting requirements are not

unduly burdensome given that only organizations with both the "purpose" of

political advocacy *and* activities exceeding the $1000 threshold must comply.[27]

HRS §§ 11-302, 11-321(g). See SpeechNow.org v. Fed. Election Comm'n, 599

F.3d 686 (D.C. Cir. 2010), *cert. denied,* 131 S. Ct. 533 (2010) (reporting

requirements not overly burdensome).

---

[26] A-1's claim that "incidental" has little meaning if it includes A-1's $9000
spending on ads is an indirect complaint about Hawaii's $1000 disclosure
threshold. Open. Br. at 70-71; HRS § 11-321(g). But A-1 did *not* challenge this
threshold. And disclosure thresholds are reviewed only under a *very* deferential
standard in any event: "wholly without rationality." Family PAC v. McKenna, 685
F.3d 800, 811 (9th Cir. 2012) (quoting Buckley).

[27] A-1 makes no argument that its status as a corporation should shield it from
disclosure requirements. Open. Br. Even if it had, this argument was rejected in
Citizens United. "The First Amendment protects political speech; and disclosure
permits citizens and shareholders to react to the speech of corporate entities in a
proper way. This transparency enables the electorate to make informed decisions
and give proper weight to different speakers and messages." 130 S. Ct. at 916.

It is not necessary to consider the narrowing gloss for A-1's *as-applied* challenge to the noncandidate committee definition. Running advertisements about candidates just prior to the election and providing financial support for candidates' electoral ambitions is nowhere near the edges of what the phrase "influencing the election" means. The assertion that the statute is vague *as to them* is baseless.[28]

5.    *The Expenditure Definition is Constitutional for the Same Reasons*

A-1 makes the same arguments about the expenditure definition.    Open. Br. at 39.  The arguments above dispose of this challenge.

Hawaii's campaign finance laws regulate but do not prohibit expenditures. HRS §§ 11-381, 11-382.  The purpose of the provisions concerning expenditures is transparency, that is, to inform the public how much money is being spent (and by whom) to support or oppose the election of a candidate.  HRS § 11-335(b)(2).

The expenditure definition lists what is included.  HRS § 11-302.  It excludes volunteer, voter registration, and uncompensated internet activities.  Id. Achieving *effective* disclosure depends on a functional definition of "expenditure." Without such a definition, the law will have loopholes.  Campaign finance laws are

---

[28] This Court therefore need not reach A-1's *facial* vagueness claim.  "[A] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others[.]"  Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2719 (2010).  A-1's overbreadth claims are addressed above.

constructed of "interlocking multilayered provisions designed to prevent circumvention[.]". Federal Election Comm'n v. Colorado Republican Federal Campaign Comm., 533 U.S. 431, 457 n.19 (2001). The Commission's interest in preventing circumvention of other disclosure rules further supports the definition of expenditure. Human Life, 624 F.3d at 1011-12. The definition meets the exacting scrutiny test.

This definition is not unconstitutionally vague or overbroad. The word "influencing" operates in this provision in the same manner it does in the noncandidate committee definition. HRS § 11-302. In both definitions the word "influence" (and its variant "influencing") is tied to the *nomination* or *election* of a *candidate* to *office*. Id. The narrowing gloss discussed above applies with equal force here. There is no vagueness problem. Buckley; McKee. The provision is not overbroad for the same reasons it meets the exacting scrutiny test. Human Life, 624 F.3d at 1020 n.9. As noted above, A-1 has failed to put forth a proper overbreadth challenge in any event.

A-1's as-applied challenge to the expenditure definition is easily discarded. A-1's political activities plainly fall within the scope of the statute. SER 127-5 to 127-8; ER at 440. It is constitutional to impose disclosure requirements on such activities. Human Life.

## C.     The Electioneering Communications Provision is Constitutional

### 1.     A-1 Lacks Standing to Challenge this Provision

"A noncandidate committee registered with the commission is not required to file a statement of information for disbursements for electioneering communications." HAR § 3-160-48.   Electioneering communications are included within regular noncandidate committee reporting.  Because A-1 is properly regulated as a noncandidate committee, the district court concluded that A-1 lacks standing to challenge the electioneering communications provision.  ER at 21 n.9, 69.  A-1 agrees with this logic.  Open. Br. at 35.   This Court therefore need not address A-1's challenge to HRS § 11-341.

### 2.     The Electioneering Communications Provision is a Constitutional Disclosure Rule and is Neither Vague Nor Overbroad

Even if A-1 had standing, their challenge to this provision fails.[29]  HRS § 11-341 is a disclosure rule.  The government's transparency interest in campaign finance laws is well established.  All that remains is a tailoring analysis.

HRS § 11-341 easily meets the exacting scrutiny test.  "Electioneering communication" means an advertisement that (1) refers to "a clearly identifiable

---

[29] A-1's only argument that is unique to the electioneering communications provision concerns the 24-hour reporting requirement.  Open. Br. at 88.  Their other arguments about this provision overlap with their arguments about the disclaimer requirement, or the arguments addressed above.  Id. at 77-92.  A-1 also argues that the electioneering communications provision is unconstitutional because it uses the word "advertisement."  Id. at 54-58.  This is addressed below.

candidate," (2) is made within 30 days prior to a primary election or 60 days prior to a general election, and (3) is "not susceptible to any reasonable interpretation other than as an appeal to vote for or against a specific candidate." HRS § 11-341(c). The definition excludes news stories, expenditures, and candidate debates.

This law is two-thirds *identical* to language upheld by the Supreme Court. McConnell upheld the federal electioneering communications provision. The federal statute defines "electioneering communication" as one that referred to a "clearly identified candidate" made within 60 days of a general election or 30 days of a primary election, and was "targeted to the relevant electorate." 540 U.S. at 189. McConnell rejected the argument that only "express advocacy" could be regulated in this fashion. Id. at 190-92. The statute was not unconstitutionally vague because "[t]hese components are both easily understood and objectively determinable." Id. at 194. Two of the three factors in Hawaii's law are exactly the same. HRS § 11-341(c). There is no vagueness concern.

Notably, Citizens United also upheld the federal electioneering communications provision, despite objections raised about the required disclosure. 130 S. Ct. at 916. See also Ctr. for Individual Freedom v. Madigan, 2012 WL 3930437 at *20 (7th Cir. Sept. 10, 2012) ("The Supreme Court has already found the federal [electioneering communications] definition to be neither overbroad nor vague in the context of disclosure requirements[.]") (citing Citizens United).

Hawaii's provision is made more precise by other law. "'Clearly identified' means the inclusion of name, photograph or other similar image, or other unambiguous identification of a candidate." HRS § 11-302. The regulation gives examples. HAR § 3-160-3(b) ("Examples of 'clearly identified' include but are not limited to: 'the Governor', 'your Senator', 'the incumbent'[.]'").

In lieu of the federal targeting-the-electorate provision, Hawaii's law requires that an electioneering communication be "not susceptible to any reasonable interpretation other than as an appeal to vote for or against a specific candidate." HRS § 11-341(c)(3). In other words, the communication must be the functional equivalent of express advocacy. Id. This phrase comes from WRTL. 551 U.S. at 469-70. Because the federal statute has no similar requirement, Hawaii's electioneering communications provision is *narrower* than the one upheld in McConnell. It is also narrower than what is constitutionally permissible under Citizens United, because disclosure provisions need not be limited to the functional equivalent of express advocacy. 130 S. Ct. at 915. And the phrase "appeal to vote for or against a specific candidate" is easily understood.[30]

The federal definition of electioneering communications is not the only constitutional method to regulate this kind of advertisement. In Alaska Right To

---

[30] A-1 claims that the provision is vague because it uses an appeal-to-vote test (i.e., functional equivalent of express advocacy). Open. Br. at 53. This is addressed above.

Life Committee v. Miles, 441 F.3d 773 (9th Cir. 2006) (ARTLC), this Court

upheld Alaska's definition of electioneering communications, which included a

requirement that the "communication address an issue of national, state or local

political importance," in lieu of the federal electorate-targeting requirement. Id. at

782-84.[31] The Court noted that Alaska's provision was narrower than the federal

equivalent because "it covers only certain kinds of communication." Id. at 783.

"[I]f anything, those words make the provision less rather than more vague." Id. at

784. McConnell and ARTLC demonstrate how misplaced A-1's challenge is.

See also Ctr. for Individual Freedom, 2012 WL 3930437 at *19-22 (upholding

similar electioneering communications provision).

The statute is also properly tailored. There is a $2000 threshold. HRS § 11-

341(a). An advertisement that is low in cost is therefore excluded. Id. The

documentation required for reporting includes: the name of the person making the

disbursement, the amount of the disbursement and its recipient, the relevant

elections, the names of contributors who gave funds for the purpose of

broadcasting the electioneering communication, and whether the communication

was made in coordination with any candidate. HRS § 11-341(b). This information

should be readily at hand for anyone who purchases an electioneering

---

[31] The only aspect of ARTLC that has been altered by later Supreme Court cases is
the clarification that *exacting* scrutiny, *not* strict scrutiny, applies to disclosure
provisions. Human Life, 624 F.3d at 1004. ARTLC otherwise remains good law.
Id. at 1013.

communication. The filing is electronic and the form is relatively simple. SER

127-10. These requirements are not burdensome.

A-1 focuses on the 24-hour reporting requirement. Open. Br. at 88; HRS §

11-341(a). This short time period is justified, because electioneering

communications are made only within the *last few weeks before an election*. HRS

§ 11-341(c)(2). It is this juxtaposition that justifies the 24-hour reporting period.

The governmental interest in providing transparency to the electorate is served *only*

if disclosure is given *before* the election.

24-hour reporting requirements have been upheld in other courts. "[I]n

McConnell the Supreme Court upheld a nearly identical provision that required a

report to be filed within twenty-four hours of the date on which expenditures

exceeded a trigger amount." North Carolina Right to Life Comm. Fund For Indep.

Political Expenditures v. Leake, 524 F.3d 427, 439 (4th Cir. 2008). See also

ARTLC, 441 F.3d at 790 (rejecting attack on 24-hour reporting requirement).[32]

Nat'l Org. for Marriage v. McKee, 723 F. Supp. 2d 245, 266 (D. Me. 2010),

*aff'd in part, vacated in part*, 649 F.3d 34 (1st Cir. 2011), *cert. denied,* 132 S. Ct.

1635 (2012) does not support A-1's argument. Open. Br. at 88. In that case, the

---

[32] A-1's attempt to undercut the electioneering communications provision by
comparing the threshold amount from Center for Individual Freedom v. Tennant,
2011 WL 2912735 (S.D. W.V. 2011) is baseless. Open. Br. at 88-89 n.65. A-1 did
not challenge Hawaii's disclosure threshold. And, as mentioned above, disclosure
thresholds are reviewed only under a *very* deferential standard: "wholly without
rationality." Family PAC, 685 F.3d at 811 (quoting Buckley).

district court *upheld* a Maine statute that required disclosure of "independent expenditures" within twenty-four hours if made within two weeks before the election. Id. What it struck down was a Maine *regulation* requiring reporting within twenty-four hours with *no* pre-election time period limitation. Id. No issue about the *regulation* was raised on appeal. McKee, 649 F.3d at 41 n.2.

The First Circuit *affirmed* the ruling upholding the *statute*: Maine's law "requires a report of any expenditure over $100 for communications naming or depicting a clearly identified candidate within a set period prior to any election. . . . [T]he information that must be reported under this subsection is . . . 'modest,' and it bears a substantial relation to the 'public's interest in knowing who is speaking about a candidate shortly before an election.'" Id. at 60 (citations omitted). This 24-hour reporting provision is triggered by a *far* lower amount ($100) than Hawaii's $2000 threshold, but was still upheld. Id. at 60.[33]

"Given the relatively short timeframes in which electioneering communications are made, the interest in assuring that disclosures are made promptly and in time to provide relevant information to voters is unquestionably significant." McConnell, 540 U.S. at 200. Hawaii's 24-hour reporting period for electioneering communications applies for a limited time period, and serves to

---

[33] Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174 (10th Cir. 2000) is inapposite because the statute had *no pre-election time period limitation* and the court applied strict scrutiny. Id. at 1197.

create real transparency *before the election* for the voting public. HRS § 11-341 is constitutional.

**D.    The Definition of Advertisement is Not Vague or Overbroad and the Disclaimer Required for Advertisements Is a Constitutional Disclosure Rule**

*1.    The Definition of Advertisement Is Constitutional Under <u>McConnell</u>*

A-1 claims that the definition of "advertisement" is unconstitutionally vague because it uses the words "advocates," "supports," and "opposition." Open. Br. at 54-58. But similar language was upheld in <u>McConnell</u>:

> We likewise reject the argument that § 301(20)(A)(iii) is unconstitutionally vague. The words "promote," "oppose," "attack," and "support" clearly set forth the confines within which potential party speakers must act in order to avoid triggering the provision. ***These words provide explicit standards for those who apply them and give the person of ordinary intelligence a reasonable opportunity to know what is prohibited.***

540 U.S. at 243 n.64 (emphasis added). The First Circuit also rejected a vagueness challenge to these same words ("support" and "opposition" and "promoting"), and found <u>McConnell</u> persuasive:

> [T]he statutory context here is close enough to <u>McConnell</u> to make the Court's conclusion that the terms are not vague particularly persuasive. In each of the provisions, the terms "promote"/"promoting," "support," and "oppose"/"opposition" have an election-related object: "candidate" in the federal law, and "candidate," "nomination or election of any candidate" and "campaign, referendum or initiative" in the Maine provisions[.] If anything, the terms of Maine's statutes provide slightly more clarity: for example, § 1052(5)(A)(5)'s reference to "promoting ... the nomination or election of any candidate" is more precise than the federal law's reference to "promot[ing] ... a candidate[.]" ***We thus find the use of "promoting," "support," and***

*"opposition" in §§ 1019–B and 1052 clear enough to give the person of
ordinary intelligence a reasonable opportunity to know what is prohibited.*

<u>McKee</u>, 649 F.3d at 63-64 (emphasis added, some citations and internal quotation

marks omitted). Like the statute in <u>McKee</u>, Hawaii's statutes have "an election-

related object": "the nomination, opposition or election of the candidate[.]" HRS §

11-302. And like Maine's statute, this language is *more precise* than the language

upheld in <u>McConnell</u>. <u>Compare</u> 2 U.S.C.A. § 431(20)(A)(iii) (quoted in <u>McKee</u>)

("promot[ing] . . . a candidate[,]") <u>with</u> HRS § 11-302 (advertisement) (the

"nomination . . . or election of the candidate . . ."). The advertisement definition is

not unconstitutionally vague.[34]

A-1 challenges three words from the advertisement definition: "advocates,"

"supports" and "opposition." Open. Br. at 54. But the words are not considered

alone: "vagueness challenges will be rejected when it is 'clear what the ordinance

*as a whole* prohibits[.]'" <u>Human Life</u>, 624 F.3d at 1021 (emphasis added). Read

as a whole, the reach of the advertisement definition is clear. Even if these words

are evaluated alone, the case law rejects A-1's argument. "Support" and "oppose"

---

[34] Further specificity is provided by the regulation. HAR § 3-160-2 ("sundry
items" include "clothing, bumper stickers, pins, buttons and similar small
items[.]") The disclosure obligation imposed by this provision is limited to speech
that identifies a candidate and "advocates," "supports," or stands in "opposition" to
that candidate's nomination or election for office. HRS § 11-302. Because
disclosure requirements are <u>not</u> limited to the functional equivalent of express
advocacy, <u>Citizens United</u>, 130 S. Ct. at 915, any overbreadth challenge to this
provision is meritless.

were upheld against vagueness challenges in <u>McConnell</u> and <u>McKee</u>. 540 U.S. at

243 n.64; 649 F.3d at 63-64. These two words are constitutional as written.

The word "advocates" in Hawaii's advertisement definition is not vague

either. It is similar to the word "promoting" in <u>McKee</u>. In <u>McKee</u>, "promoting"

appeared in a statute defining "a non-major-purpose PAC to mean an entity that

crosses the requisite threshold of contributions or expenditures 'for the purpose of

promoting, defeating or influencing in any way' a candidate election." 649 F.3d at

63 n.39. This provision defines the scope of disclosure requirements, as Hawaii's

law does. HRS §§ 11-302, 11-391. In <u>McKee</u>, the word "promoting" operated in

the same manner as "advocating" does here: it limited the application of the

provision to those seeking to affect the end result of an election. HRS § 11-302.

"Advocates" has a clear meaning in English. The verb "advocate" means

"to plead in favor of: see support." *Webster's New Collegiate Dictionary* at 60

(9th ed. 1990). The use of this word in the advertisement definition is more than

sufficient to give "a reasonable opportunity to know what conduct is prohibited[.]"

<u>Human Life</u>, 624 F.3d at 1019. Its meaning is clear: the advertisement is tied to

the result sought in an election. HRS § 11-302 ("[a]dvocates or supports the

nomination, opposition, or election of the candidate[.]"). Like "support" and

"opposition," the word "advocates" does not make the advertisement definition vague.[35]

Because <u>McConnell</u> and <u>McKee</u> upheld similar provisions, the advertisement definition is constitutional as written. This Court therefore need not decide whether this provision should be subject to a narrowing gloss.[36]

---

[35] <u>Buckley</u> does not say otherwise. Open. Br. at 54. <u>Buckley</u> did <u>not</u> hold that "advocating" was unconstitutionally vague. <u>Id.</u> The Court applied an express advocacy narrowing gloss to an expenditure provision that used the phrase "relative to a candidate," and acknowledged that "advocating the election or defeat of" a candidate was the *more precise* phrasing of the two. 424 U.S. at 42. An express advocacy narrowing gloss was added to the provision primarily to avoid *unduly restricting issue advocacy.* <u>Id.</u> This is no longer a concern, as <u>Citizens United</u> confirms that disclosure obligations need *not* be limited to the functional equivalent of express advocacy. 130 S. Ct. at 915.

[36] The Commission argued below that the advertisement definition was constitutional as written. SER 126-1 at 45-47. The district court applied a narrowing gloss (express advocacy and its functional equivalent) to this provision. ER at 71-72. Given the case law, the Commission feels that this step was unnecessary. However, should this Court agree with the district court that the same narrowing gloss is necessary to avoid vagueness concerns, the Commission will not quarrel with its application here. In that case, the Commission requests that a narrowing gloss be applied to the advertisement definition. See <u>Hoffman Estates</u>, 455 U.S. 495 n.5 (court must consider any limiting construction proffered by state court or enforcement agency); <u>White</u>, 900 F.2d at 1424 (court may accept narrowing construction based on interpretation presented by counsel during litigation) (citing <u>Frisby</u>). See also <u>Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council</u>, 485 U.S. 568, 575 (1988) ("every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.") (citations omitted); <u>Gordon v. Virtumundo, Inc.</u>, 575 F.3d 1040, 1047 (9th Cir. 2009) (court "may affirm on any basis supported by the record."). If necessary, the application of a gloss to this provision would be appropriate for the same reasons articulated above. The advertisement definition was added by 1975 Haw. Sess. L. Act 146 (Addendum D), and was amended and

2. *Citizens United Forecloses Any Challenge to the Disclaimer Provision*

The disclaimer requirement applies to advertisements. HRS § 11-391(a)(2). It requires a "notice in a prominent location" stating that the advertisement is published or broadcast with or without the approval and authority of the candidate.

A-1 claims that the disclaimer detracts from its message and that the State is regulating the content of its speech. Open. Br. at 89-90. A-1 reiterates its claim that only express advocacy can be constitutionally subject to disclosure requirements. Id. at 89. As this Court acknowledged, <u>Citizens United</u> explicitly rejected that argument. <u>Human Life</u>, 624 F.3d at 1016.

The disclaimer requirement is a constitutional disclosure rule for the same reasons discussed above. The government's interest in disclosure is unquestionably sufficient under the exacting scrutiny test. And the disclaimer requirement bears a "substantial relationship" to that interest because it regulates no further than it needs to. The disclaimer provision bans no speech; it requires a disclaimer to prevent confusion about *who* is seeking to influence your vote, and *whether* they are coordinating their efforts with candidates. HRS § 11-391(a)(2). This information is valuable to voters as they evaluate their choices. The disclaimer is only one sentence; the effort of compliance is minimal.

---

recodified during the same major enactments discussed above. It has used "advocates" in the same manner ("advocates or supports") since 1975.

The use of similar disclaimers is so prevalent that there is little chance that a disclaimer will substantially detract from any election-related message. See 2 U.S.C.A. § 441d(a) (federal disclaimer requirement). Political advertisements typically monopolize the airwaves and television stations in the last days before an election. Disclaimers have not undercut the frequency of this particular form of political speech, nor its actual or perceived effectiveness.

Citizens United upheld the federal disclaimer provision, and that provision is more onerous to comply with than Hawaii's provision. 130 S. Ct. at 913-14 (provision specifies length of time that a disclaimer must be displayed in a "clearly readable manner."). See also ARTLC, 441 F.3d at 792-93 (rejecting challenge to disclaimer requirement). A-1's attack on Hawaii's disclaimer requirement is baseless.[37]

McIntyre v. Ohio Elections Comm'n, 514 U.S. 334 (1995) and Heller do not require differently. Neither of these cases concerned a disclaimer provision, as A-1 implies. Open. Br. at 89-90. Both cases concern *attribution* requirements: a speaker in a campaign advertisement must identify themselves. Neither case is pertinent, because *A-1 did not challenge* Hawaii's attribution requirement, HRS §

---

[37] A-1's as-applied challenge to this provision fails as well. A-1's ads are the functional equivalents of express advocacy. ER at 74-75. The ads ran just before the primary election, mention candidates by name, and reference the people "we put into office." Id. Furthermore, under Citizens United disclosure provisions may be constitutionally applied to "issue ads." Human Life, 624 F.3d at 1016.

11-391(a)(1). ER at 355. More importantly, "Citizens United has effectively disposed of any attack on . . . attribution and disclaimer requirements." McKee, 649 F.3d at 61. The order and judgment of the district court should be affirmed.

**E. The Government Contractors' Contribution Ban is a Constitutional Means of Preventing Corruption and its Appearance**

*1. The State's Interest in Preventing Corruption and Its Appearance Is Strongest When Limiting Contributions Made to Candidates*

The complaint challenges HRS § 11-355 *only* as it prevents A-1 from **contributing to candidates** while it is a government contractor. ER at 337. It is an as-applied challenge only. Id. at 382. Other parts of the provision are not at issue. ER at 76. A-1 is "often a government contractor," ER at 337, and at the time of the summary judgment hearing had current State contracts. ER at 167. A-1 stated its intent to make contributions to candidates in 2012. ER at 150.

*Contributions* made directly to *candidates* have long been the *easiest* situation in which corruption or the appearance of corruption may be demonstrated. "Unsurprisingly, the strength of the state's interest in preventing corruption is highly correlated to the nature of the contribution's recipient. Thus, *the state's interest in the prevention of corruption—and therefore, its power to impose contribution limits—is strongest when the state limits contributions made directly to political candidates*." Long Beach Area Chamber of Commerce v. City of Long Beach, 603 F.3d 684, 696 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 392

(2010) (emphasis added).[38] Because A-1 challenges HRS § 11-355 only as it

applies to contributions to candidates, the State's interest in preventing corruption

and its appearance is at its strongest.

2.   *The Government Contractors' Ban is Subject to*
     *Closely Drawn Scrutiny*

This provision is subject to closely drawn scrutiny, not strict scrutiny.

Contribution limits have long been subject to a lesser level of scrutiny. Buckley,

424 U.S. at 20-21.  HRS § 11-355(a) bans contributions to candidates.  It does not

ban the contractor's own independent speech.   It is the *type of speech* that

determines the level of scrutiny, not whether the law can be characterized as a *ban*

or a *limit*.  Thalheimer v. City of San Diego, 645 F.3d 1109, 1124 n.4 (9th Cir.

2011) ("[W]hile it is 'not that the difference between a ban and a limit is to be

ignored . . . the time to consider it is when applying scrutiny at the level selected,

not in selecting the standard of review itself.'") (quoting Fed. Election Comm'n v.

Beaumont, 539 U.S. 146, 162 (2003).  See also Preston v. Leake, 660 F.3d 726,

734-35 (4th Cir. 2011) (applying closely drawn scrutiny to a ban); Green Party of

Connecticut v. Garfield, 616 F.3d 189, 199 (2nd Cir. 2010), *cert. denied*, 131 S. Ct.

3090 (2011) ("we reject plaintiffs' argument that we must apply strict scrutiny

---

[38] Citizens United does not change this, because it did *not* concern contribution
limits. See Ognibene v. Parkes, 671 F.3d 174, 187 n.13 (2nd Cir. 2012), *cert.*
*denied,* 2012 WL 950086 (U.S. June 25, 2012) (Citizens United "clearly does not
apply to contribution limits, which directly benefit the candidate and only
indirectly persuade the voters.").

because the provisions at issue here are bans, as opposed to mere limits."). The closely drawn scrutiny test applies here.

3.  *The Government Contractors' Ban is a Constitutional Means to Prevent Corruption and the Appearance of Corruption*

HRS § 11-355 was enacted in 2005. 2005 Haw. Sess. L. Act 203, SER 127-21. Only *the contractor itself* is subject to the ban. HRS § 11-355(b); Conf. Comm. Rep. No. 185, in 2005 Hse. Journal at 1827, 1828, SER 127-22 at 2. HRS § 11-355 does not bar any contractor from making its own speech. Nor does it prevent any officer or employee of a contractor from making contributions to candidates with their own money.

A "pay to play" system was part of what motivated the Legislature in 2005. See 2005 Hse. Journal at 477 ("It's such a disappointment to me . . . not to see us go after the heart of the problem, which is the "pay to play" game. We should simply outlaw, ban contributions from people who do work with government.") (statement by Rep. Fox), SER 127-23 at 3. At the time Representative Fox made his speech, no such provision was in the bill. See H.B.1747, H.D. 1 (2005), SER 127-24. It was only after he made this plea that the government contractors' ban was added into the bill, H.B.1747, H.D. 1, S.D. 1. Compare SER 127-24 with SER 127-25 at 14-15. See also ER at 80-83 n.26-27 (summarizing history).

HRS § 11-355 seeks to combat corruption and the appearance of corruption. When a "pay to play" system exists, government contractors routinely contribute to

51

*both* sides of a electoral race, in an effort to secure favor regardless of who wins.

Contributing to *both* competitors in a race undercuts the notion that these

contributions are symbolic speech, that is, supportive of the *candidates* themselves.

It is a way to "grease the skids" in government contracting. This is a fundamental

threat to the integrity of the procurement system and our elected officials.[39] "Pay

to play" causes corruption by awarding contracts based on campaign support

instead of on the bids themselves (or creating the appearance of such corruption).[40]

---

[39] A-1 claims that, because this is an as-applied challenge, the Commission must demonstrate corruption or its appearance *from A-1's own speech*. Open. Br. at 95. Under this logic, the Commission can only assert an anti-corruption interest by demonstrating that *A-1 itself is corrupting candidates*. No case supports this conclusion. The Second Circuit categorically rejected the same argument: "[a]ppellants essentially propose giving every corruptor at least one chance to corrupt before anything can be done, but this dog is not entitled to a bite." Ognibene, 671 F.3d at 188.

Even for as-applied challenges, anti-corruption interests are uniformly argued as they apply to the situation as a whole. See Preston, 660 F.3d at 735-37 (discussing general anti-corruption interest when addressing as-applied challenge). A-1 also conflates the *appearance* of corruption with *actual* corruption. "It is not necessary to produce evidence of actual corruption to demonstrate the sufficiently important interest in preventing the appearance of corruption." Ognibene, 671 F.3d at 183. Because government contractors have a financial relationship with the State, any contribution they make to candidates creates at least the appearance of corruption.

[40] This is *corruption*, not "influence" or "access." Open. Br. at 97. "The distinction between mere influence or access, as addressed by Citizens United, and improper influence or access goes to the very heart of representative democracy. It is one thing to gain access to a legislator in order to influence him or her with a policy argument. . . . *It is entirely different to seek to influence a legislator with money in the hope of receiving a contract; such influence is de facto improper and corrupting*." Ognibene, 671 F.3d at 187 n.14 (emphasis added).

Under <u>Nixon v. Shrink Missouri Government PAC</u>, 528 U.S. 377, 391 (2000), the amount of evidence the government needs to produce varies "up or down with the novelty and plausibility of the justification raised." This is not a difficult standard: "the Supreme Court has required only that the perceived threat not be 'illusory,' or 'mere conjecture[.]'" <u>Montana Right to Life Ass'n v. Eddleman</u>, 343 F.3d 1085, 1092 (9th Cir. 2003) (citations omitted). Here, very little (if any) empirical evidence is needed, because the proposition made is utterly unremarkable. The fact that money can skew decisions on government contracts is not novel or implausible. "The ban on political contributions by federal contractors originated more than 70 years ago as part of the 1940 Amendments to the Hatch Act. In 1972, a slightly modified version of the ban was incorporated into the Federal Election Campaign Act of 1971." <u>Wagner v. Fed. Election Comm'n</u>, 2012 WL 1255145 at *4 (D. D.C. Apr. 16, 2012) (citations omitted). <u>See</u> 2 U.S.C.A. § 441c (federal contractors' ban, upheld in <u>Wagner</u>).

The fact that a financial relationship draws into doubt each party's ability to deal objectively with the other is not a novel proposition at all. It is the ***financial relationship*** with the State that makes the potential for corruption a logical given. The Second Circuit recently agreed: "[r]estrictions on contractor contributions are not uncommon and the notion that money and governmental favors are connected is far from implausible. Under <u>Shrink Missouri</u>, therefore, the quantum of

empirical evidence needed is not particularly high." Ognibene, 671 F.3d at 186 n.12. See also Wagner at *7 ("It in no way stretches the imagination to envision that individuals might make campaign contributions to curry political favor.").

If empirical evidence is required, the uncontested evidence before the district court supports the Legislature's conclusion that § 11-355 was necessary to combat a "pay to play" system. The predecessor provision was enacted in 2005. SER 127-21. The data from the election just before that shows that a "pay to play" system *did* exist. SER at 127-1 at 4-5. The Commission's data shows that more than *forty* contractors (and their principals)—*including A-1*—contributed substantial funds to *both sides* of the 2004 Honolulu Mayor's race. Id. This data shows a pattern of contributions from government contractors that readily leads to the appearance of corruption. Id.

The Second Circuit has upheld government contractors' provisions twice since Citizens United. Ognibene; Garfield. The Fourth Circuit upheld a lobbyist ban, relying on similar rationales. Preston. The *federal* contractors' ban was recently upheld as well. Wagner. Each of these support the decision below.

The Second Circuit upheld Connecticut's government contractors' ban in Garfield, to combat corruption and *the appearance of corruption*:

> Even if small contractor contributions would have been unlikely to influence state officials, those contributions could have still given rise to the appearance that contractors are able to exert improper influence on state officials.

> The . . . ban on contractor contributions, by contrast, unequivocally
> addresses the perception of corruption . . . By totally shutting off the flow of
> money from contractors to state officials, it eliminates any notion that
> contractors can influence state officials by donating to their campaigns.

Garfield, 616 F.3d at 205. The court upheld Connecticut's contractors' ban even

though it was significantly broader than HRS § 11-355. Connecticut's law banned

contributions from the contracting entity, as well as from the contractor's

principals, spouse, and immediate family. Id. at 202-03. Hawaii's provision

applies *only* to the contractor. Connecticut's law applies to "prospective"

contractors; Hawaii's law applies only during the contract term. Id. at 202. If

Connecticut's law is "sufficiently tailored," then Hawaii's considerably narrower

law meets this standard as well.

The Second Circuit also upheld New York City's contractors' provision in

Ognibene. The provision *dramatically* reduced the contribution limits for

individuals and entities who have business dealings with the City. 671 F.3d at 180.

These restrictions applied to the contracting entity, and to officers, executives, and

those with 10% or more interest in the business. Id. Though the provision is a

limit, not a ban, it restricted speech by *more people* than Hawaii's law does. In

upholding the law, the court was careful to distinguish between corruption and its

appearance. Id. at 183. The court also noted that the level of a contribution limit is

a policy determination, best made by the legislative body. Id. at 189.

In Preston, the Fourth Circuit upheld North Carolina's ban on contributions to candidates by lobbyists, which, like HRS § 11-355, still allowed for significant independent political activity by those subject to the ban. 660 F.3d at 740. The statute *completely banned* contributions and was constitutional:

> **The legislature thus made the rational judgment that a complete ban was necessary as a prophylactic to prevent not only actual corruption but also the appearance of corruption in future state political campaigns.** This is both an important and a legitimate legislative judgment that "[c]ourts simply are not in the position to second-guess," especially "where corruption is the evil feared."

Id. at 736 (emphasis added). The government's interest in protecting against corruption and its appearance is strongest when limiting contributions made to candidates: "[o]ne can hardly imagine another interest more important to protecting the legitimacy of democratic government." Id.

Finally, after the district court ruled below in this case, the D.C. district court upheld the *federal* contractors' ban. Wagner. This trial court decision is persuasive because it documents the history of the federal provision, and Hawaii's law is similar. Compare 2 U.S.C.A. § 441c with HRS § 11-355. The court explained the long pedigree of the federal contractors' ban, including scandals where contractors were forced into making campaign contributions. Wagner, 2012 WL 1255145 at *4. "It is thus clear that, in passing the ban, Congress wished to prevent corruption and the appearance thereof and, in so doing, to *protect the integrity of the electoral system by ensuring that federal contracts were awarded*

*based on merit.*" Id. at \*5 (emphasis added). "[P]reventing "pay-to-play" deals or pressure on contractors to give—or the appearance that either is occurring—is sufficiently important to warrant restrictions on political contributions by federal contractors." Id.

Garfield, Ognibene, Preston and Wagner all strongly support the district court's conclusion that HRS § 11-355 is properly tailored under the closely drawn scrutiny test.[41]

Government contractors have a *financial relationship* with the State, which makes the appearance of corruption particularly difficult to eliminate. As in Preston, only a complete ban will effectuate the State's goals:

> The role of a lobbyist is both legitimate and important to legislation and government decisionmaking, but by its very nature, it is prone to corruption and therefore especially susceptible to public suspicion of corruption. ***Any payment made by a lobbyist to a public official, whether a campaign contribution or simply a gift, calls into question the propriety of the relationship, and therefore North Carolina could rationally adjudge that it should ban all payments.***

---

[41] The Sixth Circuit's recent decision Lavin v. Husted, 2012 WL 3140909 (6th Cir., Aug. 3, 2012) is inconsistent with the weight of the authority since Citizens United, and should be given little credence by this Court. This case ignores the fact that the government's interest in preventing corruption is at its strongest when limiting contributions to candidates, fails to account for other avenues of speech available to those prohibited from making contributions, and disregards the legislative prerogative to determine the *amount* of a contribution limit. Long Beach; Preston; Ognibene. Most importantly, it fails to discuss the *appearance* of corruption *at all*.

660 F.3d at 737 (emphasis added). This same logic applies here. *Any amount of money* exchanged between elected officials and government contractors will create an appearance of corruption, because lucrative State contracts will be seen as spoils of political patronage, rather than the result of the merit-based system envisioned by Hawaii's procurement laws. HRS § 11-355 is constitutional.[42]

---

[42] A-1 does *not* argue that the evidence presented is insufficient (1) to justify a *ban*, rather than a limit, or (2) to show that corruption and its appearance motivated the enactment of this provision. Open. Br. at 92-98. This argument has been waived. Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999).

Even if it had not been waived, logically the constitutionality of this provision cannot be decided by the size or existence of a scandal. Garfield documented a serious, far-reaching scandal. 616 F.3d at 193. However, the Second Circuit later rejected the contention that a scandal of that magnitude is constitutionally necessary to justify a government contractors' provision: "[t]here is no reason to require the legislature to experience the very problem it fears before taking appropriate prophylactic measures." Ognibene, 671 F.3d at 188. "[T]o require evidence of actual scandals for contribution limits would conflate the interest in preventing actual corruption with the separate interest in preventing apparent corruption." Id. In other words, focusing on the magnitude of a scandal predating any law would short circuit the closely drawn scrutiny test.

Finally, it utterly defies logic to suggest that the government must allow the democratic process to become further degraded before acting to protect it. See Canyon Ferry, 556 F.3d at 1032 ("We also reject the suggestion that, because Montana's election system appears to be open and highly functional, the need for disclosure is somehow decreased. We are not willing to count Montanans' current confidence in their state ballot process *against* the State's informational interest."). If the experimentation encouraged by "our federalism" means anything, it should mean that the States can learn from each other's mistakes. Younger v. Harris, 401 U.S. 37, 44 (1971).

### 4. A-1's Argument About Legislative Oversight Is Misplaced

A-1 claims that its contributions to candidates will not cause corruption or the appearance of corruption because it intends to "contribute only to candidates who neither decide whether A-1 receives contracts nor oversee A-1's contracts[.]" Open. Br. at 94. This argument is fundamentally flawed for three reasons.

First, A-1 underestimates the degree of oversight the Hawaii Legislature exercises over State contracts. The Hawaii Legislature decides for itself how to exercise the power granted to it by the Hawaii Constitution. It has retained significant oversight authority over State contracts. It exercises this authority by holding hearings and informational briefings. See, e.g., SER 127-28 to 127-31. It also considers bills that concern procurement.[43] *All* legislators weigh in on this debate. Haw. Const. Art. III § 15.

Second, A-1 supposes—wrongly—that it can determine, with certainty and in advance, the composition of the legislative committees that have the largest oversight role. This is illogical. The House and Senate committees change *after each election*. Rules of the House of Representatives 11.2(1) (membership provided by resolution); SER 127-31 (2011 resolution); Rules of the Senate 3(7)

---

[43] Dallman v. Ritter, 225 P.3d 610 (Colo. 2010) does not support A-1. Open. Br. at 92-93. Dallman contains no discussion of the legislative role, and it describes the federal provision—which *does* apply to Congress—as limited to "individuals with oversight responsibility." 225 P.3d at 627-28; 2 U.S.C.A. § 441c.

(President appoints committees).[44] It is impossible to determine with certainty

which candidates will serve on the committees that are most likely to have larger

oversight roles. And when the Legislature considers bills governing procurement,

*all* legislators weigh in on that debate.

One 2011 bill demonstrates the illogic of A-1's argument. S.B.1332

concerned the degree of independence the University of Hawaii had from the

general rules of State procurement. A-1 submitted written testimony in favor of

this bill when it was before the Senate Committee on Education. SER 127-38. A-

1 had numerous contracts with the University in the past. ER at 395-438. Three of

the candidates A-1 made contributions to in 2010 were ***legislators who voted in***

***favor of this bill in 2011***, and fifteen were the opponents of those who voted on the

bill.[45] The Legislature reaffirmed its role in overseeing State contracts:

> [T]he Legislature needs more specific information on the nature and extent
> of ongoing construction projects at the University of Hawaii . . . Your

---

[44] These rules are *available at* http://www.capitol.hawaii.gov/senate.aspx and
http://www.capitol.hawaii.gov/house.aspx (last visited Sept. 11, 2012).

[45] As summarized by the district court: "Defendants offer an example from the
2011 Legislative Session: A-1 testified—through Yamada's son Jason (an A-1
officer)—in favor of a construction and procurement-related bill regarding the
University of Hawaii. At least three Legislators that served on committees that
considered the bill (and voted in favor of it) also received campaign contributions
from A-1 in the 2010 elections. And A-1 made contributions to opponents of
fifteen other Legislators who considered the bill. A-1 cannot have known in
advance that candidates would not consider contractual oversight issues when it
made its contributions in 2010, and likewise cannot know that if it makes
contributions to candidates in 2012." ER at 87 n.30. See also SER 126-1 at 60-63
(detailing this evidence).

Committee believes that ***it is a function of the Legislature to hold agencies accountable for expenditures of public funds***[.]

Sen. Stand. Comm. Rep. No. 610, SER 127-36 (emphasis added).

Third, A-1 ignores the connection between procurement, the budget, and the Legislature. The Legislature's appropriations power originates from the Hawaii constitution and is highly significant in this context. The budget bill—which impacts procurement significantly—is considered by *all* legislators. Under the Hawaii constitution, the budget must be considered every year. Haw. Const. Art. VII § 9. By law, State money may be spent *only* with an appropriation, that is, *with the authorization of the Hawaii Legislature.* Haw. Const. Art. VII § 5. Hawaii's Legislature wields the power of the purse for all of State government. The government contractors' ban is tailored to this fundamental truth: it applies to contracts funded "in whole or in part from funds *appropriated by the legislative body*[.]" HRS § 11-355(a) (emphasis added).

The appropriations power highlights how the appearance of corruption can readily surface, particularly for those who *benefit from the expenditure of public funds.* "Contributions to candidates for [government] office from persons with a particularly direct financial interest in these officials' policy decisions pose a heightened risk of actual and apparent corruption, and merit heightened government regulation." <u>Ognibene</u>, 671 F.3d at 188. This shows the risk for corruption and the appearance of corruption.

The great weight of the authority—all after <u>Citizens United</u>—supports the district court's decision to uphold HRS § 11-355. The statute is constitutional.

## CONCLUSION

The district court carefully applied <u>Citizens United</u> and the case law that has developed since, including <u>Human Life</u>. Both the disclosure provisions and the government contractors' ban are constitutional. The order and judgment of the district court should be affirmed.

DATED:     September 12, 2012, Honolulu, Hawaii.

                              Respectfully submitted,


                              /s/ Deirdre Marie-Iha_____
                              Deirdre Marie-Iha
                              *Deputy Solicitor General*

                              Attorney for Defendants-Appellees

APPEAL NO. 12-15913

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JIMMY YAMADA and RUSSELL STEWART, | APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII |
| Plaintiffs, | |
| A-1 A-LECTRICIAN, INC., | |
| Plaintiff-Appellant, | Civil No. 10-497 JMS/RLP (J. Michael Seabright, J.) |
| vs. | |
| MICHAEL WEAVER, in his official capacity as chair and member of the Hawaii Campaign Spending Commission; and TINA PEDRO GOMES, and G. WILLIAM SNIPES, in their official capacities as members of the Hawaii Campaign Spending Commission, | |
| Defendants-Appellees. | |

**STATEMENT OF RELATED CASES**

Defendants-Appellees are not aware of any related cases in this matter as

defined by Circuit Rule 28-2.6.

DATED: Honolulu, Hawaii, September 12, 2012.


/s/ Deirdre Marie-Iha
DEIRDRE MARIE-IHA

Attorney for Defendants-Appellees

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JIMMY YAMADA and RUSSELL
STEWART,

           Plaintiffs,

A-1 A-LECTRICIAN, INC.,

           Plaintiff-Appellant,

    vs.

MICHAEL WEAVER, in his official
capacity as chair and member of the Hawaii
Campaign Spending Commission; and
TINA PEDRO GOMES, and G. WILLIAM
SNIPES, in their official capacities as
members of the Hawaii Campaign
Spending Commission,

           Defendants-Appellees.

APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE DISTRICT OF
HAWAII

Civil No. 10-497 JMS/RLP
(J. Michael Seabright, J.)

## CERTIFICATE OF COMPLIANCE

    I certify that this brief is accompanied by a motion to exceed the type-

volume limitation pursuant to Circuit Rule 32-2 and is 15,838 words, excluding

portions exempted by Fed.R.App.P. 32(a)(7)(B)(iii), if applicable.

    DATED: Honolulu, Hawaii, September 12, 2012.

                        /s/ Deirdre Marie-Iha
                        DEIRDRE MARIE-IHA

                        Attorney for Defendants-Appellees

# ADDENDA

# INDEX TO ADDENDA

*Yamada v. Weaver*
Answering Brief

**A**    Relevant Statutes (Hawaii Revised Statutes (HRS) §§ 11-301 – 11-412)[1]

**B**    Relevant Hawaii Administrative Rules (HAR)

**C**    1973 Haw. Sess. L. Act 185[2]

**D**    1975 Haw. Sess. L. Act 146

**E**    1976 Haw. Sess. L. Act 127

---

[1] This is current as of the summary judgment filings (late 2011). In early 2012, the Hawaii Legislature passed two small amendments to this part. One, 2012 Haw. Sess. L. Act. 118, amended HRS § 11-334. The second, 2012 Haw. Sess. L. Act 20, amended HRS § 11-381. Neither amendment is pertinent to the appeal.

[2] These three session laws are provided for the Court's convenience. The other session laws and committee reports referenced in the answering brief are included within the supplemental excerpts of record, in the same manner as they were provided to the district court.

West's Hawai'i Revised Statutes Annotated <u>Currentness</u>
  Division 1. Government
    Title 2. Elections
      Chapter 11. Elections, Generally
        ⌨ [Part XIII]. Campaign Finance <u>(Refs & Annos)</u>
          ➡ A. General Provisions

➡ **[§ 11-301]. Purpose** [2010 Haw. Sess. L. Act 211, Sec. 2 - § 11-A][1]

The purpose of this part is to provide transparency in the campaign finance process. Any ambiguity in the provisions of this part shall be construed to support transparency.

➡ **[§ 11-302]. Definitions** [Act 211 § 11-B]

When used in this part:

"Advertisement" means any communication, excluding sundry items such as bumper stickers, that:

(1) Identifies a candidate directly or by implication, or identifies an issue or question that will appear on the ballot at the next applicable election; and

(2) Advocates or supports the nomination, opposition, or election of the candidate, or advocates the passage or defeat of the issue or question on the ballot.

"Ballot issue committee" means a noncandidate committee that has the exclusive purpose of making or receiving contributions, making expenditures, or incurring financial obligations for or against any question or issue appearing on the ballot at the next applicable election.

"Campaign funds" means contributions, interest, rebates, refunds, loans, or advances received by a candidate committee or noncandidate committee.

"Candidate" means an individual who seeks nomination for election or seeks election to office. An individual remains a candidate until the individual's candidate committee terminates registration with the commission. An individual is a candidate if the individual does any of the following:

(1) Files nomination papers for an office for the individual with the county clerk's office or

---

[1] This is current as of the summary judgment filings (late 2011). In early 2012, the Hawaii Legislature passed two small amendments to this part. One, 2012 Haw. Sess. L. Act 118, amended HRS § 11-334. The second, 2012 Haw. Sess. L. Act 20, amended HRS § 11-381. Neither amendment is pertinent to the appeal.

**ADDENDUM A-1**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

with the chief election officer's office, whichever is applicable;

(2) Receives contributions, makes expenditures, or incurs financial obligations of more than $100 to bring about the individual's nomination for election, or to bring about the individual's election to office;

(3) Gives consent for any other person to receive contributions, make expenditures, or incur financial obligations to aid the individual's nomination for election, or the individual's election, to office; or

(4) Is certified to be a candidate by the chief election officer or county clerk.

"Candidate committee" means an organization, association, or individual that receives campaign funds, makes expenditures, or incurs financial obligations on behalf of a candidate with the candidate's authorization.

"Clearly identified" means the inclusion of name, photograph or other similar image, or other unambiguous identification of a candidate.

"Commission" means the campaign spending commission.

"Commissioner" means any person appointed to the commission.

"Contribution" means:

(1) A gift, subscription, deposit of money or anything of value, or cancellation of a debt or legal obligation and includes the purchase of tickets to fundraisers, for the purpose of:

(A) Influencing the nomination for election, or the election, of any person to office;

(B) Influencing the outcome of any question or issue that has been certified to appear on the ballot at the next applicable election; or

(C) Use by any candidate committee or noncandidate committee for the purpose of subparagraph (A) or (B);

(2) The payment, by any person or party other than a candidate, candidate committee, or noncandidate committee, of compensation for the services of another person that are rendered to the candidate, candidate committee, or noncandidate committee without charge or at an unreasonably low charge for a purpose listed in paragraph (1);

(3) A contract, promise, or agreement to make a contribution; or

**ADDENDUM A-2**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4) Any loans or advances that are not documented or disclosed to the commission as provided in <u>section 11-372</u>;

"Contribution" does not include:

(1) Services voluntarily provided without compensation by individuals to or on behalf of a candidate, candidate committee, or noncandidate committee;

(2) A candidate's expenditure of the candidate's own funds; provided that this expenditure shall be reportable as other receipts and expenditures;

(3) Any loans or advances to the candidate committee; provided that these loans or advances shall be reported as loans; or

(4) An individual, candidate committee, or noncandidate committee engaging in internet activities for the purpose of influencing an election if:

    (A) The individual, candidate committee, or noncandidate committee is uncompensated for the internet activities; or

    (B) The individual, candidate committee, or noncandidate committee uses equipment or services for uncompensated internet activities, regardless of who owns the equipment and services.

"Earmarked funds" means contributions received by a candidate committee or noncandidate committee on the condition that the funds be contributed to or expended on certain candidates, issues, or questions.

"Election" means any election for office or for determining a question or issue provided by law or ordinance.

"Election period" means:

(1) The two-year time period between the day after the general election through the day of the next general election, if a candidate is seeking nomination or election to a two-year office;

(2) The four-year time period between the day after the general election through the day of the next general election, if a candidate is seeking nomination or election to a four-year office; or

(3) For a special election, the period between the day after the general election for that office through the day of the special election.

"Equipment and services" includes computers, software, internet domain names, internet ser-

**ADDENDUM A-3**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

vice providers, and any other technology that is used to provide access to or use of the Internet.

"Expenditure" means:

(1) Any purchase or transfer of money or anything of value, or promise or agreement to purchase or transfer money or anything of value, or payment incurred or made, or the use or consumption of a nonmonetary contribution for the purpose of:

(A) Influencing the nomination for election, or the election, of any person seeking nomination for election or election to office, whether or not the person has filed the person's nomination papers;

(B) Influencing the outcome of any question or issue that has been certified to appear on the ballot at the next applicable election; or

(C) Use by any party for the purposes set out in subparagraph (A) or (B);

(2) Any payment, by any person other than a candidate, candidate committee, or noncandidate committee, of compensation for the services of another person that are rendered to the candidate, candidate committee, or noncandidate committee for any of the purposes mentioned in paragraph (1)(A); provided that payment under this paragraph shall include provision of services without charge; or

(3) The expenditure by a candidate of the candidate's own funds for the purposes set out in paragraph (1)(A).

"Expenditure" does not include:

(1) Services voluntarily provided without compensation by individuals to or on behalf of a candidate, candidate committee, or noncandidate committee;

(2) Voter registration efforts that are nonpartisan; or

(3) An individual, candidate committee, or noncandidate committee engaging in internet activities for the purpose of influencing an election if:

(A) The individual, candidate committee, or noncandidate committee is uncompensated for internet activities; or

(B) The individual, candidate committee, or noncandidate committee uses equipment or services for uncompensated internet activities, regardless of who owns the equipment and services;

**ADDENDUM A-4**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

provided that the internet activity exclusion does not apply to any payment for an advertisement other than a nominal fee; the purchase or rental of an electronic address list made at the direction of a candidate committee or noncandidate committee; or an electronic mail address list that is transferred to a candidate committee or noncandidate committee.

"House bulletin" means a communication sponsored by any person in the regular course of publication for limited distribution primarily to its employees or members.

"Immediate family" means a candidate's spouse or reciprocal beneficiary, as defined in section 572C-3, and any child, parent, grandparent, brother, or sister of the candidate, and the spouses or reciprocal beneficiaries of such persons.

"Independent expenditure" means an expenditure by a person expressly advocating the election or defeat of a clearly identified candidate that is not made in concert or cooperation with or at the request or suggestion of the candidate, the candidate committee, a party, or their agents.

"Individual" means a natural person.

"Internet activities" include:

(1) Sending or forwarding electronic messages;

(2) Providing a hyperlink or other direct access to another person's website;

(3) Blogging;

(4) Creating, maintaining, or hosting a website;

(5) Paying a nominal fee for the use of another person's website; and

(6) Any other form of communication distributed over the Internet.

"Limited liability company" means a business entity that is recognized as a limited liability company under the laws of the state in which it is established.

"Loan" means an advance of money, goods, or services, with a promise to repay in full or in part within a specified period of time. A loan does not include expenditures made on behalf of a candidate committee or noncandidate committee by a candidate, volunteer, or employee if:

(1) The candidate, volunteer, or employee's aggregate expenditures do not exceed $1,500 within a thirty-day period;

**ADDENDUM A-5**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(2) A dated receipt and a written description of the name and address of each payee and the amount, date, and purpose of each expenditure is provided to the candidate committee or noncandidate committee before the candidate committee or noncandidate committee reimburses the candidate, volunteer, or employee; and

(3) The candidate committee or noncandidate committee reimburses the candidate, volunteer, or employee within forty-five days of the expenditure being made.

"Newspaper" means a publication of general distribution in the State issued once or more per month, which is written and published in the State.

"Noncandidate committee" means an organization, association, party, or individual that has the purpose of making or receiving contributions, making expenditures, or incurring financial obligations to influence the nomination for election, or the election, of any candidate to office, or for or against any question or issue on the ballot; provided that a noncandidate committee does not include:

(1) A candidate committee;

(2) Any individual making a contribution or making an expenditure of the individual's own funds or anything of value that the individual originally acquired for the individual's own use and not for the purpose of evading any provision of this part; or

(3) Any organization that raises or expends funds for the sole purpose of producing and disseminating informational or educational communications that are not made to influence the outcome of an election, question, or issue on a ballot.

"Office" means any Hawaii elective public or constitutional office, excluding county neighborhood board and federal elective offices.

"Other receipts" means the candidate's own funds, interest, rebates, refunds, and any other funds received by a candidate committee or noncandidate committee, but does not include contributions received from other persons or loans.

"Party" means any political party that satisfies the requirements of section 11-61.

"Person" means an individual, a partnership, a candidate committee or noncandidate committee, a party, an association, a corporation, a business entity, an organization, or a labor union and its auxiliary committees.

"Political committees established and maintained by a national political party" means:

(1) The National Committee;

**ADDENDUM A-6**

(2) The House Campaign Committee; and

(3) The Senate Campaign Committee.

"Qualifying contribution" means an aggregate monetary contribution of $100 or less by an individual Hawaii resident during a matching payment period that is received after a candidate files a statement of intent to seek public funds. A qualifying contribution does not include a loan, an in-kind contribution, or the candidate's own funds.

"Special election" means any election other than a primary or general election.

"Treasurer" means a person appointed under section 11-324 and unless expressly indicated otherwise, includes deputy treasurers.

## B. Campaign Spending Commission

➡ **[§ 11-311]. Campaign spending commission established; composition** [Act 211 § 11-C]

(a) There is established a campaign spending commission, which shall be placed within the department of accounting and general services for administrative purposes.

(b) The commission shall consist of five members representing the general public and who are appointed by the governor from a list of ten nominees submitted by the judicial council. A vacancy on the commission shall be filled from the list of nominees or by the reappointment of a commissioner whose term has expired, subject to the limit on length of service imposed by section 26-34. The judicial council shall meet and expeditiously select additional persons for the list of nominees whenever the number of the eligible nominees falls below five. Notwithstanding section 26-34, appointments to the commission shall not be subject to the advice and consent of the senate.

(c) The judicial council may solicit applications for the list of nominees through community organizations and advertisements in any newspaper.

➡ **[§ 11-312]. Terms of office** [Act 211 § 11-D]

The term of each commissioner shall be four years.

➡ **[§ 11-313]. No compensation** [Act 211 § 11-E]

The commissioners shall serve without compensation but shall be reimbursed for reasonable expenses, including travel expenses, incurred in the discharge of their duties.

**ADDENDUM A-7**

→ **[§ 11-314]. Duties of the commission**[Act 211 § 11-F]

The duties of the commission under this part are to:

(1) Develop and adopt forms required by this part;

(2) Adopt and publish a manual for all candidates, candidate committees, and noncandidate committees, describing the requirements of this part, including uniform and simple methods of recordkeeping;

(3) Preserve all reports required by this part for at least ten years from the date of receipt by the commission;

(4) Permit the inspection, copying, or duplicating of any report required by this part pursuant to rules adopted by the commission under chapter 91; provided that this paragraph shall not apply to the sale or use of information under section 11-344;

(5) Ascertain whether any candidate, candidate committee, noncandidate committee, or party has failed to file a report required by this part or has filed a substantially defective or deficient report. The commission shall notify these persons by first class mail that a fine may be assessed for the failure to file or the filing of a substantially defective or deficient report, and the defective or deficient report shall be corrected and explained. All fines collected under this section as authorized by section 11-410 shall be deposited in the general fund of the State;

(6) Hold public hearings;

(7) Investigate and hold hearings for receiving evidence of any violations pursuant to subpart I of this part;

(8) Adopt rules pursuant to chapter 91;

(9) Request the initiation of prosecution for the violation of this part pursuant to section 11-411;

(10) Administer and monitor the distribution of public funds under this part;

(11) Suggest accounting methods for candidates, candidate committees, or noncandidate committees in connection with reports and records required by this part;

(12) Employ or contract with, without regard to chapters 76, 78, and 89, persons it finds necessary for the performance of its functions, including a full-time executive director, and to fix their compensation; provided that the commission shall have the authority, at its discretion,

**ADDENDUM A-8**

to dismiss persons employed by or contracted with the commission;

(13) Conduct random audits and field investigations, as necessary; and

(14) File for injunctive relief when indicated.

→ **[§ 11-315]. Advisory opinions** [Act 211 § 11-G]

The commission may render written advisory opinions upon the request of any candidate, candidate committee, noncandidate committee, or other person or entity subject to this part, as to whether the facts and circumstances of a particular case constitute or will constitute a violation under this part. If no advisory opinion is rendered within ninety days after all information necessary to issue an opinion has been obtained, it shall be deemed that an advisory opinion was rendered and that the facts and circumstances of that particular case do not constitute a violation under this part. The opinion rendered or deemed rendered, until amended or revoked, shall be binding on the commission in any subsequent charges concerning the candidate, any candidate committee or noncandidate committee, or other person or entity subject to this part, who sought the opinion and acted in reliance on it in good faith, unless material facts were omitted or misstated by the requester in the request for an advisory opinion. Nothing in this section shall be construed to allow the commission to issue rules through an advisory opinion.

→ **[§ 11-316]. Political activities prohibited** [Act 211 § 11-H]

(a) No commissioner or employee of the commission shall participate in any political campaign, including making a contribution to a candidate, candidate committee, or noncandidate committee, during the commissioner's term of office or employee's term of employment.

(b) Each commissioner and employee of the commission shall retain the right to:

(1) Register and vote in any election;

(2) Participate in the nonpolitical activities of a civic, community, social, labor, or professional organization, or of a similar organization;

(3) Be a member of a political party or other noncandidate political organization and participate in its activities to the extent consistent with law; and

(4) Otherwise participate fully in public affairs, except as prohibited by law, in a manner that does not materially compromise the commissioner's or the employee's efficiency or integrity as a commissioner or employee or the neutrality, efficiency, or integrity of the commission.

(c) Any commissioner or employee of the commission may request an advisory opinion from the state ethics commission to determine whether a particular activity constitutes or would con-

**ADDENDUM A-9**

stitute a violation of the code of ethics under part II of chapter 84 or this section.

→ **[§ 11-317]. Exemptions** [Act 211 § 11-I]

(a) The commission shall be exempt from section 26-35(a)(1), (4), and (5) and shall:

(1) Make direct communications with the governor and legislature;

(2) Make all decisions regarding employment, appointment, promotion, transfer, demotion, discharge, and job descriptions of all officers and employees of or under the jurisdiction of the commission without the approval of the comptroller; and

(3) Purchase all supplies, equipment, or furniture without the approval of the comptroller.

(b) The commission shall follow and be subject to all applicable personnel laws.

## C. Registration

→ **[§ 11-321]. Registration of candidate committee or noncandidate committee** [Act 211 § 11-J]

(a) Each candidate committee or noncandidate committee shall register with the commission by filing an organizational report as set forth in section 11-322 or 11-323, as applicable.

(b) Before filing the organizational report, each candidate committee or noncandidate committee shall mail or deliver an electronic filing form to the commission.

(c) The electronic filing form shall include a written acceptance of appointment and certification of each report, as follows:

(1) A candidate committee shall file a written acceptance of appointment by the chairperson and treasurer and a certification by the candidate and treasurer of each filed report; or

(2) A noncandidate committee shall file a written acceptance of appointment by the chairperson and treasurer and a certification by the chairperson and treasurer of each filed report.

(d) The organizational report for a candidate committee shall be filed within ten days of the earlier of:

(1) The date the candidate files nomination papers for office; or

(2) The date the candidate or candidate committee receives contributions or makes or incurs expenditures of more than $100 in the aggregate during the applicable election period.

**ADDENDUM A-10**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(e) An organizational report need not be filed under this section by an elected official who is a candidate for reelection to the same office in successive elections and has not sought election to any other office during the period between elections, unless the candidate is required to report a change in information pursuant to section 11-323.

(f) A candidate shall have only one candidate committee.

(g) The organizational report for a noncandidate committee shall be filed within ten days of receiving contributions or making or incurring expenditures of more than $1,000, in the aggregate, in a two-year election period; provided that within the thirty-day period prior to an election, a noncandidate committee shall register by filing an organizational report within two days of receiving contributions or making or incurring expenditures of more than $1,000, in the aggregate, in a two-year election period.

→ **[§ 11-322]. Organizational report, candidate committee** [Act 211 § 11-K]

(a) The candidate committee organizational report shall include:

(1) The committee's name and address, including web page address, if any;

(2) The candidate's name, address, and telephone number;

(3) The office being sought by the candidate, district, and party affiliation;

(4) The chairperson's name and address and, if appointed, the deputy chairperson's name and address;

(5) The treasurer's name and address and, if appointed, all deputy treasurers' names and addresses;

(6) The name and address of each depository institution in which the committee will maintain any of its accounts and the applicable account number;

(7) A certification by the candidate and treasurer of the statements in the organizational report; and

(8) The name and address of each contributor who contributed an aggregate amount of more than $100 to the candidate committee since the last election applicable to the office being sought and the amount and date of deposit of each such contribution.

(b) Any change in information previously reported in the organizational report with the exception of subsection (a)(8) shall be electronically filed with the commission within ten days of the

**ADDENDUM A-11**

change being brought to the attention of the committee chairperson or treasurer.

→ **[§ 11-323]. Organizational report, noncandidate committee** [Act 211 § 11-L]

(a) The noncandidate committee organizational report shall include:

(1) The committee's name, which shall incorporate the full name of the sponsoring entity, if any. An acronym or abbreviation may be used in other communications if the acronym or abbreviation is commonly known or clearly recognized by the general public. The committee's name shall not include the name of a candidate;

(2) The committee's address, including web page address, if any;

(3) The area, scope, or jurisdiction of the committee;

(4) The name and address of the committee's sponsoring entity. If the committee does not have a sponsoring entity, the committee shall specify the trade, profession, or primary interest of contributors to the committee;

(5) The name, address, telephone number, occupation, and principal place of business of the chairperson;

(6) The name, address, telephone number, occupation, and principal place of business of the treasurer and any other officers;

(7) An indication as to whether the committee was formed to support or oppose a specific ballot question or candidate and, if so, a brief description of the question or the name of the candidate;

(8) An indication as to whether the committee is a political party committee;

(9) The name, address, telephone number, occupation, and principal place of business of the custodian of the books and accounts;

(10) The name and address of the depository institution in which the committee will maintain its campaign account and each applicable account number;

(11) A certification by the chairperson and treasurer of the statements in the organizational report; and

(12) The name, address, employer, and occupation of each contributor who contributed an aggregate amount of more than $100 to the noncandidate committee since the last election and the amount and date of deposit of each such contribution.

**ADDENDUM A-12**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(b) Any change in information previously reported in the organizational report, with the exception of subsection (a)(12), shall be electronically filed with the commission within ten days of the change being brought to the attention of the committee chairperson or treasurer.

→ **[§ 11-324]. Treasurer** [Act 211 § 11-M]

(a) Every candidate committee or noncandidate committee shall appoint a treasurer on or before the day it files an organizational report. The following shall be permissible:

(1) Up to five deputy treasurers may be appointed;

(2) A candidate may be appointed as the treasurer or deputy treasurer; and

(3) An individual who is not an officer or treasurer may be appointed by the candidate, on a fee or voluntary basis, to specifically prepare and file reports with the commission.

(b) A treasurer may resign or be removed at any time.

(c) In case of death, resignation, or removal of the treasurer, the candidate, candidate committee, or noncandidate committee shall promptly appoint a successor. During the period that the office of treasurer is vacant, the candidate, candidate committee, or chairperson, or party chairperson in the case of a party, whichever is applicable, shall serve as treasurer.

(d) Only the treasurer and deputy treasurers shall be authorized to receive contributions or to make or incur expenditures on behalf of the candidate committee or noncandidate committee.

(e) The treasurer shall establish and maintain itemized records showing:

(1) The amount of each monetary contribution;

(2) The description and value of each nonmonetary contribution; and

(3) The name and address of each contributor making a contribution of more than $25 in value; provided that information regarding the employer and occupation of contributors shall also be collected and maintained for a noncandidate committee.

(f) The treasurer shall maintain detailed accounts, bills, receipts, and other records to establish that reports were properly prepared and filed.

(g) The records shall be retained for at least five years after the report is filed.

**ADDENDUM A-13**

➡ **[§ 11-325]. When an individual may not serve as a committee officer** [Act 211 § 11-N]

No candidate committee or noncandidate committee that supports or opposes a candidate shall have an officer who serves as an officer on any other candidate committee or noncandidate committee that supports or opposes the same candidate.

➡ **[§ 11-326]. Termination of candidate committee's or noncandidate committee's registration** [Act 211 § 11-O]

A candidate committee or noncandidate committee may terminate its registration if:

(1) The candidate committee or noncandidate committee:

   (A) Files a request for registration termination form;

   (B) Files a report disclosing contributions and expenditures not previously reported by the committee, and the committee has no surplus or deficit; and

   (C) Mails or delivers to the commission a copy of the committee's closing bank statement; and

(2) The request is approved by the commission.

➡ **[§ 11-327]. Ballot issue committee; contributions and expenditures** [Act 211 § 11-P]

(a) A ballot issue committee shall receive contributions or make expenditures only for or against any issue appearing on the ballot at the next applicable election.

(b) A ballot issue committee is prohibited from receiving contributions or making expenditures to influence the nomination or election of a candidate to office.

(c) A ballot issue committee shall return all surplus funds to the contributors or donate funds to a community service, educational, youth, recreational, charitable, scientific, or literary organization within ninety days after the election for which the issue appeared on the ballot. Surplus funds that are not returned or donated within ninety days after the election for which the issue appeared on the ballot shall escheat to the Hawaii election campaign fund.

(d) Every ballot issue committee shall terminate its registration with the commission by filing a termination report to be approved as provided in section 11-326. The termination report shall be filed within ninety days after the election for which the issue appeared on the ballot.

**D. Reporting and Filing with the Commission**

**ADDENDUM A-14**

→ **§ 11-331. Filing of reports, generally** [Act 211 § 11-Q]

(a) Every report required to be filed by a candidate or candidate committee shall be certified by the candidate and treasurer.

(b) Every report required to be filed by a noncandidate committee shall be certified by the chairperson and treasurer.

(c) All reports required to be filed under this part shall be filed on the commission's electronic filing system.

(d) For purposes of this part, whenever a report is required to be filed with the commission, "filed" means that a report shall be filed with the commission's electronic filing system by the date and time specified for the filing of the report by:

(1) The candidate or candidate committee of a candidate who is seeking election to the:

(A) Office of governor;

(B) Office of lieutenant governor;

(C) Office of mayor;

(D) Office of prosecuting attorney;

(E) County council;

(F) Senate;

(G) House of representatives; or

(H) Office of Hawaiian affairs;

or

(2) A noncandidate committee required to be registered with the commission pursuant to section 11-323.

(e) To be timely filed, a committee's reports shall be filed with the commission's electronic filing system on or before 11:59 p.m. Hawaiian standard time on the filing date specified.

(f) All reports filed under this part are public records.

**ADDENDUM A-15**

→[**§ 11-332]. Filing report by corporations** [Act 211, Sec. 3]

(a) A corporation shall file a report with the commission for contributions from its own treasury that aggregate more than $1,000 per two year election period made directly to a candidate or candidate committee; provided that this section shall not authorize contributions to a candidate or candidate committee where otherwise prohibited by this part. The reporting shall be made pursuant to the time requirements contained in section 11-336 and section 11-338.

(b) The filing shall include the name of the corporation, business address, a contact individual, and amounts contributed that are more than $100 to each candidate or candidate committee.

→[**§ 11-333]. Candidate committee reports** [Act 211 § 11-R]

(a) The candidate and treasurer shall file preliminary, final, and supplemental reports that shall disclose the following information:

(1) The candidate committee's name and address;

(2) The cash on hand at the beginning of the reporting period and election period;

(3) The reporting period and election period aggregate totals for each of the following categories:

  (A) Contributions;

  (B) Expenditures;

  (C) Other receipts; and

  (D) Loans;

(4) The cash on hand at the end of the reporting period; and

(5) The surplus or deficit at the end of the reporting period.

(b) Schedules filed with the reports shall include the following additional information:

(1) The amount and date of deposit of each contribution and the name and address of each contributor who makes contributions aggregating more than $100 in an election period; provided that if all the information is not on file, the contribution shall be returned to the contributor within thirty days of deposit;

**ADDENDUM A-16**

(2) The amount and date of deposit of each contribution and the name, address, occupation, and employer of each contributor who makes contributions aggregating $1,000 or more during an election period; provided that if all the information is not on file, the contribution shall be returned to the contributor within thirty days of deposit;

(3) All expenditures, including the name and address of each payee and the amount, date, and purpose of each expenditure. Expenditures for consultants, advertising agencies and similar firms, credit card payments, salaries, and candidate reimbursements shall be itemized to permit a reasonable person to determine the ultimate intended recipient of the expenditure and its purpose;

(4) The amount, date of deposit, and description of other receipts and the name and address of the source of each of the other receipts;

(5) Information about each loan received by the committee, together with the names and addresses of the lender and each person liable directly, and the amount of each loan. A copy of the executed loan document shall be received by the commission by mail or delivery on or before the filing date for the report covering the reporting period when the loan was received. The document shall contain the terms of the loan, including the interest and repayment schedule. Failure to disclose the loan or to provide documentation of the loan to the commission shall cause the loan to be treated as a contribution, subject to all relevant provisions of this part;

(6) A description of each durable asset, the date of acquisition, value at the time of acquisition, and the name and address of the vendor or contributor of the asset; and

(7) The date of disposition of each durable asset, value at the time of disposition, the method of disposition, and the name and address of the person receiving the asset.

(c) The candidate committee shall file a late contribution report as provided in <u>section 11-338</u> if the committee receives late contributions from any person aggregating more than $500.

➡ **[§ 11-334]. Time for candidate committee to file preliminary, final, and supplemental reports** [Act 211 § 11-S]

(a) The candidate and treasurer of the candidate committee of each candidate whose name will appear on the ballot in the immediately succeeding election shall file preliminary, final, and supplemental reports.

(1) The filing dates for preliminary reports are:

(A) July 31 of the election year;

**ADDENDUM A-17**

(B) Ten calendar days prior to a primary, each special, or each nonpartisan election; and

(C) Ten calendar days prior to a general election; provided that this preliminary report does not need to be filed by a candidate who is unsuccessful in a primary, special, or nonpartisan election or a candidate who is elected to office in the primary, initial special, or initial nonpartisan election.

Each preliminary report shall be current through June 30 for the report filed on July 31 and current through the fifth calendar day before the filing deadline of other preliminary reports.

(2) The filing date for the final primary report is twenty calendar days after a primary, initial special, or initial nonpartisan election. The report shall be current through the day of the applicable election.

(3) The filing date for the final election period report is thirty calendar days after a general, subsequent, subsequent special, or subsequent nonpartisan election. The report shall be current through the day of the applicable election. The final election period report shall be filed by a candidate who is unsuccessful in a primary, initial special, or initial nonpartisan election or a candidate who is elected to office in the primary, initial special, or initial nonpartisan election.

(4) The filing dates for supplemental reports are:

(A) January 31 after an election year; and

(B) July 31 after an election year.

The report shall be current through December 31 for the report filed on January 31 and current through June 30 for the report filed on July 31.

(b) A candidate and treasurer of the candidate committee of each candidate with a deficit or surplus whose name will not appear on the ballot in the immediately succeeding election shall file a supplemental report every six months on January 31 and July 31 until:

(1) The candidate's name appears on the ballot and then is subject to the reporting requirements in subsection (a); or

(2) The committee's registration is terminated as provided in section 11-326.

The report shall be current through December 31 for the report filed on January 31 and current

**ADDENDUM A-18**

through June 30 for the report filed on July 31.

(c) A candidate and treasurer of the candidate committee of each candidate shall continue to file all required reports until the committee's registration is terminated as provided in section 11-326.

→ **[§ 11-335]. Noncandidate committee reports** [Act 211 § 11-T]

(a) The authorized person in the case of a party, or treasurer in the case of a noncandidate committee that is not a party, shall file preliminary, final, and supplemental reports that disclose the following information:

(1) The noncandidate committee's name and address;

(2) The cash on hand at the beginning of the reporting period and election period;

(3) The reporting period and election period aggregate totals for each of the following categories:

    (A) Contributions;

    (B) Expenditures; and

    (C) Other receipts;

(4) The cash on hand at the end of the reporting period; and

(5) The surplus or deficit at the end of the reporting period.

(b) Schedules filed with the reports shall include the following additional information:

(1) The amount and date of deposit of each contribution and the name, address, occupation, and employer of each contributor making a contribution aggregating more than $100 during an election period, which was not previously reported; provided that if all the information is not on file, the contribution shall be returned to the contributor within thirty days of deposit;

(2) All expenditures, including the name and address of each payee and the amount, date, and purpose of each expenditure. Expenditures for consultants, advertising agencies and similar firms, credit card payments, salaries, and candidate reimbursements shall be itemized to permit a reasonable person to determine the ultimate intended recipient of the expenditure and its purpose;

(3) The amount, date of deposit, and description of other receipts and the name and address of

**ADDENDUM A-19**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

the source of each of the other receipts;

(4) A description of each durable asset, the date of acquisition, value at the time of acquisition, and the name and address of the vendor or contributor of the asset; and

(5) The date of disposition of a durable asset, value at the time of disposition, method of disposition, and name and address of the person receiving the asset.

(c) No loan may be made or received by a noncandidate committee.

(d) The authorized person in the case of a party, or treasurer in the case of a noncandidate committee that is not a party, shall file a late contribution report as provided in section 11-338 if the committee receives late contributions from any person aggregating more than $500 or makes late contributions aggregating more than $500.

→ **[§ 11-336]. Time for noncandidate committee to file preliminary, final, and supplemental reports** [Act 211 § 11-U]

(a) The filing dates for preliminary reports are:

(1) Ten calendar days prior to a primary, special, or nonpartisan election; and

(2) Ten calendar days prior to a general election.

Each preliminary report shall be current through the fifth calendar day prior to the filing of the report.

(b) The filing date for the final primary report is twenty calendar days after the primary, initial special, or initial nonpartisan election. The report shall be current through the day of the applicable election.

(c) The filing date for the final election period report is thirty calendar days after a general, subsequent special, or subsequent nonpartisan election. The report shall be current through the day of the applicable election.

(d) The filing dates for supplemental reports are:

(1) January 31 after an election year; and

(2) July 31 after an election year.

The report shall be current through December 31 for the report filed on January 31 and current through June 30 for the report filed on July 31.

**ADDENDUM A-20**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(e) The authorized person in the case of a party, or treasurer in the case of any other noncandidate committee, shall continue to file all reports until the committee's registration is terminated as provided in section 11-326.

➡ **[§ 11-337]. Reporting expenditures** [Act 211 § 11-V]

For purposes of this part, an expenditure is deemed to be made or incurred when the services are rendered or the product is delivered. Services rendered or products delivered for use during a reporting period are deemed delivered or rendered during the period or periods of use; provided that these expenditures shall be reasonably allocated between periods in accordance with the time the services or products are actually used.

➡ **[§ 11-338]. Late contributions; report** [Act 211 § 11-W]

(a) The candidate, authorized person in the case of a noncandidate committee that is a party, or treasurer in the case of a candidate committee or other noncandidate committee, that, within the period of fourteen calendar days through four calendar days prior to any election, makes contributions aggregating more than $500, or receives contributions from any person aggregating more than $500, shall file a late contribution report by means of the commission's electronic filing system on or before the third calendar day prior to the election.

(b) The late contribution report shall include the following information:

(1) Name, address, occupation, and employer of the contributor;

(2) Name of the candidate, candidate committee, or noncandidate committee making or receiving the contribution;

(3) The amount of the contribution;

(4) The contributor's aggregate contributions to the candidate, candidate committee, or noncandidate committee; and

(5) The purpose, if any, to which the contribution will be applied.

(c) A late contribution report filed pursuant to this section shall be in addition to any other report required to be filed by this part.

➡ **[§ 11-339]. Final election period report for candidate committee or noncandidate committee receiving and expending $1,000 or less during the election period** [Act 211 § 11-X]

(a) Any provision of law to the contrary notwithstanding, a candidate committee or noncandi-

**ADDENDUM A-21**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

date committee whose aggregate contributions and aggregate expenditures for the election period total $1,000 or less, shall electronically file only a final election period report, and need not file a preliminary and final primary report, a preliminary and final general report, or a special election report.

(b) Until the candidate committee's or noncandidate committee's registration is terminated as provided in section 11-326, supplemental reports and other reports required by this part shall be filed.

➜ **[§ 11-340]. Failure to file report; filing a substantially defective or deficient report**
[Act 211 § 11-Y]
(a) True and accurate reports shall be filed with the commission on or before the due dates specified in this part. The commission may assess a fine against a candidate committee or noncandidate committee that is required to file a report under this part if the report is not filed by the due date or if the report is substantially defective or deficient, as determined by the commission.

(b) The fine for not filing a report by the due date, if assessed, shall not exceed $50 per day for the first seven days, beginning with the day after the due date of the report, and shall not exceed $200 per day thereafter; provided that:

(1) In aggregate, the fine shall not exceed twenty-five per cent of the total amount of contributions or expenditures, whichever is greater, for the period covered by the report; and

(2) The minimum fine for a report filed more than four days after the due date, if assessed, shall be $200.

(c) Subsection (b) notwithstanding, if a candidate committee does not file the second preliminary primary report or the preliminary general report, or if a noncandidate committee does not file the preliminary primary report or the preliminary general report by the due date, the fine, if assessed, shall not exceed $300 per day; provided that:

(1) In aggregate, the fine shall not exceed twenty-five per cent of the total amount of contributions or expenditures, whichever is greater, for the period covered by the report; and

(2) The minimum fine, if assessed, shall be $300.

(d) If the commission determines that a report is substantially defective or deficient, the commission shall notify the candidate committee by first class mail that:

(1) The report is substantially defective or deficient; and

(2) A fine may be assessed.

**ADDENDUM A-22**

(e) If the corrected report is not filed with the commission's electronic filing system on or before the fourteenth day after the notice of defect or deficiency has been mailed, the fine, if assessed, for a substantially defective or deficient report shall not exceed $50 per day for the first seven days, beginning with the fifteenth day after the notice was sent, and shall not exceed $200 per day thereafter; provided that:

(1) In aggregate, the fine shall not exceed twenty-five per cent of the total amount of contributions or expenditures, whichever is greater, for the period covered by the report; and

(2) The minimum fine for not filing a corrected report more than eighteen days after the notice, if assessed, shall be $200.

(f) The commission shall publish on its website the names of all candidate committees that have failed to:

(1) File a report; or

(2) Correct a report within the time allowed by the commission.

(g) All fines collected under this section shall be deposited into the general fund.

➔ **[§ 11-341]. Electioneering communications; statement of information** [Act 211 § 11-Z]

(a) Each person who makes a disbursement for electioneering communications in an aggregate amount of more than $2,000 during any calendar year shall file with the commission a statement of information within twenty-four hours of each disclosure date provided in this section.

(b) Each statement of information shall contain the following:

(1) The name of the person making the disbursement, name of any person or entity sharing or exercising discretion or control over such person, and the custodian of the books and accounts of the person making the disbursement;

(2) The state of incorporation and principal place of business or, for an individual, the address of the person making the disbursement;

(3) The amount of each disbursement during the period covered by the statement and the identification of the person to whom the disbursement was made;

(4) The elections to which the electioneering communications pertain and the names, if known, of the candidates identified or to be identified;

**ADDENDUM A-23**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(5) If the disbursements were made by a candidate committee or noncandidate committee, the names and addresses of all persons who contributed to the candidate committee or noncandidate committee for the purpose of publishing or broadcasting the electioneering communications;

(6) If the disbursements were made by an organization other than a candidate committee or noncandidate committee, the names and addresses of all persons who contributed to the organization for the purpose of publishing or broadcasting the electioneering communications; and

(7) Whether or not any electioneering communication is made in coordination, cooperation, or concert with or at the request or suggestion of any candidate, candidate committee, or noncandidate committee, or agent of any candidate if any, and if so, the identification of the candidate, a candidate committee or a noncandidate committee, or agent involved.

(c) For purposes of this section:

"Disclosure date" means, for every calendar year, the first date by which a person has made disbursements during that same year of more than $2,000 in the aggregate for electioneering communications, and the date of any subsequent disbursements by that person for electioneering communications.

"Electioneering communication" means any advertisement that is broadcast from a cable, satellite, television, or radio broadcast station; published in any periodical or newspaper; or sent by mail at a bulk rate, and that:

(1) Refers to a clearly identifiable candidate;

(2) Is made, or scheduled to be made, either within thirty days prior to a primary or initial special election or within sixty days prior to a general or special election; and

(3) Is not susceptible to any reasonable interpretation other than as an appeal to vote for or against a specific candidate.

"Electioneering communication" shall not include communications:

(1) In a news story or editorial disseminated by any broadcast station or publisher of periodicals or newspapers, unless the facilities are owned or controlled by a candidate, candidate committee, or noncandidate committee;

(2) That constitute expenditures by the disbursing organization;

(3) In house bulletins; or

**ADDENDUM A-24**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4) That constitute a candidate debate or forum, or solely promote a debate or forum and are made by or on behalf of the person sponsoring the debate or forum.

(d) For purposes of this section, a person shall be treated as having made a disbursement if the person has executed a contract to make the disbursement.

→ **[§ 11-342]. Fundraiser; notice of intent** [Act 211 § 11-AA]

(a) No fundraiser shall be held unless a notice of intent to hold the fundraiser is filed with the commission setting forth the name and address of the person in charge, the price per person, the date, hour, and place of the fundraiser, and the method thereof.

(b) The person in charge of the fundraiser shall file the notice with the commission prior to the fundraiser.

(c) As used in this section, "fundraiser" means any function held for the benefit of a candidate, candidate committee, or noncandidate committee that is intended or designed, directly or indirectly, to raise contributions for which the price or suggested contribution for attending the function is more than $25 per person.

→ **[§ 11-343]. Reporting deadline** [Act 211 § 11-BB]

When any reporting deadline falls on a Saturday, Sunday, or holiday designated in section 8-1, the reporting deadline shall be the next succeeding day that is not a Saturday, Sunday, or holiday.

→ **[§ 11-344]. Sale or use of information** [Act 211 § 11-CC]

No information in the reports or copies of the reports filed with the commission shall be sold or used by any person for the purpose of soliciting contributions or for any commercial purpose.

**E. Contributions; Prohibitions; Limits**

→ **[§ 11-351]. Contributions, generally** [Act 211 § 11-DD]

(a) Monetary contributions and other campaign funds shall be promptly deposited in a depository institution, as defined by section 412:1-109, duly authorized to do business in the State, including a bank, savings bank, savings and loan association, depository financial services loan company, credit union, intra-Pacific bank, or similar financial institution, the deposits or accounts of which are insured by the Federal Deposit Insurance Corporation or the National Credit Union Administration in the name of the candidate, candidate committee, or noncandi-

440594_1.DOC          © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

date committee, whichever is applicable.

(b) A candidate, candidate committee, or noncandidate committee, shall not accept a contribution of more than $100 in cash from a single person without issuing a receipt to the contributor and keeping a record of the contribution.

(c) Each candidate committee or noncandidate committee shall disclose the original source of all earmarked funds, the ultimate recipient of the earmarked funds, and the fact that the funds are earmarked.

→ **[§ 11-352]. False name contributions prohibited** [Act 211 § 11-EE]

(a) No person shall make a contribution to any candidate, candidate committee, or noncandidate committee in any name other than that of the person who owns the money, property, or service.

(b) All contributions made in the name of a person other than the owner of the money, property, or service shall escheat to the Hawaii election campaign fund.

→ **[§ 11-353]. Anonymous contributions prohibited** [Act 211 § 11-FF]

(a) Except as provided in subsection (d), no person shall make an anonymous contribution to any candidate, candidate committee, or noncandidate committee.

(b) A candidate, candidate committee, or noncandidate committee shall not knowingly receive, accept, or retain an anonymous contribution, or report such contribution as an anonymous contribution, except as provided in this section.

(c) An anonymous contribution shall not be used or expended by the candidate, candidate committee, or noncandidate committee, but shall be returned to the contributor. If the contributor cannot be identified, the contribution shall escheat to the Hawaii election campaign fund.

(d) This section shall not apply to amounts that aggregate to less than $500 that are received from ten or more persons at the same political function. The receipt of these contributions shall be disclosed in a report filed pursuant to sections 11-333 and 11-335.

→ **[§ 11-354]. Fundraising on state or county property prohibited** [Act 211 § 11-GG]

(a) Except as provided in subsection (b), no person shall solicit a contribution in a government facility that is used for the discharge of official duties by an officer or employee of the State or county.

(b) The prohibition in subsection (a) shall not apply to any government facility that permits use

**ADDENDUM A-26**

by nongovernmental organizations for a fee or with reservations; provided that the government facility's use rules do not prohibit political activities on the premises. Government facilities that permit use for political activities shall be available to a candidate, candidate committee, or noncandidate committee for fundraising activities pursuant to the same terms and conditions that would otherwise apply to use by nongovernmental organizations.

(c) A person who violates the prohibition of fundraising on state or county property shall be guilty of a misdemeanor.

→**[§ 11-355]. Contributions by state and county contractors prohibited** [Act 211 § 11-HH]

(a) It shall be unlawful for any person who enters into any contract with the State, any of the counties, or any department or agency thereof either for the rendition of personal services, the buying of property, or furnishing of any material, supplies, or equipment to the State, any of the counties, any department or agency thereof, or for selling any land or building to the State, any of the counties, or any department or agency thereof, if payment for the performance of the contract or payment for material, supplies, equipment, land, property, or building is to be made in whole or in part from funds appropriated by the legislative body, at any time between the execution of the contract through the completion of the contract, to:

(1) Directly or indirectly make any contribution, or promise expressly or impliedly to make any contribution to any candidate committee or noncandidate committee, or to any candidate or to any person for any political purpose or use; or

(2) Knowingly solicit any contribution from any person for any purpose during any period.

(b) Except as provided in subsection (a), this section does not prohibit or make unlawful the establishment or administration of, or the solicitation of contributions to, any noncandidate committee by any person other than the state or county contractor for the purpose of influencing the nomination for election, or the election of any person to office.

(c) For purposes of this section, “completion of the contract” means that the parties to the government contract have either terminated the contract prior to completion of performance or fully performed the duties and obligations under the contract, no disputes relating to the performance and payment remain under the contract, and all disputed claims have been adjudicated and are final.

→**[§ 11-356]. Contributions by foreign national or foreign corporation prohibited** [Act 211 § 11-II]

(a) Except as provided in subsection (b), no contributions or expenditures shall be made to or on behalf of a candidate, candidate committee, or noncandidate committee, by a foreign national or foreign corporation, including a domestic subsidiary of a foreign corporation, a do-



440594_1.DOC © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

mestic corporation that is owned by a foreign national, or a local subsidiary where administrative control is retained by the foreign corporation, and in the same manner prohibited under 2 United States Code section 441e and 11 Code of Federal Regulations section 110.20, as amended.

(b) A foreign-owned domestic corporation may make contributions if:

(1) Foreign national individuals do not participate in election-related activities, including decisions concerning contributions or the administration of a candidate committee or noncandidate committee; or

(2) The contributions are domestically-derived.

→ [§ 11-357]. **Contributions to candidate committees; limits** [Act 211 § 11-JJ]

(a) No person shall make contributions to:

(1) A candidate seeking nomination or election to a two-year office or to a candidate committee in an aggregate amount greater than $2,000 during an election period;

(2) A candidate seeking nomination or election to a four-year nonstatewide office or to a candidate committee in an aggregate amount greater than $4,000 during an election period; or

(3) A candidate seeking nomination or election to a four-year statewide office or to a candidate committee in an aggregate amount greater than $6,000 during an election period.

(b) For purposes of this section, the length of term of an office shall be the usual length of term of the office as unaffected by reapportionment, a special election to fill a vacancy, or any other factor causing the term of the office the candidate is seeking to be less than the usual length of term of that office.

→ [§ 11-358]. **Contributions to noncandidate committees; limits** [Act 211 § 11-KK]

No person shall make contributions to a noncandidate committee in an aggregate amount greater than $1,000 in an election. This section shall not apply to ballot issue committees.

→ [§ 11-359]. **Family contributions** [Act 211 § 11-LL]

(a) A contribution by a dependent minor shall be reported in the name of the minor but included in the aggregate contributions of the minor's parent or guardian.

(b) A contribution by the candidate's immediate family shall be exempt from section 11-355, but shall be limited in the aggregate to $50,000 in any election period; provided that the aggre-

**ADDENDUM A-28**

gate amount of loans and contributions received from the candidate's immediate family does not exceed $50,000 during an election period.

→ **[§ 11-360]. Contributions to a party** [Act 211 § 11-MM]

(a) No person shall make contributions to a party in an aggregate amount greater than $25,000 in any two-year election period, except as provided in subsection (b).

(b) No political committee established and maintained by a national political party shall make contributions to a party in an aggregate amount greater than $50,000 in any two-year election period.

(c) If a person makes a contribution to a party that is earmarked for a candidate or candidates, the contribution shall be deemed to be a contribution from both the original contributor and the party distributing such funds to a candidate or candidates. The earmarked funds shall be promptly distributed by the party to the candidate.

(d) This section shall not prohibit a candidate from making contributions to the candidate's party if contributions are not earmarked for another candidate.

→ **[§ 11-361]. Aggregation of contributions and expenditures** [Act 211 § 11-NN]

(a) All contributions and expenditures of a person whose contributions or expenditures are financed, maintained, or controlled by any corporation, labor organization, association, party, or any other person, including any parent, subsidiary, branch, division, department, or local unit of the corporation, labor organization, association, party, political committees established and maintained by a national political party, or by any group of those persons shall be considered to be made by a single person.

(b) A contribution by a partnership shall not exceed the limitations in this section and shall be attributed to the partnership and to each partner in direct proportion to the partner's share of the partnership profits, according to instructions that shall be provided by the partnership to the party, candidate, or committee receiving the contribution.

(c) A contribution by a limited liability company shall be treated as follows:

(1) A contribution by a limited liability company that is treated as a partnership by the Internal Revenue Service shall be considered a contribution from a partnership;

(2) A contribution by a limited liability company that is treated as a corporation by the Internal Revenue Service shall be considered a contribution from a corporation;

**ADDENDUM A-29**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(3) A contribution by a limited liability company with a single individual member that is not treated as a corporation by the Internal Revenue Service shall be attributed only to that single individual member; and

(4) A limited liability company that makes a contribution shall, at the time the limited liability company makes the contribution, provide information to the party, committee, or candidate receiving the contribution specifying how the contribution is to be attributed.

(d) A person's contribution to a party that is earmarked for a candidate or candidates shall be included in the aggregate contributions of both the person and the party. The earmarked funds shall be promptly distributed by the party to the candidate.

(e) A contribution by a dependent minor shall be reported in the name of the minor but included in the aggregate contributions of the minor's parent or guardian.

→ **[§ 11-362]. Contributions limited from nonresident persons** [Act 211 § 11-OO]

(a) Contributions from all persons who are not residents of the State at the time the contributions are made shall not exceed thirty per cent of the total contributions received by a candidate or candidate committee for each election period.

(b) This section shall not be applicable to contributions from the candidate's immediate family.

→ **[§ 11-363]. Other contributions and expenditures** [Act 211 § 11-PP]

(a) Expenditures or disbursements for electioneering communications as defined in section 11-341, or any other coordinated activity made by any person for the benefit of a candidate in cooperation, consultation, or concert with, or at the request or suggestion of, a candidate, a candidate committee, or their agents, shall be considered to be a contribution to the candidate and expenditure by the candidate.

The financing by any person of the dissemination, distribution, or republication, in whole or in part, of any broadcast or any written or other campaign materials prepared by the candidate, candidate committee, or agents shall be considered to be a contribution to the candidate.

This subsection shall not apply to candidates for governor or lieutenant governor supporting a co-candidate in the general election.

(b) "Coordinated activity" means:

(1) The payment by any person in cooperation, consultation, or concert with, at the request of, or pursuant to, any general or particular understanding with a candidate, candidate commit-

**ADDENDUM A-30**

tee, the party of a candidate, or an agent of a candidate, candidate committee, or the party of a candidate;

(2) The payment by any person for the production, dissemination, distribution, or republication of any written, graphic, or other form of campaign material, in whole or in part, prepared by a candidate, candidate committee, or noncandidate committee, or an agent of a candidate, candidate committee, or noncandidate committee; or

(3) Any payment by any person or contract for any electioneering communication, as defined in section 11-341, where the payment is coordinated with a candidate, candidate committee, the party of the candidate, or an agent of a candidate, candidate committee, or the party of the candidate.

(c) No expenditure for a candidate who files an affidavit with the commission agreeing to limit aggregate expenditures by the candidate, including coordinated activity by any person, shall be made or incurred by a candidate committee or noncandidate committee without authorization of the candidate or the candidate's authorized representative. Every expenditure so authorized and made or incurred shall be attributed to the candidate with whom the candidate committee or noncandidate committee is directly associated for the purpose of imposing the expenditure limitations set forth in section 11-423.

→ **[§ 11-364]. Excess contribution; return; escheat** [Act 211 § 11-QQ]

(a) Any candidate, candidate committee, or noncandidate committee that receives in the aggregate more than the applicable contribution limit in section 11-357, 11-358, 11-359, or 11-360 shall return any excess contribution to the contributor within thirty days of receipt of the excess contribution. Any excess contribution not returned to the contributor within thirty days shall escheat to the Hawaii election campaign fund.

(b) A candidate, candidate committee, or noncandidate committee that complies with this section prior to the initiation of administrative action shall not be subject to any fine under section 11-410.

**F. Loans**

→ **[§ 11-371]. Loan to candidate committee** [Act 211 § 11-RR]

(a) A candidate or candidate committee may receive a loan from any or all of the following:

(1) The candidate's own funds;

(2) A financial institution regulated by the State or a federally chartered depository institution and made in accordance with applicable law in the ordinary course of business;

**ADDENDUM A-31**

(3) The candidate's immediate family in an aggregate amount not to exceed $50,000 during an election period; provided that the aggregate amount of loans and contributions received from the immediate family shall not exceed $50,000 during an election period; and

(4) Persons other than the candidate, a financial institution described in paragraph (2), or the candidate's immediate family, in an aggregate amount not to exceed $10,000 during an election period; provided that:

(A) If the $10,000 limit for loans from persons other than the immediate family is reached, the candidate and candidate committee shall be prohibited from receiving or accepting any other loans until the $10,000 is repaid in full; and

(B) If a loan from persons other than the candidate's immediate family is not repaid within one year of the date that the loan is made, the candidate and candidate committee shall be prohibited from accepting any other loans. All campaign funds, including contributions subsequently received, shall be used to repay the outstanding loan in full.

(b) For purposes of this section, a "loan" does not include expenditures made on behalf of a candidate committee by a candidate, volunteer, or employee if:

(1) The candidate's, volunteer's, or employee's aggregate expenditures do not exceed $1,500 within a thirty-day period;

(2) A dated receipt and a written description of the name and address of each payee and the amount, date, and purpose of each expenditure is provided to the candidate committee before the candidate committee reimburses the candidate, volunteer, or employee; and

(3) The candidate committee reimburses the candidate, volunteer, or employee within forty-five days of the expenditures being made.

→ **[§ 11-372]. Reporting loan; written loan agreement** [Act 211 § 11-SS]

(a) Every loan shall be reported as provided in section 11-333.

(b) Every loan in excess of $100 shall be documented as provided in section 11-333.

(c) A loan shall be treated as a contribution, subject to all relevant provisions of this part, if the loan is not reported or documented as provided in section 11-333.

→ **[§ 11-373]. Noncandidate committee loan prohibited** [Act 211 § 11-TT]

A noncandidate committee shall not receive or make a loan.

**ADDENDUM A-32**

## G. Expenditures

➡️ **[§ 11-381]. Campaign funds only used for certain purposes** [Act 211 § 11-UU]

(a) Campaign funds may be used by a candidate, treasurer, or candidate committee:

(1) For any purpose directly related:

    (A) In the case of the candidate, to the candidate's own campaign; or

    (B) In the case of a candidate committee or treasurer of a candidate committee, to the campaign of the candidate, question, or issue with which they are directly associated;

(2) To purchase or lease consumer goods, vehicles, equipment, and services that provide a mixed benefit to the candidate. The candidate, however, shall reimburse the candidate's candidate committee for the candidate's personal use unless the personal use is de minimis;

(3) To make donations to any community service, educational, youth, recreational, charitable, scientific, or literary organization; provided that in any election period, the total amount of all donations shall be no more than twice the maximum amount that one person may contribute to that candidate pursuant to section 11-357; provided further that no contributions shall be made from the date the candidate files nomination papers to the date of the general election;

(4) To make donations to any public school or public library; provided that in any election period, the total amount of all contributions shall be no more than twice the maximum amount that one person may contribute to that candidate pursuant to section 11-357; provided further that any donation under this paragraph shall not be aggregated with or imputed toward any limitation on donations pursuant to paragraph (3);

(5) To purchase not more than two tickets for each event held by another candidate or committee, whether or not the event constitutes a fundraiser as defined in section 11-342;

(6) To make contributions to the candidate's party so long as the contributions are not earmarked for another candidate; or

(7) To pay for ordinary and necessary expenses incurred in connection with the candidate's duties as a holder of an office.

**ADDENDUM A-33**

(b) Campaign funds may be used for the candidate's next subsequent election upon registration for the election pursuant to section 11-321.

→ **[§ 11-382]. Prohibited uses of campaign funds** [Act 211 § 11-VV]

Campaign funds shall not be used:

(1) To support the campaigns of candidates other than the candidate with which they are directly associated;

(2) To campaign against any other candidate not directly opposing the candidate with which they are directly associated; or

(3) For personal expenses.

→ **[§ 11-383]. Exceptions** [Act 211 § 11-WW]

Notwithstanding sections 11-381 and 11-382:

(1) A party may support more than one candidate; and

(2) A candidate for the office of governor or lieutenant governor may support a co-candidate in the general election.

→ **[§ 11-384]. Disposition of campaign funds; termination of registration** [Act 211 § 11-XX]

(a) The candidate committee and candidate who receives contributions for an election but fails to file nomination papers for that election shall return residual funds to the contributors no later than ninety days after the date on which nominations for that election shall be filed. Funds not returned to contributors shall escheat to the Hawaii election campaign fund.

(b) The candidate committee and candidate who withdraws or ceases to be a candidate for the election because of death, disqualification, or other reasons shall return residual funds to the contributors no later than ninety days after the candidate ceases to be a candidate. Funds not returned to contributors shall escheat to the Hawaii election campaign fund.

(c) A candidate who is elected to office, including a candidate subject to term limits and a candidate who resigned before the end of the term of office and the candidate committee of such a candidate, may use campaign funds as provided in section 11-381 or return funds to contributors until four years from the date of the election for which the campaign funds were received. Funds that are not used or returned to contributors shall escheat to the Hawaii election cam-

**ADDENDUM A-34**

paign fund.

(d) A candidate who loses an election and the candidate committee of such a candidate may use campaign funds as provided in section 11-381 or return funds to contributors until one year from the date of the election for which the campaign funds were received. Funds that are not used or returned to contributors shall escheat to the Hawaii election campaign fund.

(e) A candidate committee that disposes of campaign funds pursuant to this section shall terminate its registration with the commission as provided in section 11-326.

(f) Notwithstanding any of the foregoing, campaign funds may be used for the candidate's next subsequent election as provided in section 11-381 upon registration for the election pursuant to section 11-321.

(g) The commission shall adopt rules pursuant to chapter 91 to carry out the purposes of this section.

## H. Advertisements

➡ **[§ 11-391]. Advertisements** [Act 211 § 11-YY]

(a) Any advertisement shall contain:

(1) The name and address of the candidate, candidate committee, noncandidate committee, or other person paying for the advertisement; and

(2) A notice in a prominent location stating either that:

   (A) The advertisement is published, broadcast, televised, or circulated with the approval and authority of the candidate; provided that an advertisement paid for by a candidate, candidate committee, or ballot issue committee does not need to include the notice; or

   (B) The advertisement is published, broadcast, televised, or circulated without the approval and authority of the candidate.

(b) The fine for violation of this section, if assessed by the commission, shall not exceed $25 for each advertisement that lacks the information required by this section, and shall not exceed an aggregate amount of $5,000.

➡ **[§ 11-392]. House bulletins** [Act 211 § 11-ZZ]

The costs of preparing, printing, and circulating house bulletins and the writings, drawings, and photographs contained therein, except for paid political advertisements, shall be exempt from

**ADDENDUM A-35**

the provisions of this part.

## I. Enforcement

→ **[§ 11-401]. Subpoena powers** [Act 211 § 11-AAA]

(a) The commission may subpoena witnesses, examine them under oath, and require the production of books, papers, documents, or objects to the commission office or at any place in the State whether or not the subpoena is in connection with any hearing; provided that the person or documents subpoenaed shall be relevant to a matter under study or investigation by the commission.

(b) The books, papers, documents, or objects may be retained by the commission for a reasonable period of time for examination, audit, copying, testing, and photographing.

(c) The subpoena power shall be exercised by the chairperson of the commission, or the chairperson's designee.

(d) Upon application of the commission, obedience to the subpoena shall be enforced by the circuit court in the county in which the person subpoenaed resides or is found, in the same manner as a subpoena issued by a circuit court.

→ **[§ 11-402]. Filing of complaint**[Act 211 § 11-BBB]

(a) A person alleging violations of this part shall file a complaint with the commission.

(b) A complaint initiated by the commission shall be in writing and signed by the executive director.

(c) A complaint by a person other than the executive director shall be in writing, signed by the person filing the complaint, and notarized.

→ **[§ 11-403]. Notice of complaint; opportunity to explain or respond to complaint**
[Act 211 § 11-CCC]

(a) The commission shall give notice of receipt of the complaint and a copy of the complaint to the respondent.

(b) The respondent may explain or otherwise respond in writing to the complaint and explain or otherwise respond to the complaint at a meeting promptly noticed by the commission and conducted under chapter 92.

**ADDENDUM A-36**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

→ **[§ 11-404]. Initial determination by the commission** [Act 211 § 11-DDD]

The commission shall promptly determine, without regard to chapter 91, to:

(1) Summarily dismiss the complaint;

(2) Investigate further;

(3) Make a preliminary determination; or

(4) Refer the complaint to an appropriate prosecuting attorney for prosecution under section 11-411.

→ **[§ 11-405]. Preliminary determination regarding probable cause** [Act 211 § 11-EEE]

(a) Upon hearing the response, if the respondent explains or otherwise responds to the complaint, and upon completion of any investigation, the commission may make a prompt preliminary determination as to whether probable cause exists that a violation of this part has been committed. The preliminary determination with findings of fact and conclusions of law shall be served upon the respondent by certified mail.

(b) The respondent shall be afforded an opportunity to contest the commission's preliminary determination of probable cause by making a request for a contested case hearing under chapter 91 within twenty days of receipt of the preliminary determination. Failure to request a contested case hearing shall render the commission's preliminary determination final.

→ **[§ 11-406]. Waiver of further proceedings** [Act 211 § 11-FFF]

The commission may waive further proceedings due to action the respondent takes to remedy or correct the alleged violation, including the payment of any administrative fine. The commission shall make the remedial or corrective action taken by the respondent, the commission's decision in light of the action to waive further proceedings, and the commission's justification for its decision a part of the public record.

→ **[§ 11-407]. Contested case hearing** [Act 211 § 11-GGG]

(a) A contested case hearing shall be conducted pursuant to chapter 91 and any rules adopted by the commission, except as provided in this section.

(b) If a hearing is held before the commission, the commission shall not be bound by strict rules of evidence when conducting a hearing to determine whether a violation of this part has occurred, and the degree or quantum of proof required shall be a preponderance of the evidence.

**ADDENDUM A-37**

(c) The commission or hearings officer, if there is no dispute as to the facts involved in a particular matter, may permit the parties to proceed by memoranda of law in lieu of a hearing unless the procedure would unduly burden any party or is otherwise not conducive to the ends of justice.

(d) A record shall be made of the proceeding.

(e) All parties shall be afforded full opportunity to present evidence and argument on all issues involved.

(f) Any person who appears before the commission shall have all of the rights, privileges, and responsibilities of a witness appearing before the courts of this State. All witnesses summoned before the commission or hearings officer shall receive reimbursements as paid in like circumstances in the courts of this State. Any person whose name is mentioned during a proceeding before the commission and who may be adversely affected thereby may appear or file a written statement for incorporation into the record of the proceeding.

(g) If a hearing is held before a hearings officer, the hearings officer shall render a recommended decision for the commission's consideration. Any party adversely affected by the decision may file written exceptions with the commission within fifteen days after receipt of a copy of the decision by certified mail.

(h) The commission, as expeditiously as possible after the close of the commission's hearing, shall issue its final determination of violation together with separate findings of fact and conclusions of law regarding whether a violation of this part has been committed.

➡ **[§ 11-408]. Dismissal** [Act 211 § 11-HHH]

The complaint shall be dismissed if the commission makes a final determination that there is no violation of this part.

➡ **[§ 11-409]. Final determination of violation; order** [Act 211 § 11-III]

If the commission makes a final determination of a violation of this part, its written decision with findings of fact and conclusions of law may order any of the following:

(1) The return of any contribution;

(2) The reimbursement of any unauthorized expenditure;

(3) The payment of any administrative fine to the general fund of the State;

**ADDENDUM A-38**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4) The respondent to cease and desist violations of this part; or

(5) Any report, statement, or other information to be filed that may be required by this part.

→ **[§ 11-410]. Administrative fines; relief** [Act 211 § 11-JJJ]

(a) The commission may make a decision or issue an order affecting any person violating any provision of this part or section 281-22 that may provide for the assessment of an administrative fine as follows:

(1) If an individual, an amount not to exceed $1,000 for each occurrence or an amount equivalent to three times the amount of an unlawful contribution or expenditure; or

(2) If a corporation, organization, association, or labor union, an amount not to exceed $1,000 for each occurrence;

provided that whenever a corporation, organization, association, or labor union violates this part, the violation may be deemed to be also that of the individual directors, officers, or agents of the corporation, organization, association, or labor union, who have knowingly authorized, ordered, or done any of the acts constituting the violation.

(b) Any order for the assessment of an administrative fine shall not be issued against a person without providing the person written notice and an opportunity to be heard at a hearing conducted under chapter 91. A person may waive these rights by written stipulation or consent.

(c) If an administrative fine is imposed upon a candidate, the commission may order that the fine, or any portion, be paid from the candidate's personal funds.

(d) If the person to whom the commission's order is directed does not comply with the order, the first circuit court, upon application of the commission, shall issue an order requiring the person to comply with the commission's order. Failure to obey such a court order shall be punished as contempt.

(e) Any administrative fine collected by the commission shall be deposited in the general fund of the State.

(f) Any person or the commission may sue for injunctive relief to compel compliance with this part.

(g) The provisions of this section shall not prohibit prosecution under any appropriate provision of the Hawaii Penal Code or section 11-412.

**ADDENDUM A-39**

(h) This section shall not apply to any person who, prior to the commencement of proceedings under this section, has paid or agreed to pay the fines prescribed by sections 11-340 and 11-391(b).

→ **[§ 11-411]. Criminal referral** [Act 211 § 11-KKK]

In lieu of an administrative determination that a violation of this part has been committed, the commission may refer the complaint to the attorney general or county prosecutor at any time it believes the respondent may have recklessly, knowingly, or intentionally committed a violation.

→ **[§ 11-412]. Criminal prosecution** [Act 211 § 11-LLL]

(a) Any person who recklessly, knowingly, or intentionally violates any provision of this part shall be guilty of a misdemeanor.

(b) Any person who knowingly or intentionally falsifies any report required by this part with the intent to circumvent the law or deceive the commission or who violates section 11-352 or 11-353 shall be guilty of a class C felony. A person charged with a class C felony shall not be eligible for a deferred acceptance of guilty plea or nolo contendere plea under chapter 853.

(c) A person who is convicted under this section shall be disqualified from holding elective public office for a period of four years from the date of conviction.

(d) For purposes of prosecution for violation of this part, the offices of the attorney general and the prosecuting attorney of the respective counties shall be deemed to have concurrent jurisdiction to be exercised as follows:

(1) Prosecution shall commence with a written request from the commission or upon the issuance of an order of the court; provided that prosecution may commence prior to any proceeding initiated by the commission or final determination;

(2) In the case of statewide offices, parties, or issues, the attorney general or the prosecuting attorney for the city and county of Honolulu shall prosecute any violation; and

(3) In the case of all other offices, parties, or issues, the attorney general or the prosecuting attorney for the respective county shall prosecute any violation.

In the commission's choice of prosecuting agency, it shall be guided by whether any conflicting interest exists between the agency and its appointive authority.

(e) The court shall give priority to the expeditious processing of prosecutions under this sec-

**ADDENDUM A-40**

tion.

(f) Prosecution for violations of this part shall not commence after five years have elapsed from the date of the violation or date of filing of the report covering the period in which the violation occurred, whichever is later.

(g) This section shall not apply to any person who, prior to the commencement of proceedings under this section, has paid or agreed to pay the fines prescribed by sections 11-340 and 11-391(b).

END OF DOCUMENT

**ADDENDUM A-41**

 © 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**§ 3-160-2. Definitions.** Unless the context specifically indicates otherwise, as used in this chapter:

"Advertisement" means the same as defined in section 11-191, Hawaii Revised Statutes, and does not include sundry items.

"Excess contributions" means contributions received by a candidate or committee in excess of any contribution limits in section 11-204, Hawaii Revised Statutes.

"Sundry item" includes clothing, bumper stickers, pins, buttons, and similar small items upon which the notice required by section 11-215, Hawaii Revised Statutes, cannot be conveniently printed; and signs and banners.

**§ 3-160-3. "Clearly identified", defined.** (a) "Clearly identified" means the same as defined in section 11-191, Hawaii Revised Statutes.

(b) Examples of "clearly identified" include but are not limited to: "the Governor", "your Senator", "the incumbent", "the Republican gubernatorial nominee", or "the Democratic candidate for the 60th House seat".

**§ 3-160-5. "Election period", defined.** (a) "Election period" means the same as defined in section 11-191, Hawaii Revised Statutes.

(b) The election period begins from the day after the general election and continues through the day of the next general election, except that where a special election is held, the election period begins from the day after the last general election held for the office through the day of the special election.

**§ 3-160-6. "Expressly advocating", defined.** "Expressly advocating" means a communication when taken as a whole and with limited reference to external events, could be susceptible to no other reasonable interpretation but as an exhortation to vote for or against a candidate because:

(1)     The communication is unmistakable, unambiguous, and suggestive of only one meaning;

(2)     The communication presents a clear plea for action and is not merely informative; and

(3)     Reasonable minds could not differ as to whether the communication encourages actions to elect or defeat a clearly identified candidate or encourages some other kind of action.

§ **3-160-21. Noncandidate committee registration and reports.** (a) Any committee, including a federal political action committee or a committee registered in another state, must register as a noncandidate committee if it receives contributions or makes expenditures, the aggregate amount of which is more than $1,000, in a two-year election period.

(b) The noncandidate committee's reports must include information about: its (1) expenditures (e.g., contributions to Hawaii state and local candidates) and; (2) contributions received by the noncandidate committee that are equal to or greater than the expenditures.

(c) The noncandidate committee must segregate contributions and expenditures to Hawaii committees in a separate bank account or by a ledger account in the noncandidate committee's main account.

§ **3-160-37. Contributions by a state or county contractor prohibited.** (a) A state or county contractor, as specified in section 11-205.5, Hawaii Revised Statutes, shall not make contributions to a candidate or committee; provided, that the prohibition in section 11-205.5, Hawaii Revised Statutes, is not applicable to a state or county contractor contributing to a ballot issue committee.

(b) The assets of a partnership, including a limited liability company treated as a partnership by the Internal Revenue Service, which is a state or county contractor as specified in section 11-205.5, Hawaii Revised Statutes, shall not be used to make contributions. Individual partners and employees of a partnership may make contributions or expenditures in their own names from their personal assets.

(c) Stockholders, officers, or employees of a state or county contractor as specified in section 11-205.5, Hawaii Revised Statutes, may contribute in their own names from their personal assets.

(d) Individuals who are state or county contractors as specified in section 11-205.5, Hawaii Revised Statutes, may contribute in their own names from their personal assets.

(e) Sole proprietors who are state or county contractors as specified in section 11-205.5, Hawaii Revised Statutes, may make contributions.

(f) "Contract", as used in section 11-205.5, Hawaii Revised Statutes means:
    (1)    A written contract between any person and the State, any of its counties, or any department or agency thereof; and
    (2)    Any written contract modification.

(g) "Execution", as used in section 11-205.5, Hawaii Revised Statutes, means the date the last party signs the contract.

(h) "Personal services", as used in section 11-205.5, Hawaii Revised Statutes means the performance of services in the fields of health, law, engineering,

architecture, construction, accounting, actuarial science, performing arts, or consulting.

**§ 3-160-48. Electioneering communications.**  A noncandidate committee registered with the commission is not required to file a statement of information for disbursements for electioneering communications.

**§ 3-160-2. Definitions.** Unless the context specifically indicates otherwise, as used in this chapter:

"Advertisement" means the same as defined in section 11-191, Hawaii Revised Statutes, and does not include sundry items.

"Excess contributions" means contributions received by a candidate or committee in excess of any contribution limits in section 11-204, Hawaii Revised Statutes.

"Sundry item" includes clothing, bumper stickers, pins, buttons, and similar small items upon which the notice required by section 11-215, Hawaii Revised Statutes, cannot be conveniently printed; and signs and banners.

**§ 3-160-3. "Clearly identified", defined.** (a) "Clearly identified" means the same as defined in section 11-191, Hawaii Revised Statutes.

(b) Examples of "clearly identified" include but are not limited to: "the Governor", "your Senator", "the incumbent", "the Republican gubernatorial nominee", or "the Democratic candidate for the 60th House seat".

**§ 3-160-5. "Election period", defined.** (a) "Election period" means the same as defined in section 11-191, Hawaii Revised Statutes.

(b) The election period begins from the day after the general election and continues through the day of the next general election, except that where a special election is held, the election period begins from the day after the last general election held for the office through the day of the special election.

**§ 3-160-6. "Expressly advocating", defined.** "Expressly advocating" means a communication when taken as a whole and with limited reference to external events, could be susceptible to no other reasonable interpretation but as an exhortation to vote for or against a candidate because:

(1)   The communication is unmistakable, unambiguous, and suggestive of only one meaning;

(2)   The communication presents a clear plea for action and is not merely informative; and

(3)   Reasonable minds could not differ as to whether the communication encourages actions to elect or defeat a clearly identified candidate or encourages some other kind of action.

**§ 3-160-21. Noncandidate committee registration and reports.** (a) Any committee, including a federal political action committee or a committee registered in another state, must register as a noncandidate committee if it receives contributions or makes expenditures, the aggregate amount of which is more than $1,000, in a two-year election period.

(b) The noncandidate committee's reports must include information about: its (1) expenditures (e.g., contributions to Hawaii state and local candidates) and; (2) contributions received by the noncandidate committee that are equal to or greater than the expenditures.

(c) The noncandidate committee must segregate contributions and expenditures to Hawaii committees in a separate bank account or by a ledger account in the noncandidate committee's main account.

**§ 3-160-37. Contributions by a state or county contractor prohibited.** (a) A state or county contractor, as specified in section 11-205.5, Hawaii Revised Statutes, shall not make contributions to a candidate or committee; provided, that the prohibition in section 11-205.5, Hawaii Revised Statutes, is not applicable to a state or county contractor contributing to a ballot issue committee.

(b) The assets of a partnership, including a limited liability company treated as a partnership by the Internal Revenue Service, which is a state or county contractor as specified in section 11-205.5, Hawaii Revised Statutes, shall not be used to make contributions. Individual partners and employees of a partnership may make contributions or expenditures in their own names from their personal assets.

(c) Stockholders, officers, or employees of a state or county contractor as specified in section 11-205.5, Hawaii Revised Statutes, may contribute in their own names from their personal assets.

(d) Individuals who are state or county contractors as specified in section 11-205.5, Hawaii Revised Statutes, may contribute in their own names from their personal assets.

(e) Sole proprietors who are state or county contractors as specified in section 11-205.5, Hawaii Revised Statutes, may make contributions.

(f) "Contract", as used in section 11-205.5, Hawaii Revised Statutes means:

    (1)    A written contract between any person and the State, any of its counties, or any department or agency thereof; and

    (2)    Any written contract modification.

(g) "Execution", as used in section 11-205.5, Hawaii Revised Statutes, means the date the last party signs the contract.

(h) "Personal services", as used in section 11-205.5, Hawaii Revised Statutes means the performance of services in the fields of health, law, engineering,

architecture, construction, accounting, actuarial science, performing arts, or consulting.

**§ 3-160-48. Electioneering communications.** A noncandidate committee registered with the commission is not required to file a statement of information for disbursements for electioneering communications.

  (3) Chloral hydrate;
  (4) Ethchlorvynol;
  (5) Ethinamate;
  (6) Methaqualone;
  (7) Methohexital;
  (8) Meprobamate;
  (9) Methylphenobarbital;
(10) Paraldehyde;
(11) Petrichloral;
(12) Phenobarbital.

  (c) The department may except by rule any compound mixture, or prepion containing any depressant substance listed in subsection (b) from the lication of all or any part of this chapter if the compound, mixture or prepion contains one or more active medicinal ingredients not having a dessant effect on the central nervous system, and if the admixtures are inled therein in combinations, quantity, proportion, or concentration that ate the degree of danger or probable danger of the substances which have ∍pressant effect on the central nervous system."

SECTION 2. Statutory material to be repealed is bracketed. New maal is underscored. In printing this Act, the revisor of statutes need not inie the brackets, the bracketed material, or the underscoring.*

SECTION 3. This Act shall take effect upon its approval.

    (Approved May 24, 1973.)

**ACT 185**            H. B. NO. 22

Bill for an Act Relating to Candidate Expenses.

*It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. The Hawaii Revised Statutes is amended by repealing ₁pter 11, part XII, subpart B and substituting a new subpart B to read as lows:

  "B. ELECTION CAMPAIGN CONTRIBUTIONS AND EXPENDIJRES

  **Sec. 11-191 Definitions.** When used in this part:
  (1) 'Campaign treasurer' means a person appointed under section 11-198, and, unless expressly indicated otherwise, includes deputy campaign treasurers.
  (2) 'Candidate' means an individual who seeks nomination for election, or election, to office, and, for the purposes of this chapter, an individual shall be deemed to seek nomination for election, or election, if he has done any of the following:
    (a) taken the action necessary under the law of the State to qualify

------

∃dited accordingly.

himself for nomination for election, or election, to office, or

(b) received any contributions in an aggregate amount of more than $100, or make or incur any expenditure to bring about his nomination for election or election to office reportable under sections 11-207 or 11-208; or

(c) has given his consent for any other person to receive contributions or make expenditures with a view to bring about his nomination for election, or election, to office.

(3) 'Committee' means:

(a) Any organization or association which, or any individual who, accepts contributions or makes expenditures for or against, with or without the consent or knowledge of any candidate, candidates, individual who files for nomination at a later date and becomes a candidate, or party, or for or against any question or issue;

(b) Any organization or association which, or any individual who, raises or holds money or anything of value, with or without the consent or knowledge of any candidate, candidates, individual who files for nomination at a later date and becomes a candidate, or any party, and which subsequently contributes the money or anything of value to, or makes expenditures in behalf of, a candidate, candidates, individual who files for nomination at a later date and becomes a candidate, or party.

(c) Notwithstanding any of the foregoing, the term 'committee' shall not include an individual who contributes funds or anything of value owned by him.

(4) 'Commission' means the campaign spending commission.

(5) 'Contribution' means:

(a) an offer, promise, agreement, or tender of money or anything of value by way of gift, subscription, loan, advance, or the purchase of tickets to testimonial dinners or fund raisings, for the purpose of:

(i) influencing the nomination or election of any candidate or any individual who files for nomination at a later date and becomes a candidate; or

(ii) influencing the outcome of any question or issue at any election; or

(iii) use of any party; or

(b) the payment, by any person other than a candidate or committee, of compensation for the personal services of another person which are rendered to such candidate or committee without charge.

(c) Notwithstanding the foregoing, "contribution" shall not include services provided without compensation by individuals volunteering their time on behalf of a candidate or committee.

(6) 'Election' means any election for office provided by law.

(7) 'Expenditure' means:

(a) Any purchase or transfer of money or anything of value, or

promise or agreement to purchase or transfer money or anything of value, incurred or made for the purpose of:

 (i) influencing the nomination or election of any candidate or of any individual who files for nomination at a later date and becomes a candidate;

 (ii) influencing the outcome of any question or issue at any election; or

 (iii) use by any party; or

(b) the payment, by any person other than a candidate or committee, of compensation for the personal services of another person which are rendered to such candidate or committee.

(8) 'Newspaper' means a publication of general distribution issued once or more per week that is written and published in the State of Hawaii.

(9) 'Office' means any public or constitutional office including but not limited to the following: U.S. president, U.S. vice-president, U.S. senator, U.S. representative, governor, lieutenant governor, state senator and representative, board of education official, delegates to the constitutional convention, and county officers.

(10) 'Party' means any qualified political party.

(11) 'Person' means an individual, partnership, committee, association, corporation, or labor union and its auxiliary committees."

**Sec. 11-192 Campaign spending commission.** There is established a campaign spending commission, consisting of five members appointed by the governor as under Sec. 26-34 as follows:

The judicial council shall select a panel of ten persons, five persons each from two political parties which polled the largest vote in the last preceding general election. From this panel the governor shall appoint two members from each such political party and a chairman. Notwithstanding sec. 26-34, the governor's appointment shall not be subject to senatorial confirmation. The term of such members should be four years, except that this term of members first appointed shall be two years for two members, three years for two other members, and four years for the chairman.

The members of the commission shall serve without compensation but they shall be reimbursed for reasonable expenses, including travel expenses, incurred in the discharge of their duties. For administrative purposes the commission shall be in the office of the lieutenant governor.

**Sec. 11-193 Challenges, investigation and notice.** Challenges to a candidate's compliance with this subpart B, shall be filed with the commission. The commission shall investigate such challenges and shall advise the chief election officer of its findings. If, in the opinion of the commission, a violation has occurred, the state legislature in the case of a state office, or the respective county legislative body in the case of a county office, shall also be advised as to its findings.

**Sec. 11-194 Duties of the chief election officer; commission.** (a) The chief election officer's principal duty is to regulate the election process, and

**ACT 185**

under this subpart his duties are:

(1) Develop prescribed and simple forms for the making of all reports required by this subpart;

(2) Prepare and publish a manual for all candidates and committees, describing the requirements of the law, including uniform and simple methods of bookkeeping and reporting;

(3) Preserve all required reports for at least five years from the date of receipt; and

(4) Permit copying of any required report as requested by any person.

(b) The commission's principal duty is to supervise campaign contributions and expenditures, and under this subpart its duties are:

(1) Ascertain whether candidates, committees, or others have failed to file required reports or have filed defective reports, give notice to delinquents to correct or explain deficiencies, and make available for public inspection a list of such delinquents;

(2) Hold public hearings;

(3) Investigate any violations in reporting and issue subpoenas for the production of documents and the attendance of witnesses;

(4) Adopt a code of fair campaign practices;

(5) Establish rules and regulations pursuant to chapter 91; and

(6) Initiate the prosecution for the violation of this subpart pursuant to section 11-212.

**Sec. 11-195 Registration.** (a) Each candidate, committee or party shall file an organizational report on the earliest of the following applicable days:

(1) on or before the day of filing for nomination or election;

(2) at least 45 days before the primary election;

(3) at least 45 days before the general, special general or special election, when there is no primary election; or

(4) by the tenth day after (A) receiving any contributions in an aggregate amount of more than $100, or (B) making or incurring any expenditure which is reportable under sections 11-207 or 11-208.

**Sec. 11-196 Filing of reports, generally.** All reports required to be filed under this subpart by a candidate or those committees directly associated with his candidacy shall be sworn to by the candidate. Reports required to be filed under this subpart by a party or committee that supports more than one candidate shall be sworn to by a person authorized to sign such reports. All reports required to be filed shall be open for public inspection.

**Sec. 11-197 Organizational reports.** (a) The organizational report shall include:

(1) The name, address, office sought if known, and party affiliation of each candidate or individual whom the committee or party is supporting;

(2) The names and addresses of the campaign treasurer and deputies;

(3) The names and addresses of the campaign chairman and deputy campaign chairman;

(4) A list of all banks, safety deposit boxes, or other depositories used; and

314

(5) The amount, name and address of each individual donor who has contributed an aggregate amount of more than $100 since the last election applicable to the office being sought or to the issue in question.

(b) Any change in information submitted in the organizational report shall be reported not later than 4:30 p.m. on the tenth calendar day after such change is brought to the attention of the candidate, committee, party or campaign treasurer.

**Sec. 11-198 Campaign treasurer.** (a) Every committee, party, or candidate shall appoint a campaign treasurer on or before the day for filing an organizational report. Up to three deputy campaign treasurers may be appointed, provided such appointments are appropriately filed. A candidate may appoint himself as campaign treasurer.

(b) A campaign treasurer may be removed at any time. In case of death, resignation or removal of the campaign treasurer, the committee, party, or candidate shall appoint a successor and shall file his name and address with the commission not later than 4:30 p.m. on the day after the appointment.

(c) Each campaign treasurer shall be deemed to be authorized to receive contributions or make expenditures in behalf of the person or body appointing him.

**Sec. 11-199. Campaign contributions, generally.** (a) All funds contributed shall be deposited in a financial depository reported under section 11-197.

(b) Every candidate shall keep a record of every contribution received in the amount or value of more than $10. Every candidate and campaign treasurer shall report every contribution received which is more than $100.

**Sec. 11-200 Campaign contributions, restrictions against transfer.** (a) A candidate, campaign treasurer, or committee shall not receive any contributions, make any expenditures, or receive or make any transfer of money or anything of value:

(1) for any purpose other than those directly related, in the case of the candidate, to his own campaign, and in the case of a campaign treasurer or committee, to the campaign of the candidate or issue with which they are directly associated; or

(2) to support the campaigns of candidates other than the candidate, for whom the funds were collected or with whom the campaign treasurer or committee is directly associated;

(3) to campaign against any other candidate not directly opposing the candidate, for whom the funds were collected or with whom the campaign treasurer or committee is directly associated.

(b) A committee, party, candidate or campaign treasurer shall not receive any contribution from a committee or party not registered with the chief election officer.

(c) This section shall not be construed to prohibit a party from supporting more than one candidate, or joint expenditure by two or more candidates seeking election to multiple offices from the same district whether such expenditures are equally or unequally incurred among such candidates.

315

Sec. 11-201 **Candidates expenditures of own funds, not a contribution.** A candidate's expenditure of his own funds in the pursuit of his campaign shall not be deemed a contribution for purpose of this subpart.

Sec. 11-202 **Anonymous contributions; unlawful.** No person shall make a payment of his own money or of another person's money to any candidate, party, or committee in connection with a nomination or election in any other name than that of the person who in truth supplies such money; nor shall any candidate, party, or committee knowingly receive such payment or enter or cause the same to be entered in his accounts in another name than that of the person by whom it was actually furnished.

This section shall not apply to amounts that aggregate less than $250. Any anonymous contribution received by a candidate, party, or committee shall not be used or expended, but shall be returned to the donor. If the donor cannot be identified, the contribution shall escheat to the State.

Sec. 11-203 **Testimonial affairs.** (a) As used in this section, 'testimonial affair' means any function held for the benefit of a person and designed to raise funds for political purposes for which the total cost for attending the affair is more than $15 per person.

(b) Any person for whom a testimonial affair has been held may not hold a successive testimonial affair until after an election in which he was a nominee or candidate for public office; provided that an additional testimonial affair may be held within six months after a general, special general or special election, in the case of a candidate having a deficit. No testimonial affair may be held unless a notice of intent to hold such an affair is filed with the chief election officer prior to the date of the affair setting forth the name and address of the person in charge.

(c) The following expenses incident to a testimonial affair held during the times specified in section 11-206 shall not be considered expenditures within the limitations set by that section.

(1) The cost of food and beverages consumed at the affair;

(2) Rent and utilities for the premises where the affair is held;

(3) The cost of printing tickets; and

(4) The amount paid for guest speakers and entertainment.

Sec. 11-204 **Campaign expenditures: authority required.** (a) A candidate may draw on the campaign treasurer for his political expenses for postage, telegrams, telephone calls, stationery, expressage, travel, meals, and lodging. The candidate shall make a detailed accounting of such political expenses and the accounting shall be made a part of the report as required in sections 11-207 and 11-208. The authorization shall state the amount and purpose of the proposed expenditures and shall be signed by the campaign treasurer.

(b) No funds shall be withdrawn for or paid by a campaign depository from any campaign fund account except upon the presentation of written authorization from a campaign treasurer.

(c) No expenditure on behalf of a candidate shall be made or incurred by any committee without specific written authorization of the candidate or his authorized representative. Every expenditure so authorized and made or in-

curred shall be attributed to the candidate with whom the committee is directly associated for purpose of imposing the expenditure limitations imposed by section 11-206.

**Sec. 11-205 Campaign expenditures, restriction as to items.** The following expenses, and no other, may be authorized by a campaign treasurer:

(1) Hiring public halls for political meetings, furnishing music, costumes, banners, fireworks and the like, and reasonable refreshments, food, and entertainment for political meetings or public parades, and advertising the meetings or parades;

(2) Printing and circulating political newspapers, pamphlets, and books;

(3) Renting rooms for political committees;

(4) Compensating campaign employees and furnishing reasonable entertainment to the employees and members of political committees;

(5) Traveling expenses of campaign employees and committees and public speakers and reasonable compensation to public speakers;

(6) Postage, telegram, telephone, printing, and express charges;

(7) Preparing, circulating, and filing nomination papers;

(8) Conveying voters to the polls;

(9) Purchasing radio and television time, advertisements in newspapers and other communications media, and advertising materials;

(10) Sundry items to be distributed to the general public in connection with a campaign or for the purpose of influencing a nomination for election or election; and

(11) Donations to community organizations or other social groups including but not limited to youth athletics, clubs, scouting and recreation groups.

**Sec. 11-206 Campaign expenditure, limits as to amounts.** (a) The total expenditures for candidates, inclusive of all expenditures made or incurred by the candidate himself and all campaign treasurers and committees in his behalf, shall not exceed the following amounts expressed respectively as the product of the number of voters in the last preceding general election eligible to vote for the respective class of offices:

(1) From January 1 of the year of a general election through the day of the primary election, or nine months prior to a special primary or special election through the day of special primary or special election:

(A) for the office of governor—50 cents;

(B) for the office of lieutenant governor—40 cents;

(C) for the offices of mayor and prosecuting attorneys—40 cents;

(D) for the offices of state senators and county council members—25 cents;

(E) for the offices of state representatives and all other offices—25 cents; and

(2) From the day after a primary or special primary election through the day of the general or special general election:

(A) for the office of governor—50 cents;

    (B) for the office of lieutenant governor—25 cents;

    (C) for the offices of mayor and prosecuting attorneys—40 cents;

    (D) for the offices of state senators and county council members—25 cents;

    (E) for the offices of state representatives and all other offices—25 cents; and

  (3) In no event shall any portion of the amount allowable under subsections (a)(1) and (a)(2) be shifted from one period to another so as to increase the amount subsequently allowable under subsection (a)(1) or (a)(2).

  (b) That part of expenditures in subsection (a) expended for time and space for advertising in newspaper, magazines, or radio, or television for nomination for election, and election, for the following classes of offices shall not exceed in the aggregate the following limits expressed respectively as the product of the number of voters in the last preceding general election eligible to vote for the respective class of offices:

  (1) From January 1 of the year of a general election through the day of the primary election, or nine months prior to a special primary or special election through the day of special primary or special election:

    (A) for the office of governor—15.5 cents;

    (B) for the office of lieutenant governor—12 cents;

    (C) for the offices of mayor and prosecuting attorneys—12 cents;

    (D) for the offices of state senators and county council members—10.5 cents;

    (E) for the offices of state representatives and all other offices—7.5 cents; and

  (2) From the day after a primary or special primary election through the day of the general or special general election:

    (A) for the office of governor—15.5 cents;

    (B) for the office of lieutenant governor—12 cents;

    (C) for the offices of mayors and prosecuting attorneys—12 cents;

    (D) for the offices of state senators and county council members—10.5 cents;

    (E) for the offices of state representatives and all other offices—7.5 cents; and

  (c) The aggregate expenditures for all preparation, talent and other costs attributable to the production of advertising in newspapers, magazines, and on radio and on television shall be limited to seventy-five percent of the total cost of advertising attributable to radio and television time and newspaper space.

**Sec. 11-207 Preliminary reports.** (a) Each candidate, authorized person in the case of a party, or campaign treasurer in the case of a committee shall file a preliminary report with the commission not later than 4:30 p.m. of the tenth calendar day prior to each election. The report shall be certified pursuant to section 11-196 and shall contain the current statement of the following:

318

(1) The aggregate sum of all contributions received;
(2) A list of the names and addresses of all identified or identifiable persons or groups contributing in the aggregate of more than $100;
(3) All expenditures made, incurred, or authorized by or for a candidate including the name and address of each payee and the amount and purpose of each expenditure; and
(4) A current statement of the balance on hand or deficit.

**Sec. 11-208 Final and supplemental reports.** (a) Each candidate, authorized person in the case of a party, or campaign treasurer in the case of a committee shall file with the commission not later than 4:30 p.m. of the twentieth calendar day after a general election, special election or special general election, a final report, certified pursuant to section 11-196 which shall include where applicable:

(1) A statement of the total contributions received;
(2) A list of the names and addresses of all persons contributing in an aggregate amount of more than $100;
(3) A statement of all expenditures made, incurred, or authorized by or for a candidate including the name of each payee and the amount and purpose of each expenditure; and
(4) A statement of the balance on hand or deficit.

(b) A candidate who is not successful in a primary election shall file his final report not later than 4:30 p.m. of the twentieth calendar day after the primary election. A candidate who is successful in a primary election need not file a final report after the primary election although he is required to file one after the general election.

(c) **Deficit.** In the event of a deficit, the candidate shall, every ninety days until the deficit is eliminated, file supplemental reports identifying in accordance with section 11-199 all further contributions received subsequent to the previous report.

(d) **Surplus.** In the event of a surplus, the candidate shall:
(1) Maintain the account in a registered depository; and
(2) Every six months, until he becomes a candidate again, file supplemental reports including all items prescribed in subsection (a).

(e) A candidate who receives no contributions or makes no expenditures shall so report on the dates designated.

**Sec. 11-209 Disposition of funds.** (a) All candidates who withdraw or cease to be candidates, and individuals who have received contributions but fail to file for nomination, or committees or parties that discontinue, shall return any residual fund proportionately to the donors if their identities are known. This does not apply to elected officials or candidates who failed to be nominated or elected.

(b) If no donors are found, the residual shall be contributed to the campaign fund of any candidate, to a party, or charities, or escheated to the State General Fund.

(c) Upon such disposition, the candidate and campaign treasurer shall file a report with the commission indicating the amounts distributed under subsection (b), and the manner of disposition.

319

Sec. 11-210 **Advertising.** (a) All advertising published or circulated prior to or on the day of election shall state who paid for the advertisement and the address of such person, party, or committee.

(b) No newspaper, magazines, or radio, or television broadcasting station shall publish or broadcast any advertisement promoting any candidate unless such publication or broadcast is approved in writing by the candidate, his authorized representative or party chairman.

Sec. 11-211 **Penalties; relief.** Any person or corporation knowingly violating any provision of this subpart shall, unless otherwise expressly stated, be punishable in the manner prescribed as follows:

(a) If a natural person, he shall be guilty of a petty misdemeanor.

(b) If the person is a corporation, organization, or association, it shall be punished by a fine not exceeding $1,000.

(c) Whenever a corporation, organization, or association violates this subpart, the violation shall be deemed to be also that of the individual directors, officers, or agents of the corporation, organization, or association, who have knowingly authorized, ordered, or done any of the acts constituting such violation.

(d) Any registered voter may sue for injunctive relief to compel compliance with this subpart.

Sec. 11-212 **Prosecution.** (a) For purposes of prosecution for violations of this subpart, the offices of the attorney general and the prosecuting attorney of the respective counties shall be deemed to have concurrent jurisdiction to be exercised as follows:

(1) No prosecution shall be commenced without the prior written request of the commission or upon the issuance of an appropriate order of the court;

(2) In the case of statewide offices, parties or issues, the attorney general or the prosecuting attorney for the City and County of Honolulu shall prosecute any violation.

(3) In the case of all other offices, parties or issues, the attorney general or the prosecuting attorney for the respective county shall prosecute any violation.

(4) In the commission's choice of prosecuting agency, it shall be guided by whether there will be any conflicting interest between such agency and its appointive authority.

(b) The court will give priority to the expeditious processing of suits under this section.

(c) Prosecution for violation of any provision of this subpart shall not be commenced after one year has elapsed from the date of the violation."

SECTION 2. **Severability.** If any provision of this chapter, or the application thereof to any person or circumstance, is held invalid, the validity of such provision to other persons and circumstances shall not be affected thereby.

SECTION 3. This Act shall take effect on January 1, 1974.

(Approved May 24, 1973.)

**ADDENDUM C-10**

ACT 146                                      H.B. NO. 327

A Bill for an Act Relating to Campaign Contributions and Expenditures.

*Be it Enacted by the Legislature of the State of Hawaii:*

SECTION 1. Subpart B, Election Campaign Contributions and Expenditures, of chapter 11, part XII, Hawaii Revised Statutes, is amended in the following respects:

(a) Section 11-191, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-191 Definitions.** When used in this subpart:

(1) "Advertisement" means:

    (A) Any communication exclusive of bumper stickers or other sundry items paid for by or on behalf of a candidate which identifies a candidate directly or by implication or which advocates or supports the nomination for election, or election, of the candidate or advocates or supports his defeat; and

    (B) Any communication exclusive of bumper stickers or other sundry items paid for by or on behalf of a committee which identifies an issue or question which appears or is reasonably certain to appear on the ballot at the next applicable election or which advocates or supports the passage or defeat of the question or issue.

(2) "Campaign treasurer" means a person appointed under section 11-198, and, unless expressly indicated otherwise, includes deputy campaign treasurers.

(3) "Candidate" means an individual who seeks nomination for election, or election, to office. An individual is a candidate if he does any of the following:

    (A) Files nomination papers for an office for himself with the county clerk's office or with the chief election officer's office, whichever is applicable; or

    (B) Receives contributions in an aggregate amount of more than $100, or makes or incurs any expenditure to bring about his nomination for election, or election, to office provided that in no event shall a person be deemed a candidate by reason of the provisions set forth in subparagraphs (B) and (C) of this paragraph prior to January 1 of the year that person runs for election; or

    (C) Gives his consent for any other person to receive contributions or make expenditures to aid his nomination for election, or election, to office.

(4) "Commission" means the campaign spending commission.

(5) "Committee" means:

    (A) Any person who accepts a contribution or makes an expenditure for or against any candidate, person seeking nomination for election, or election, to office, or party, with or without the authorization of the candidate, person, or party, or who accepts a con-

288

tribution or makes an expenditure for or against any question or issue which appears or is reasonably certain to appear on the ballot at the next applicable election;

(B) Any person who raises or holds money or anything of value and who subsequently contributes the money or thing of value to, or makes expenditures in behalf of a candidate, person, or party; provided that the term "committee" shall not include any person making a contribution or expenditure of his own funds or thing of value, which he originally acquired for his own use and not for the purpose of evading any provision of this subpart;

(6) "Contribution" means:

(A) A gift, subscription, loan, advance, deposit of money or anything of value, or cancellation of a debt or legal obligation and includes the purchase of tickets to testimonial or fund raising affairs, for the purpose of:

   (i) Influencing the nomination for election, or election, of any person to office; or

   (ii) Influencing the outcome of any question or issue which appears or is reasonably certain to appear on the ballot at the next applicable election; or

   (iii) Use by any party for the purposes set out in clause (i) or (ii) above;

(B) The payment, by any person other than a candidate or committee, of compensation for the personal services of another person which are rendered to the candidate or committee without charge or at an unreasonably low charge; or

(C) A contract, promise, or agreement to make a contribution; provided that notwithstanding subparagraphs (A), (B), and (C) of this paragraph, the term shall not include services or portions thereof voluntarily provided without reasonable compensation by individuals to or in behalf of a candidate or committee; or

(D) Notwithstanding the above, a candidate's expenditure of his own funds in the pursuit of his campaign shall not be a contribution for the purpose of this subpart.

(7) "Election" means any election for office or for determining a question or issue provided by law or ordinance.

(8) "Expenditure" means:

(A) Any purchase or transfer of money or anything of value, or promise or agreement to purchase or transfer money or anything of value, or payment incurred or made, or the use or consumption of a non-monetary contribution for the purpose of:

   (i) Influencing the nomination for election, or election, of any person seeking nomination for election, or election, to office whether or not the person has filed his nomination papers; or

   (ii) Influencing the outcome of any question or issue which appears or is reasonably certain to appear on the ballot at the

next applicable election; or

   (iii) Use by any party for the purposes set out in clause (i) or (ii) above;

  (B) The payment, by any person other than a candidate or committee, of compensation for the personal services of another person which are rendered to the candidate or committee for any of the purposes mentioned in clause (i), (ii), or (iii) of this paragraph; or

  (C) The expenditure by a candidate of his own funds for the purposes set out in clauses (i), (ii), and (iii) above.

 (9) "House bulletin" means a communication sponsored by any person in the regular course of publication for limited distribution primarily to its employees or members.

(10) "Newspaper" means a publication of general distribution in the State issued once or more per month which is written and published in the State.

(11) "Office" means any elective public or constitutional office excluding federal elective offices.

(12) "Person" means an individual, partnership, committee, association, corporation, or labor union and its auxiliary committees.

(b) Section 11-192, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-192 Campaign spending commission.** There is established a campaign spending commission, consisting of five members appointed by the governor as follows:

The judicial council shall select a panel of ten persons, consisting of five persons from the membership of each of the two political parties for which the greatest number of voters cast party ballots in the last preceding primary election. From this panel the governor shall appoint two members from each political party and a chairman. Any vacancies in the commission shall be filled by the governor with a member from the panel; provided the replacement member is from the same political party as the member being replaced; and provided further that the party is then one of the two political parties as determined above; otherwise, the replacement member shall be from one of the two parties not represented on the commission.

The judicial council shall meet and expeditiously select additional persons for the panel whenever the number of the eligible panel members falls below five, or whenever a political party, being one of the two parties for which the greatest number of voters cast party ballots in the last primary election, is not represented. In either event, the judicial council shall select additional panel members so that there will be five from each of the two parties. A person shall no longer remain eligible to be on the panel when he is not from one of the two parties for which the greater number of voters cast party ballots in the last preceding primary election. The requirement of being from the same party is not applicable to the replacement chairman.

Notwithstanding section 26-34, these appointments shall not be subject to senatorial confirmation. The term of the members shall be four years, ex-

290

cept that the terms of the initial members shall be two years for two members, three years for two other members, and four years for the chairman.

The members of the commission shall serve without compensation but they shall be reimbursed for reasonable expenses, including travel expenses, incurred in the discharge of their duties. For administrative purposes the commission shall be in the office of the lieutenant governor."

(c) Section 11-193, Hawaii Revised Statutes, is repealed.

(d) Section 11-194, Hawaii Revised Statutes, is amended to read as follows:

**"Sec. 11-194 Duties of the chief election officer; commission.**

(a) The chief election officer's principal duty is to regulate the election process, and under this subpart his duties are:

(1) To develop and adopt reporting forms required by this subpart;

(2) To adopt and publish a manual for all candidates and committees, describing the requirements of this subpart B, including uniform and simple methods of recordkeeping;

(3) To preserve all reports required by this subpart for at least five years from the date of receipt;

(4) To permit the inspection, copying, or duplicating of any report required by this subpart pursuant to rules adopted by the commission: provided that no information or copies from the reports shall be sold or used by any person for the purpose of soliciting contributions or for any commercial purpose.

(b) The commission's principal duty is to supervise campaign contributions and expenditures, and under this subpart its duties are:

(1) To ascertain whether any candidate, committee, or party has failed to file a report required by this subpart or has filed a substantially defective or deficient report, and to notify the persons that their failure to file or filing of a substantially defective or deficient report must be corrected and explained, the correction or explanation to be submitted in writing to the commission within a reasonable time after the notification of the failure to file or deficiency. The commission shall make available a list of candidates, committees, and parties who have failed to correct their deficiency within the time allowed by the commission. Failure to respond to the notification shall constitute a violation of this subpart.

(2) To hold public hearings;

(3) To investigate and hold hearings for receiving evidence of any violations;

(4) To adopt a code of fair campaign practices;

(5) To establish rules pursuant to chapter 91;

(6) To request the initiation of prosecution for the violation of this subpart pursuant to section 11-213;

(7) To suggest accounting methods for candidates, parties, and committees, as the commission may deem advisable, in connection with reports and records required by this subpart; and

(8) To employ or contract, without regard to chapters 76 and 77, and a

pleasure, to dismiss persons it finds necessary for the performance of its functions and to fix their compensation."

(e) Section 11-195, Hawaii Revised Statutes, is repealed.

(f) Section 11-196, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-195 Filing of reports, generally.** (a) All reports required to be filed under this subpart by a candidate or committees supporting a candidate with his consent shall be certified by the candidate. All reports required to be filed under this subpart by a party or committee which supports more than one candidate shall be certified by the party or committee treasurer, or the deputy treasurer, or the chairman thereof, in that order. All reports required to be filed shall be open for public inspection.

(b) All reports required by this subpart shall be filed as follows:

The original and one copy shall be filed at the commission office. In the case of counties having less than 100,000 voters, the filing shall be accomplished by filing an original and two copies of the required report with the clerk of the county in which the candidate resides. The clerk shall then immediately mail the necessary copies to the commission by certified mail.

(c) The commission or county clerk shall give each person filing a report a receipt showing the type of report and date and time of filing.

(d) The reports filed with the county clerk's office shall be preserved by that office for five years.

(e) All reports required to be filed shall at all times be available to the chief election officer."

(g) Subpart B of chapter 11, part XII, Hawaii Revised Statutes, is amended by adding a new section to be designated and to read as follows:

"**Sec. 11-196 Registration.** Each candidate, committee, and party shall file an organizational report not later than 4:30 p.m. on the earliest of the following applicable days:

(1) On or before the day of filing for nomination or election;

(2) At least forty-five days before the primary or special primary election;

(3) At least forty-five days before the general, special general, or special election; or

(4) By the tenth day after:

    (A) Receiving any contributions in an aggregate amount of more than $100 or

    (B) Making or incurring any expenditure which is reportable under section 11-207 or 11-208."

(h) Section 11-197, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-197 Organizational reports.** (a) The organizational report shall include:

(1) The name, address, office sought when known, and party affiliation of each candidate or individual whom the committee or party is supporting and the name and address of the committee or party;

(2) The names and addresses of the campaign treasurer and deputies;

292

(3) The names and addresses of the campaign chairman and deputy campaign chairman;

(4) A list of all banks, safety deposit boxes, or other depositories used and the applicable account number;

(5) The amount and date of deposit of the contribution and the name and address of each individual donor who has contributed an aggregate amount of more than $100 since the last election applicable to the office being sought or in which the issue or question was on the ballot; provided that this paragraph shall not apply to contributions made prior to January 1, 1974; and

(6) In the case of a report by a committee or party supporting or opposing a ballot question or issue, all of the information described in paragraphs (2) to (5) and a description of the question or issue.

(b) Any change in information submitted in the organizational report, other than paragraph (5) above, shall be reported not later than 4:30 p.m. on the tenth calendar day after the change or when the candidate, committee, party, or campaign treasurer becomes aware of the change."

(i) Subpart B of chapter 11, part XII, Hawaii Revised Statutes, is amended by adding a new section to be designated and to read as follows:

"**Sec. 11-197.1 Designated central committee.** Each candidate for a statewide or county office who is supported by more than one committee shall designate a central committee which shall be responsible for aggregating the total contributions and expenditures of all committees directly associated with the candidate and for filing composite reports indicating this information on the dates set by sections 11-207 and 11-208."

(j) Section 11-198, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-198 Campaign treasurer.** (a) Every committee, party, and candidate shall appoint a campaign treasurer on or before the day for filing an organizational report. Up to five deputy campaign treasurers may be appointed. A candidate may appoint himself as campaign treasurer.

(b) A campaign treasurer may be removed at any time. In case of death, resignation, or removal of the campaign treasurer, the committee, party, or candidate shall promptly appoint a successor. During the period the office of campaign treasurer is vacant, the candidate, committee chairman, or party chairman, whichever is applicable, shall serve as campaign treasurer.

(c) Each campaign treasurer shall be authorized to receive contributions or make expenditures on behalf of the candidate, committee, or party appointing him."

(k) Section 11-199, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-199 Campaign contributions, generally.** (a) All monetary contributions shall be promptly deposited in a financial depository duly authorized to do business in the State of Hawaii, such as a bank, savings and loan institution, industrial loan company, or similar financial institution, in the name of the candidate, committee, or party, whichever is applicable.

(b) Each candidate, committee, or party shall establish and maintain an

# 1975 Haw. Sess. L. Act 146

itemized record showing the amount of each monetary contribution, the description and value of each non-monetary contribution, and the name and address of each donor making a contribution of more than $10 in value.

(c) Each candidate and campaign treasurer shall report the amount and date of deposit of each contribution and the name and address of each donor who makes a contribution or contributions whose aggregate value is more than $100.

(d) No candidate, committee, or party may accept a contribution of more than $250 in cash from a single person without issuing a receipt to the donor and keeping a record of the transaction.

(e) Each committee and party shall disclose the original source of all earmarked funds, the ultimate recipient of the earmarked funds, and the fact that the funds are earmarked.

(f) For the purposes of this section, "earmarked funds" means contributions received by a committee or party on the condition that the funds be contributed to or expended only on certain candidates, issues, or questions."

(l) Section 11-200, Hawaii Revised Statutes, is amended to read as follows:

**"Sec. 11-200 Campaign contributions, restrictions against transfer.** (a) A candidate, campaign treasurer, or committee shall not receive any contributions, make any expenditures, or receive or make any transfer of money or anything of value:

(1) For any purpose other than those directly related:
   (A) In the case of the candidate, to his own campaign, or
   (B) In the case of a campaign treasurer or committee, to the campaign of the candidate, question, or issue with which they are directly associated; or

(2) To support the campaigns of candidates other than the candidate, for whom the funds were collected or with whom the campaign treasurer or committee is directly associated; or

(3) To campaign against any other candidate not directly opposing the candidate for whom the funds were collected or with whom the campaign treasurer or committee is directly associated;

(4) Provided that a candidate, campaign treasurer, or committee may purchase from its campaign fund not more than two tickets for each testimonial or fund raising affair as defined in sections 11-203 and 11-203.1, respectively, of this subpart held by another candidate, committee, or party.

(b) This section shall not be construed to prohibit a party from supporting more than one candidate, or to prohibit joint expenditure by two or more candidates seeking election to multiple offices from the same district whether the expenditures are equally or unequally incurred among such candidates; provided that the allocation of expenditures between the candidates is based upon reasonable objective standards. The party or candidates, whichever is applicable, shall make the initial allocation between candidates. If the allocation is disallowed by the commission, and the allocation of expenditures is not corrected as prescribed by the commission within the time allowed by the com-

294

mission, then the amount of the allocation found to be unreasonable by the commission shall be presumed to be a transfer of funds in violation of this section."

(m) Section 11-201, Hawaii Revised Statutes, is repealed.

(n) Section 11-202, Hawaii Revised Statutes, is amended to read as follows:

**"Sec. 11-202 Anonymous contributions; unlawful.** (a) No person shall make a contribution of his own money or property or money of another person to any candidate, party, or committee in connection with a nomination for election, or election, anonymously; nor shall any candidate, party, or committee knowingly receive, accept, or retain the contribution or enter or cause the same to be entered in its accounts as an anonymous contribution or in another name than that of the person by whom it was actually furnished.

(b) Any anonymous contribution received by a candidate, party, or committee shall not be used or expended, but shall be returned to the donor. If the donor cannot be identified, the contribution shall escheat to the State in the case of a state election and to the county in the case of a county election.

(c) This section shall not apply to amounts that aggregate less than $250 when obtained through multiple contributions made by ten or more persons at the same event. Each such aggregate contribution shall be reported accompanied by a description of the means, method, place, and date of receipt."

(o) Subpart B of chapter 11, part XII, Hawaii Revised Statutes, is amended by adding a new section to be designated and to read as follows:

**"Sec. 11-202.1 False name.** No person shall make a contribution of his own money or property or money or property of another person to any candidate, party, or committee in connection with a nomination for election, or election, in any other name than the name of the person owning the money or who supplied the money or property.

All contributions made in the name of a person other than the true or established name of the actual owner of the money or property shall escheat to the State in the case of a state election or to the county in the case of a county election."

(p) Section 11-203, Hawaii Revised Statutes, is amended to read as follows:

**"Sec. 11-203 Testimonial affairs and coffee hours.** (a) As used in this section:

(1) "Testimonial affair" means any function held for the benefit of a person and designed to raise funds for political purposes for which the total cost for attending the affair is more than $15 per person; and

(2) "Coffee hour" means any function held for the benefit of a person for a political purpose but not designed to raise funds for a political purpose and for which there is no charge for attending.

(b) No person or a committee directly associated with the person shall hold more than one testimonial affair until after an election in which that person was either elected or defeated unless that person seeks election to state-

**ADDENDUM D-8**

wide office, in which case he or his directly associated committee may hold no more than one testimonial affair in each county. An additional testimonial affair may be held within six months after a general, special general, or special election, in the case of a candidate or committee directly associated with that person having a deficit. No testimonial affair may be held unless a notice of intent to hold the affair is filed by the person in charge of the affair with the commission prior to the date of the affair setting forth the name and address of the person in charge, the charge per person, the date, hour, and place of the affair and whether contributions will be solicited at the affair and method thereof. Testimonial affairs sponsored by a party for a political purpose for the general benefit of the party are exempt from the limits of this subsection.

(c) The following expenditures incident to a testimonial affair or coffee hour held during the times specified in section 11-206 shall not be considered expenditures within the limitations set by that section; provided that the portion of the expenditures exceeding $25 for the office of state representative and $50 for all other offices for each coffee hour shall not be exempt from the limitations of section 11-206:

(1) The cost of food and beverages reasonably purchased or contributed for the affair;
(2) Rent and utilities for the premises where the affair is held;
(3) The cost of printing tickets and invitations for the affair;
(4) The cost of postage, envelopes, and mailing service for the invitations to the affair, replies to the invitations and tickets for the affair, provided that no political literature other than the invitations and tickets shall be included in the mail;
(5) The amount paid for guest speakers and entertainment; and
(6) The cost of plates, cups, napkins, eating utensils, decorations, catering services, leis, and other reasonable expenses actually expended and necessary for these affairs.

(d) The number of functions held for the benefit of a person designed to raise funds for political purposes for which the total cost for attending the affair is $15 or less per person shall not be limited except:

(1) For statewide offices, no person may hold more than two such functions during the times specified in section 11-206 for which the expenditures listed in subsection (c) are exempt from the limitations set by section 11-206 in each county.
(2) For all other offices, a person may hold either two such functions or one testimonial affair in the district during the times specified in section 11-206 for which the expenditures listed in subsection (c) are exempt from the limitations set by section 11-206."

(q) Subpart B of chapter 11, part XII, Hawaii Revised Statutes, is amended by adding a new section to be designated and to read as follows:

"Sec. 11-203.1 Cost of fund raising. The cost of food or other items purchased or contributed for sale, such as a huli huli chicken sale, sweet bread sale, plant sale, or other similar type of fund raising activity as may be approved by the commission for the purpose of this section, by a candidate, committee, or party for a political fund raising purpose and the reasonable ex-

penses in connection with the sale, shall be considered reportable expenditures not chargeable against the limitations set by section 11-206."

(r) Section 11-204, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-204 Campaign expenditures: authority required.** (a) A candidate may draw on the campaign treasurer for his political expenditures for postage, telegrams, telephone calls, stationery, expressage, travel, meals, and lodging. The candidate shall make a detailed accounting of his political expenditures and the accounting shall be made a part of the reports required in sections 11-207 and 11-208. The account shall state the amount and purpose of the expenditures and other information required by the commission and shall be signed and certified by the campaign treasurer.

(b) No funds shall be withdrawn or paid from a campaign depository except upon the written authorization of the campaign treasurer.

(c) No expenditure by or on behalf of a candidate shall be made or incurred by any committee without specific written authorization of the candidate or his authorized representative. Every expenditure so authorized and made or incurred shall be attributed to the candidate for whom the expenditure is made for the purpose of imposing the expenditure limitations imposed by section 11-206."

(s) Section 11-205, Hawaii Revised Statutes, is repealed.

(t) Section 11-206, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-206 Campaign expenditures: limits as to amounts.** (a) The total expenditures for candidates, inclusive of all expenditures made or incurred by the candidate himself and all campaign treasurers and committees in his behalf, shall not exceed in the aggregate the following: the amounts expressed respectively as the product of the number of voters in the last preceding general election registered to vote for the office or the number of voters who were registered and would have been entitled to vote for the office had it been on the ballot in the last preceding general election and the rates herein indicated, taking into consideration any intervening reapportionment; or the sum of $2,000 for each period, whichever is greater:

(1) From January 1 of the year of a general election through the day of the primary election, or nine months prior to a special primary or special election through the day of special primary or special election:

(A) For the office of governor—50 cents;

(B) For the office of lieutenant governor—40 cents;

(C) For the offices of mayors and prosecuting attorneys—40 cents

(D) For the offices of state senators and county council members—25 cents;

(E) For the offices of state representatives—25 cents;

(F) For the office of school board and all other offices—12.5 cents; and

(2) From the day after a primary or special primary election through the day of the general or special general election:

(A) For the office of governor—50 cents;

(B) For the office of lieutenant governor—25 cents;

(C) For the offices of mayors and prosecuting attorneys—40 cents;

(D) For the offices of state senators and county council members—25 cents;

(E) For the offices of state representatives—25 cents;

(F) For the office of school board and all other offices—12.5 cents; and

(3) In no event shall any portion of the amount allowable under subsections (a) (1) and (a) (2) be shifted from one period to another.

(b) From January 1 of the year of a general election, special general election, or special election through the day of the general, special general, or special election, the total expenditures for committees supporting or opposing ballot questions or issues shall not exceed in the aggregate the amount expressed as the product of the number of voters in the last preceding general election registered to vote in the applicable jurisdiction and the rate of 25 cents.

(c) The expenditure limits in this section shall be increased for each year beginning with 1975 by the percentage, if any, by which the Consumer Price Index for the preceding twelve months increased over the index for the year 1973.

(d) If any candidate for one office withdraws from his campaign for that office and becomes a candidate for a new office the amounts expended on the campaign for the first office shall be applied toward the expenditure limits applicable to the new office. If the amounts already expended in seeking the first office exceed the expenditure limit for the new office, the candidate shall not incur further expenses, however, the excess prior expenditure shall not be considered a violation of this section.

(e) For the purposes of this section, an expenditure shall be deemed to be made or incurred when the services are rendered or the product is delivered. Services rendered or products delivered for use during a time period covered by this section shall be deemed delivered or rendered during the period or periods of use, provided that these expenditures may be reasonably allocated between periods in accordance with the time the services or products are actually used."

(u) Subpart B of chapter 11, part XII, Hawaii Revised Statutes, is amended by adding a new section to be designated and to read as follows:

"Sec. 11-206.1 House bulletins. The costs of preparing, printing, and circulating house bulletins and the writings, drawings, and photographs contained therein, except for paid political advertisements, shall be exempt from the provisions of this subpart."

(v) Section 11-207, Hawaii Revised Statutes, is amended to read as follows:

"Sec. 11-207 Preliminary reports. (a) Each candidate, authorized person in the case of a party, or campaign treasurer in the case of a committee shall file a preliminary report with the commission on forms provided by the commission not later than 4:30 p.m. of the tenth calendar day prior to each election. The report shall be certified pursuant to section 11-195 and shall con-

298

tain the following information which is current through the fifteenth calendar day prior to the election:

(1) The aggregate sum of all contributions received;

(2) The amount and date of deposit of the contribution and the name and address of each donor who contributes an aggregate of more than $100;

(3) All expenditures made, incurred, or authorized by or for a candidate including the name and address of each payee and the amount, date, and purpose of each expenditure; and

(4) A current statement of the balance on hand or deficit.

(b) Notwithstanding this section, a candidate or committee which makes expenditures of $500 or less may file a short form report with the commission in lieu of the reports required by this section and section 11-208."

(w) Section 11-208, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-208 Final and supplemental reports.** (a) Each candidate, whether or not successful in a primary or special primary election, authorized person in the case of a party, or campaign treasurer in the case of a committee directly associated with a candidate, shall file a final primary report not later than 4:30 p.m. on the twentieth day after the primary or special primary election certified pursuant to section 11-195. The report shall include:

(1) A statement of the total contributions received;

(2) The amount and date of deposit of the contribution and the name and address of each donor who contributes an aggregate of more than $100;

(3) A statement of all expenditures made or incurred by or for a candidate including the name of each payee and the amount, date, and purpose of each expenditure; and

(4) A statement of the balance on hand or deficit.

(b) Each candidate, authorized person in the case of a party, or campaign treasurer in the case of a committee shall file a final general report with the commission not later than 4:30 p.m. on the twentieth day after a general, special general, or special election certified pursuant to section 11-195 and reporting all items prescribed in subsection (a). A candidate who is unsuccessful in a primary or special primary election need not file a final general report.

(c) Deficit. In the event of a deficit, the candidate, authorized person in the case of a party, or campaign treasurer in the case of a committee shall, every three months until the deficit is eliminated, file supplemental reports reporting all items prescribed in subsection (a). The first report shall be due not later than 4:30 p.m. on the fifth day after the last day of the election year.

(d) Surplus. In the event of a surplus, the candidate, authorized person in the case of a party, or campaign treasurer in the case of a committee shall:

(1) Maintain the cash surplus in a financial depository; and

(2) Every six months, until he becomes a candidate again, file supplemental reports reporting all items prescribed in subsection (a).

The first report shall be due not later than 4:30 p.m. on the fifth day after the last day of the election year.

(e) A candidate, party, or committee who receives no contributions or makes no expenditures shall nevertheless file preliminary, final, and supplemental reports as required by law."

(x) Section 11-209, Hawaii Revised Statutes, is amended to read as follows:

**"Sec. 11-209 Disposition of funds.** (a) All candidates who withdraw or cease to be candidates or committees directly associated with these candidates, individuals who receive contributions but fail to file for nomination, or committees or parties which discontinue their activities covered in this subpart, shall return any residual contributions proportionately to the donors if their identities are known. This subsection does not apply to elected officials or candidates who failed to be nominated or elected.

(b) If no donors are found, the residual contributions shall be contributed to the campaign fund of any candidate, or to any party, charity, or non-profit organization or escheated to the State in the case of state offices or to the respective county in the case of county offices.

(c) Upon disposition, the candidate or campaign treasurer shall file a report with the commission reporting the amounts distributed under this section and the manner of disposition."

(y) Section 11-210, Hawaii Revised Statutes, is amended to read as follows:

**"Sec. 11-210 Advertising.** (a) No person shall cause or submit any advertisement in support for a candidate or against a candidate's opponent, to be published, broadcast, televised or otherwise circulated and distributed except under the following conditions:

(1) The advertisement shall contain a notice in a prominent location that the literature or advertisement is published, broadcast, televised, or circulated with the approval and authority of the candidate, provided that in the event that the literature or advertisement is paid for by a candidate or committee directly associated with a candidate, the notice of approval and authority need not be included; or

(2) The advertisement shall contain a notice in a prominent location that the literature or advertisement is published, broadcast, televised, or circulated without the approval and authority of the candidate.

(b) All advertisement mentioned in subsection (a) above shall contain the name and address of the candidate, committee, or party paying for same."

(z) Subpart B of chapter 11, part XII, Hawaii Revised Statutes, is amended by adding a new section to be designated and to read as follows:

**"Sec. 11-211 Complaints, investigation, and notice.** (a) Complaints of violations of this subpart against any person shall be filed with the commission. The complaint shall be in writing and shall be signed under oath by the complainant. Complaints initiated by the commission shall be in writing and signed by the chairman.

(b) The commission shall give notice of receipt of the complaint together with a copy of the complaint to the person cited and shall afford him an opportunity to explain or otherwise respond to the complaint. The commission may also cause an investigation to be made of the complaint.

300

(c) Upon hearing the response of the person cited, if he elects to respond to the complaint, and upon completion of any investigation, the commission shall make a prompt determination as to whether probable cause exists that a violation has been committed.

(1) Any person who appears before the commission shall have all of the rights, privileges, and responsibilities of a witness appearing before the courts of this State. All witnesses summoned before the commission shall receive reimbursement as paid in like circumstances in the courts of this State. Any person whose name is mentioned during a proceeding of the commission and who may be adversely affected thereby, may appear personally before the commission on his own behalf or file a written statement for incorporation into the record of the proceeding.

(2) The commission shall cause a record to be made of all proceedings pursuant to this subsection. At the conclusion of proceedings concerning an alleged violation, the commission shall immediately begin deliberations on the evidence and then proceed to determine by majority vote of the members whether probable cause exists that a violation has been committed.

(d) Until the determination of probable cause by the commission, all proceedings, including the filing of the complaint, investigation, and hearing shall be confidential unless the person complained of requests an open session. In the event the commission shall determine that probable cause does not exist, then the complaint shall be dismissed and the entire records of the proceedings shall be kept confidential at the option of the person complained of.

(e) The commission shall give written notice to the person complained of and to the complainant as to whether probable cause of a violation exists or whether the complaint has been dismissed.

(f) In the event a determination is made that probable cause of a wilful violation exists, the commission shall promptly advise the chief election officer of its findings and also the applicable clerk of the state legislature in the case of a state office, or the clerk of the respective county legislative body in the case of a county office. In the event a determination is made that probable cause of an unintentional violation exists, the commission shall issue a confidential order that may require the violator to:

(1) Temporarily cease and desist violation of this subpart or

(2) File any report, statement, or other information as required by this subpart.

(g) The commission may only initiate prosecution as provided in section 11-213 when it finds that probable cause of a wilful violation exists."

(aa) Section 11-211, Hawaii Revised Statutes, is amended to read as follows:

"Sec. 11-212 Penalties; relief. (a) Any person knowingly violating any provision of this subpart shall, unless otherwise expressly stated, be punishable in the manner prescribed as follows:

(1) If a natural person, he shall be guilty of a petty misdemeanor and shall be subject to the penalties specified therefor; or

(2) If a corporation, organization, or association, it shall be punished by a fine not exceeding $1,000; and

(3) Whenever a corporation, organization, or association violates this subpart, the violation shall be deemed to be also that of the individual directors, officers, or agents of the corporation, organization, or association, who have knowingly authorized, ordered, or done any of the acts constituting the violation.

(b) Any person may sue for injunctive relief to compel compliance with this subpart."

(bb) Section 11-212, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-213 Prosecution.** (a) For purposes of prosecution for violations of this subpart, the offices of the attorney general and the prosecuting attorney of the respective counties shall be deemed to have concurrent jurisdiction to be exercised as follows:

(1) Prosecution shall commence with a written request from the commission or upon the issuance of an order of the court;

(2) In the case of state offices, parties, or issues, the attorney general or the prosecuting attorney for the city and county of Honolulu shall prosecute any violation; and

(3) In the case of all other offices, parties, or issues, the attorney general or the prosecuting attorney for the respective county shall prosecute any violation.

In the commission's choice of prosecuting agency, it shall be guided by whether there will be any conflicting interest between the agency and its appointive authority.

(b) The court shall give priority to the expeditious processing of suits under this section.

(c) Prosecuting for violation of any provision of this subpart shall not be commenced after one year has elapsed from the date of the violation or date of filing of the report covering the period in which the violation occurred, whichever is later."

SECTION 2. Chapter 19, Hawaii Revised Statutes, is amended in the following respects:

(a) Section 19-5, Hawaii Revised Statutes, is repealed.

(b) Section 19-6, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 19-6 Misdemeanors.** The following persons shall be guilty of a misdemeanor:

(1) Any person who offers any bribe or makes any promise of gain, or with knowledge of the same permits any person to offer any bribe or make any promise of gain for his benefit, to any voter to induce him to sign a nomination paper, and any person who accepts any bribe or promise of gain of any kind as consideration for signing the same, whether the bribe or promise of gain be offered or accepted before or after the signing.

302

(2) Any person who wilfully tears down or destroys or defaces any election proclamation or any poster or notice or list of voters or card of instructions or specimen ballot, issued or posted by authority of law.

(3) Any person printing or duplicating or causing to be printed or duplicated any ballot, conforming as to the size, weight, shape, thickness, or color, to the official ballot so that it could be cast or counted as an official ballot in an election.

(4) Every person who is disorderly or creates a disturbance whereby any meeting of the precinct officials or the board of registration of voters during an election is disturbed or interfered with; or whereby any person who intends to be lawfully present at any meeting or election is prevented from attending; or who causes any disturbance at any election; and every person assisting or aiding or abetting any disturbance.

(5) Every person who, either in person or through another, in any manner breaks up or prevents, or endeavors to break up or prevent, the holding of any meeting of the board of registration of voters, or in any manner breaks up or prevents, or endeavors to break up or prevent, the holding of any election.

(6) Any person, other than those designated by section 11-132, who remains or loiters within the area set aside for voting as set forth in section 11-132 during the time appointed for voting.

(7) Any person, including candidates carrying on any campaign activities within the area described in section 11-132 on the day on which an election is being held for the purpose of influencing votes. Campaign activities shall include but not be restricted to the following:

    (A) The distribution, circulation, posting, or staking of campaign cards, pamphlets, and other literature;

    (B) The use of public address systems and other public communication media;

    (C) The use of motor caravans or parades;

    (D) The use of entertainment troupes or the free distribution of goods and services.

The "day of election" as used in this paragraph shall commence at midnight of the day before the polls are opened and shall end with the closing of the polls.

(8) Any person who opens a reply envelope containing an absentee ballot voted under chapter 15 or a mailing ballot voted under chapter 15A other than those authorized to do so under chapters 15 and 15A.

(9) Any voter who makes any false statement in any affidavit required for absentee voting under chapter 15 or for voting by mailing ballots under chapter 15A.

(10) Any unauthorized person found in possession of any voting machine or keys thereof.

(11) Every person who willfully violates or fails to obey any of the provisions of law, punishment for which is not otherwise in this chapter specially provided for.

(12) Any person who, knowing that he is not entitled to register or to vote, registers or votes; and any person taking any oath in this title prescribed or authorized to be administered and wilfully making oath to any false statement of fact, or wilfully making a false answer to any question put to him thereunder."

(c) Section 19-8, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 19-8 Other offenses; penalties.** Any violation of this section shall result in a fine of not less than $50 nor more than $300 on any person, business, or corporation who refuses an employee the privileges conferred by section 11-95, or subjects an employee to a penalty or deduction of wages because of the exercise of the privileges, or who directly or indirectly violates section 11-95."

SECTION 3. Severability. If any provision of this Act, or the application thereof to any person or circumstance, is held invalid, the validity of the provision to other persons and circumstances shall not be affected thereby and further, the invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

SECTION 4. Statutory material to be repealed is bracketed. New material is underscored. In printing this Act, the revisor of statutes need not include the brackets, the bracketed material, or the underscoring.*

SECTION 5. This Act shall take effect upon its approval.
(Approved May 27, 1975.)

## ACT 147

H.B. NO. 946

A Bill for an Act Relating to Child Abuse and Neglect.

*Be It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. Section 350-1, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 350-1 Reports.** Any doctor, which for the purposes of this chapter means any person licensed by the State to render services in medicine, osteopathy, dentistry, or any of the other healing arts, examining, attending, or treating a minor, or any registered nurse, school teacher, social worker, or coroner acting in his official capacity, having reason to believe that such minor has had injury inflicted upon him as a result of abuse or neglect, shall promptly report the matter orally to the department of social services and housing; provided that when examination, attendance, or treatment with respect to the minor is pursuant to the performance of services as a member of the staff of a hospital or similar facility, the staff member shall immediately notify the person in charge of the medical facility, or his designated delegate,

---

*Edited accordingly.

ACT 126          H.B. NO. 2722-76

A Bill for an Act Relating to the Hawaii Employment Security Law.

*Be It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. Section 383-98(d), Hawaii Revised Statutes, is amended to read:

"(d) In accordance with section 383-91(b), the director may appoint one or more substitute referees to serve (1) during any temporary absence of a referee from his duties, (2) in the event a referee is disqualified to hear any appeal, (3) in the event of vacancy in the office of referee, or (4) if, for any reason, the director finds that the services of substitute referees are necessary for prompt and expeditious handling of appeals. Any substitute referee, while so serving, shall have all the powers and duties of a referee and shall receive compensation for his services at the daily rate provided at step G of the salary range of full time referees under the classified service for each day's actual attendance upon his duties and shall also be paid such reasonable traveling and other expenses as may be incurred in the discharge of his duties, the compensation and expenses to be paid out of the employment security administration fund. Substitute referees shall not be entitled to longevity step increases. In case any appeal shall be referred to a substitute referee for hearing, the substitute referee shall retain jurisdiction of the appeal so referred to him, notwithstanding that the regular referee may become available unless the reference of the appeal to the substitute referee shall be revoked by the director. The final decisions of a referee and the principles of law declared by him in arriving at such decisions, unless expressly or impliedly overruled by a later decision of a court of competent jurisdiction or of a referee, shall be binding upon any substitute referee in proceedings which involve similar questions of law."

SECTION 2. Statutory material to be repealed is bracketed. New material is underscored. In printing this Act, the revisor of statutes need not include the brackets, the bracketed material, or the underscoring.*

SECTION 3. This Act shall take effect upon its approval.

(Approved May 17, 1976.)

ACT 127          H.B. NO. 2782-76

A Bill for an Act Relating to Campaign Contributions and Expenditures.

*Be It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. Subpart B, Election Campaign Contributions and Expenditures, of chapter 11, part XII, Hawaii Revised Statutes, is amended in the following respects:

(a) Section 11-191, Hawaii Revised Statutes, is amended to read as follows:

---

*Edited accordingly.

**ADDENDUM E-1**

"**Sec. 11-191 Definitions.** When used in this subpart:
(1) "Advertisement" means:

(A) Any communication exclusive of bumper stickers or other sundry items paid for by or on behalf of a candidate which identifies a candidate directly or by implication or which advocates or supports the nomination for election, or election, of the candidate or advocates or supports his defeat; and

(B) Any communication exclusive of bumper stickers or other sundry items paid for by or on behalf of a committee which identifies an issue or question which appears or is reasonably certain to appear on the ballot at the next applicable election or which advocates or supports the passage or defeat of the question or issue.

(2) "Campaign treasurer" means a person appointed under section 11-198, and, unless expressly indicated otherwise, includes deputy campaign treasurers.

(3) "Candidate" means an individual who seeks nomination for election, or election, to office. An individual is a candidate if he does any of the following:

(A) Files nomination papers for an office for himself with the county clerk's office or with the chief election officer's office, whichever is applicable; or

(B) Receives contributions in an aggregate amount of more than $100, or makes or incurs any expenditure to bring about his nomination for election, or election, to office provided that in no event shall a person be deemed a candidate by reason of the provisions set forth in subparagraphs (B) and (C) of this paragraph prior to January 1 of the year that person runs for election; or

(C) Gives his consent for any other person to receive contributions or make expenditures to aid his nomination for election, or election, to office.

(4) "Commission" means the campaign spending commission.

(5) "Committee" means:

(A) Any person who accepts a contribution or makes an expenditure for or against any candidate, person seeking nomination for election, or election, to office, or party, with or without the authorization of the candidate, person, or party, or who accepts a contribution or makes an expenditure for or against any question or issue which appears or is reasonably certain to appear on the ballot at the next applicable election;

(B) Any person who raises or holds money or anything of value and who subsequently contributes the money or thing of value to, or makes expenditures in behalf of a candidate, person, or party; provided that the term "committee" shall not include any person making a contribution or expenditure of his own funds or thing of value, which he originally acquired for his own use and not for the purpose of evading any provision of this subpart;

(6) "Contribution" means:
  (A) A gift, subscription, loan, advance, deposit of money or anything of value, or cancellation of a debt or legal obligation and includes the purchase of tickets to testimonial or fund raising affairs, for the purpose of:
      (i) Influencing the nomination for election, or election, of any person to office; or
      (ii) Influencing the outcome of any question or issue which appears or is reasonably certain to appear on the ballot at the next applicable election; or
      (iii) Use by any party for the purposes set out in clause (i) or (ii) above;
  (B) The payment, by any person other than a candidate or committee, of compensation for the personal services of another person which are rendered to the candidate or committee without charge or at an unreasonably low charge for the purposes set out in clause (i), (ii), or (iii) in paragraph (A) above; or
  (C) A contract, promise, or agreement to make a contribution; provided that notwithstanding subparagraphs (A), (B), and (C) of this paragraph, the term shall not include services or portions thereof voluntarily provided without reasonable compensation by individuals to or in behalf of a candidate or committee; or
  (D) Notwithstanding the above, a candidate's expenditure of his own funds in the pursuit of his campaign shall not be a contribution for the purpose of this subpart but shall nevertheless be reportable as a campaign receipt.
(7) "Election" means any election for office or for determining a question or issue provided by law or ordinance.
(8) "Expenditure" means:
  (A) Any purchase or transfer of money or anything of value, or promise or agreement to purchase or transfer money or anything of value, or payment incurred or made, or the use or consumption of a non-monetary contribution for the purpose of:
      (i) Influencing the nomination for election, or election, of any person seeking nomination for election, or election, to office whether or not the person has filed his nomination papers; or
      (ii) Influencing the outcome of any question or issue which appears or is reasonably certain to appear on the ballot at the next applicable election; or
      (iii) Use by any party for the purposes set out in clause (i) or (ii) above;
  (B) The payment, by any other person other than a candidate or committee, of compensation for the personal services of another person which are rendered to the candidate or committee for any of the purposes mentioned in clause (i), (ii), or (iii) of this paragraph; or

(C) The expenditure by a candidate of his own funds for the purposes set out in clauses (i), (ii), and (iii) above.

(9) "House bulletin" means a communication sponsored by any person in the regular course of publication for limited distribution primarily to its employees or members.

(10) "Newspaper" means a publication of general distribution in the State issued once or more per month which is written and published in the State.

(11) "Office" means any elective public or constitutional office excluding federal elective offices.

(12) "Person" means an individual, partnership, committee, association, corporation, or labor union and its auxiliary committees."

(b) Section 11-192, Hawaii Revised Statutes, is amended to read as follows:

"Sec. 11-192 Campaign spending commission. There is established a campaign spending commission, consisting of five members appointed by the governor as follows:

The judicial council shall select a panel of ten persons, consisting of five persons from the membership of each of the two political parties for which the greatest number of voters cast party ballots in the last preceding primary election. From this panel the governor shall appoint two members from each political party and a chairman. Any vacancies in the commission shall be filled by the governor with a member from the panel or by reappointment of a member whose term has expired, subject to the limit on length of service imposed by section 26-34; provided the replacement member is from the same political party as the member being replaced; and provided further that the party is then one of the two political parties as determined above; otherwise, the replacement member shall be from one of the two parties not represented on the commission.

The judicial council shall meet and expeditiously select additional persons for the panel whenever the number of the eligible panel members falls below five, or whenever a political party, being one of the two parties for which the greatest number of voters cast party ballots in the last primary election, is not represented. In either event, the judicial council shall select additional panel members so that there will be five from each of the two parties. A person shall no longer remain eligible to be on the panel when he is not from one of the two parties for which the greater number of voters cast party ballots in the last preceding primary election. The requirement of being from the same party is not applicable to the replacement chairman.

Notwithstanding section 26-34, these appointments shall not be subject to senatorial confirmation. The term of the members shall be four years, except that the terms of the initial members shall be two years for two members, three years for two other members, and four years for the chairman.

The members of the commission shall serve without compensation but they shall be reimbursed for reasonable expenses, including travel expenses, incurred in the discharge of their duties. For administrative purposes the commission shall be in the office of the lieutenant governor."

(c) Section 11-194, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-194 Duties of the chief election officer; commission.** (a) The chief election officer's principal duty is to regulate the election process, and under this subpart his duties are:

(1) To develop and adopt reporting forms required by this subpart;

(2) To adopt and publish a manual for all candidates and committees, describing the requirements of this subpart B, including uniform and simple methods of recordkeeping;

(3) To preserve all reports required by this subpart for at least five years from the date of receipt;

(4) To permit the inspection, copying, or duplicating of any report required by this subpart pursuant to rules adopted by the commission; provided that no information or copies from the reports shall be sold or used by any person for the purpose of soliciting contributions or for any commercial purpose.

(b) The commission's principal duty is to supervise campaign contributions and expenditures, and under this subpart its duties are:

(1) To ascertain whether any candidate, committee, or party has failed to file a report required by this subpart or has filed a substantially defective or deficient report, and to notify the persons that their failure to file or filing of a substantially defective or deficient report must be corrected and explained, the correction or explanation to be submitted in writing to the commission within a reasonable time after the notification of the failure to file or deficiency. The commission shall make available a list of candidates, committees, and parties who have failed to correct their deficiency within the time allowed by the commission. Failure to respond to the notification shall constitute a violation of this subpart.

(2) To hold public hearings;

(3) To investigate and hold hearings for receiving evidence of any violations;

(4) To adopt a code of fair campaign practices;

(5) To establish rules pursuant to chapter 91;

(6) To request the initiation of prosecution for the violation of this subpart pursuant to section 11-213;

(7) To suggest accounting methods for candidates, parties, and committees, as the commission may deem advisable, in connection with reports and records required by this subpart; and

(8) To employ or contract, without regard to chapters 76 and 77 and section 103-3, and, at pleasure, to dismiss persons it finds necessary for the performance of its functions and to fix their compensation."

(d) Section 11-195, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-195 Filing of reports, generally.** (a) All reports required to be filed under this subpart by a candidate or committees supporting a candidate with his consent shall be certified by the candidate. All reports required to be filed under this subpart by a party or committee which supports more than one candidate shall be certified by the party or committee treasurer, or the deputy treasurer, or the chairman thereof, in that order. All reports required to be filed shall be open

for public inspection.

(b) All reports required by this subpart shall be filed as follows: The original and one copy shall be filed at the commission office. In the case of counties having less than 100,000 voters, the filing shall be accomplished by filing an original and two copies of the required report with either the commission or the clerk of the county in which the candidate resides. The clerk shall then immediately mail the necessary copies to the commission by certified mail.

(c) The commission or county clerk shall give each person filing a report a receipt showing the type of report and date and time of filing.

(d) The reports filed with the county clerk's office shall be preserved by that office for five years.

(e) All reports required to be filed shall at all times be available to the chief election officer."

(e) Section 11-197, Hawaii Revised Statutes, is amended to read as follows:

**"Sec. 11-197 Organizational reports.** (a) The organizational report shall include:

(1) The name, address, office sought when known, and party affiliation of each candidate or individual whom the committee or party is supporting and the name and address of the committee or party;

(2) The names and addresses of the designated campaign treasurer and deputies;

(3) The names and addresses of the campaign chairman and deputy campaign chairman;

(4) A list of all banks, safety deposit boxes, or other depositories used and the applicable account number;

(5) The amount and date of deposit of the contribution and the name and address of each individual donor who has contributed an aggregate amount of more than $100 since the last election applicable to the office being sought or in which the issue or question was on the ballot; provided that this paragraph shall not apply to contributions made prior to January 1, 1974; and

(6) In the case of a report by a committee or party supporting or opposing a ballot question or issue, all of the information described in paragraphs (2) to (5) and a description of the question or issue.

(b) Any change in information submitted in the organizational report, other than paragraph (5) above, shall be reported not later than 4:30 p.m. on the tenth calendar day after the change or when the candidate, committee, party, or campaign treasurer becomes aware of the change."

(f) Section 11-199, Hawaii Revised Statutes, is amended to read as follows:

**"Sec. 11-199 Campaign contributions, generally.** (a) All monetary contributions shall be promptly deposited in a financial depository duly authorized to do business in the State of Hawaii, such as a bank, savings and loan institution, industrial loan company, or similar financial institution, in the name of the candidate, committee, or party, whichever is applicable.

(b) Each candidate, committee, or party shall establish and maintain an itemized record showing the amount of each monetary contribution, the

description and value of each nonmonetary contribution, and the name and address of each donor making a contribution of more than $10 in value.

(c) Each candidate and campaign treasurer shall report the amount and date of deposit of each contribution and the name and address of each donor who makes a contribution or contributions whose aggregate value is more than $100.

(d) No candidate, committee, or party may accept a contribution of more than $250 in cash from a single person without issuing a receipt to the donor and keeping a record of the transaction.

(e) Each committee and party shall disclose the original source of all earmarked funds, the ultimate recipient of the earmarked funds, and the fact that the funds are earmarked.

(f) For the purposes of this section, "earmarked funds" means contributions received by a committee or party on the condition that the funds be contributed to or expended only on certain candidates, issues, or questions."

(g) Section 11-200, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-200 Campaign contributions, restrictions against transfer.** (a) A candidate, campaign treasurer, or committee shall not receive any contributions or receive or make any transfer of money or anything of value:

(1) For any purpose other than those directly related:

    (A) In the case of the candidate, to his own campaign, or

    (B) In the case of a campaign treasurer or committee, to the campaign of the candidate, question, or issue with which they are directly associated; or

(2) To support the campaigns of candidates other than the candidate, for whom the funds were collected or with whom the campaign treasurer or committee is directly associated; or

(3) To campaign against any other candidate not directly opposing the candidate for whom the funds were collected or with whom the campaign treasurer or committee is directly associated;

Provided that a candidate, campaign treasurer, or committee may as a contribution purchase from its campaign fund not more than two tickets for each testimonial or fund raising affair as defined in section 11-203 of this subpart held by another candidate, committee, or party.

(b) This section shall not be construed to prohibit a party from supporting more than one candidate."

(h) Section 11-203, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-203 Testimonial affairs.** (a) As used in this section "testimonial affair" means any function held for the benefit of a person and designed to raise funds for political purposes for which the total cost for attending the affair is more than $25 per person.

(b) No person or committee directly associated with the person shall hold more than one testimonial affair until after an election in which that person was either elected or defeated unless that person seeks election to statewide office, in which case he or his directly associated committee may hold not more than one testimonial affair in each county. An additional testimonial affair may be held within six months after a general, special general, or special election, in the case of a candidate or committee directly associated with that person having a deficit.

No testimonial affair may be held unless a notice of intent to hold the affair is filed by the person in charge of the affair with the commission prior to the date of the affair setting forth the name and address of the person in charge, the charge per person, the date, hour, and place of the affair, and whether contributions will be solicited at the affair and method thereof. Testimonial affairs sponsored by a party for a political purpose for the general benefit of the party are exempt from the limits of this subsection."

(i) Section 11-203.1, Hawaii Revised Statutes, is repealed.

(j) Section 11-204, Hawaii Revised Statutes, is amended to read as follows:

"Sec. 11-204 Campaign expenditures, generally. (a) A candidate may draw on the campaign treasurer for his political expenditures for postage, telegrams, telephone calls, stationery, expressage, travel, meals, and lodging. The candidate shall make a detailed accounting of his political expenditures and the accounting shall be made a part of the reports required in sections 11-207 and 11-208. The account shall state the amount and purpose of the expenditures and other information required by the commission and shall be signed and certified by the campaign treasurer.

(b) No funds shall be withdrawn or paid from a campaign depository except upon the written authorization of the campaign treasurer.

(c) No expenditure for a candidate shall be made or incurred by any committee controlled by a candidate without specific written authorization of the candidate or his authorized representative.

(d) For the purposes of this subpart, an expenditure shall be deemed to be made or incurred when the services are rendered or the product is delivered. Services rendered or products delivered for use during a reporting period covered by this subpart shall be deemed delivered or rendered during the period or periods of use, provided that these expenditures may be reasonably allocated between periods in accordance with the time the services or products are actually used."

(k) Section 11-206, Hawaii Revised Statutes, is repealed.

(l) Section 11-208, Hawaii Revised Statutes, is amended to read as follows:

"Sec. 11-208 Final and supplemental reports. (a) Each candidate whether or not successful in a primary or special primary election, authorized person in the case of a party, or campaign treasurer in the case of a committee shall file a final primary report with the commission on forms provided by the commission not later than 4:30 p.m. on the twentieth day after the primary or special primary election certified pursuant to section 11-195. The report shall include:

(1) A statement of the total contributions received;

(2) The amount and date of deposit of the contribution and the name and address of each donor who contributes an aggregate of more than $100;

(3) A statement of all expenditures made, incurred, or authorized by or for a candidate including the name and address of each payee and the amount, date, and purpose of each expenditure; and

(4) A statement of the current balance on hand or deficit.

(b) Each candidate, authorized person in the case of a party, or campaign treasurer in the case of a committee shall file a final general report with the

commission on forms provided by the commission not later than 4:30 p.m. on the twentieth day after a general, special general, or special election certified pursuant to section 11-195 and reporting all items prescribed in subsection (a). A candidate who is unsuccessful in a primary or special primary election need not file a final general report.

(c) Deficit. In the event of a deficit, the candidate, authorized person in the case of a party, or campaign treasurer in the case of a committee shall, every three months until the deficit is eliminated, file supplemental reports reporting all items prescribed in subsection (a). The first report shall be due not later than 4:30 p.m. on the fifth day after the last day of the election year.

(d) Surplus In the event of a surplus, the candidate, authorized person in the case of a pɪ , or campaign treasurer in the case of a committee shall:

(1) Maintain the cash surplus in a financial depository; and

(2) Every six months, until he becomes a candidate again, file supplemental reports reporting all items prescribed in subsection (a).

The first report shall be due not later than 4:30 p.m. on the fifth day after the last day of the election year.

(e) A candidate, party, or committee who receives no contributions or makes no expenditures shall nevertheless file preliminary, final, and supplemental reports as required by law."

(m) Section 11-210, Hawaii Revised Statutes, is amended to read as follows:

"**Sec. 11-210 Advertising.** (a) All advertisements shall contain the name and address of the candidate, committee, party, or person paying for same.

(b) In addition to subsection (a) above, no person shall cause or submit any advertisement in support for a candidate or against a candidate's opponent, to be published, broadcast, televised or otherwise circulated and distributed except under the following conditions:

(1) The advertisement shall contain a notice in a prominent location that the literature or advertisement is published, broadcast, televised, or circulated with the approval and authority of the candidate, provided that in the event that the literature or advertisement is paid for by a candidate or committee directly associated with a candidate, the notice of approval and authority need not be included; or

(2) The advertisement shall contain a notice in a prominent location that the literature or advertisement is published, broadcast, televised, or circulated without the approval and authority of the candidate."

SECTION 2. Severability. If any provision of this Act, or the application thereof to any person or circumstance, is held invalid, the validity of the provision to other persons and circumstances shall not be affected thereby and further, the invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

SECTION 3. Statutory material to be repealed is bracketed. New material is underscored. In printing this Act, the revisor of statutes need not include the

brackets, the bracketed material, or the underscoring.*

SECTION 4. This Act shall take effect on approval.

(Approved May 17, 1976.)

## ACT 128

H.B. NO. 3099-76

A Bill for an Act Relating to the Intake Service Center Advisory Board.

*Be It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. Section 353-1.3, Hawaii Revised Statutes, is amended to read:

"Sec. 353-1.3 Creation of intake service center advisory board. There shall be an intake service center advisory board, hereinafter called the board. The board shall consist of fifteen members who shall be appointed by the governor for a term ending on the day that the governor completes his term in office, but who shall continue to serve on the board until their successors are appointed. Three members each shall be selected from the judiciary and among private social service agencies. Two members each shall be selected from the department of social services and housing, the department of health, from among the police departments of the counties, from among the prosecuting attorneys of the counties, and the remaining member shall be the public defender. A vacancy occurring in the membership shall be filled for the unexpired term thereof. The board shall select its chairman from one of its appointed members. The members shall receive no compensation for their services on the board, but shall be reimbursed for actual expenses incurred in the performance of their duties.

The board shall advise and recommend to the governor policies, directions, priorities, and procedures for the operation of intake service centers, conduct at periodic intervals a review of the performance of intake service centers, and shall nominate and submit to the governor the names of one or more qualified candidates for each vacant intake service center director and executive director position from which the governor shall appoint one."

SECTION 2. Section 353-1.4, Hawaii Revised Statutes, is amended to read:

"Sec. 353-1.4 Creation of intake service center. (a) There shall be an intake service center for each of the counties, each of which shall be directed and managed by a director appointed by the governor pursuant to section 353-1.3 without regard to chapters 76 and 77, but who shall meet qualifications for the position determined by the department of personnel services. The director of the Oahu intake service center shall be the over-all state executive director of all the intake service centers and shall manage, control and direct them and provide periodic reports not less than annually on their operations to the governor and the intake service center advisory board. Any center may be integrated with and operated concurrently with a community correctional center.

---

*Edited accordingly.

227

# CERTIFICATE OF SERVICE

I certify that on September 12, 2012, I electronically filed the Answering Brief of Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

DATED: Honolulu, Hawaii, September 12, 2012.

/s/ Deirdre Marie-Iha
DEIRDRE MARIE-IHA
Deputy Solicitor General
Attorney for Defendants-Appellees